IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN RE: | * | |
| CRUCIFEROUS SPROUT PATENT LITIGATION | * | MDL Docket No. 1388 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
SEQUENCING ISSUES AND
EARLY MARKMAN DETERMINATION**

**I.      Introduction**

The MDL Panel approved the transfer of these cases to this Court for the resolution of all similar pretrial and discovery issues. Recognizing that the first such issue to be addressed must be the sequence in which these pretrial determinations will be made, this Court has directed the parties to brief their proposals to effect a logical, fair and efficient schedule in this case.

As set forth in the April 2, 2001 Preliminary Report from Defendants' liaison counsel, Defendants believe that the most rational, and least burdensome, approach involves a sequenced determination of discrete issues, the resolution of which, in an ordered fashion, may negate the necessity to proceed further with any other issues. In other words, as the questions of law and fact are decided issue by issue, the opportunity will exist at set junctures to resolve the entire case without unnecessary discovery and attendant financial hardship to all parties. Accordingly, Defendants suggest the issues be considered in the following order: (1) claim construction, pursuant to *Markman v.*

*Westview Instruments, Inc.*, 517 U.S. 370 (1996); (2) validity; (3) enforceability; (4) infringement; (5) unfair competition issues; and (6) damages and intentional infringement. Such an approach is consistent with the authorities discussed below, and with the recommendations of the Manual for Complex Litigation with respect to patent cases, see § 33.62, because it will reduce the burdens of cost and time for all parties, as well as for the Court.

## II.   Argument

### A.   The Issues Before This Court Are Well-Suited For Sequencing.

Plaintiffs allege that all fifteen Defendants – five entities and ten individuals employed by those entities[1] – infringed U.S. Patent Nos. 5,725,895; 5,968,567; and 5,968,505 (collectively, "the patents-in-suit"). The case-specific facts Plaintiffs must establish regarding issues of infringement and damages in each of the consolidated cases are unique to each corporate and individual Defendant. The only issues common to all Defendants are the legal construction that must be given each claim of the patents-in-suit, and the validity of each such patent. Claim construction and validity (as well as any resulting enforceability) are legal issues that logically should be resolved before reaching the factual issues of infringement and damages.

---

[1]   For the purposes of this Memorandum, "Defendants" shall refer to those Defendants who were represented at the Court's Scheduling Conference of April 27, 2001. Defendant Chau Minh Do, or any other persons or entities who may be sued by Plaintiffs, are not included by reference in this Memorandum.

The patents-in-suit relate to cruciferous sprouts, including broccoli sprouts. Each person or entity presently sued is accused of growing broccoli sprouts in alleged violation of one, some, or all of the patents-in-suit. The technology involved in this case – germinating seeds to produce sprouts – is not complex. However, unleashing immediate full discovery on all issues as Plaintiffs suggest, including discovery of the personal intentions of those who have been personally sued, will be exceedingly complex, unnecessarily time-consuming, and expensive.

More specifically, because Plaintiffs have named *individuals* as Defendants in each of the cases, Plaintiffs must attribute infringement to those individuals with evidence unique to each individual Defendant sufficient to pierce the corporate veil of each respective defendant corporation. Likewise, the corporate structure of each corporate defendant will present multiple unique factual circumstances, sharing nothing in common with any other corporate defendant.

Plaintiffs' patents-in-suit fail to describe any particular sprouting technique; the complaint makes no allegation that the growing techniques or seeds each Defendant used are identical, or even substantially similar to every other Defendant. Substantial individual discovery will be required if the issue of infringement is ever reached, because each Defendant's growing techniques vary from those of the other Defendants. In these circumstances, permitting full, unfettered discovery at this stage of litigation would be costly, inefficient, time-consuming, and unique to each corporate and individual named Defendant. In contrast, limited discovery taken in stages – first, with respect to validity –

will be expeditious, dispositive of basic legal issues necessary for litigation to proceed any further, and pertinent to issues common to all Defendants.

For these reasons, Defendants propose the following schedule for discovery and dispositive motions in the present case:

(1) A *Markman* hearing to construe the claims, held as soon as possible according to the Court's schedule;

(2) Discovery on issues of validity and enforceability concluded within three months, with any summary judgment motions on these issues to follow within thirty days of the close of this stage of discovery;

(3) Discovery on issues of infringement and unfair competition concluded within three months after Court's ruling on summary judgment motions from the first stage, with any summary judgment motions on these issues to follow within thirty days of the close of this stage of discovery; and

(4) Discovery on issues of damages and intentional infringement concluded within three months after Court's ruling on summary judgment motions from the second stage, with any summary judgment motions on these issues to follow within thirty days of the close of this stage of discovery.

**B.    The Law Favors Issue Sequencing In Multi-District Litigation.**

Fed. R. Civ. P. 42(b) states in pertinent part: "The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third

party claim, or of any separate issues or of any number of claims ...." These considerations are in the alternative, and sequencing is proper upon a showing of any of these factors. Id. Of course, granting severance lies within the trial court's sound discretion. *Dixon v. CSX Transportation, Inc.,* 990 F.2d 1440, 1443 (4th Cir. 1993) (holding that trial court abused its discretion when it denied defendant's motion to bifurcate); see also *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1517 (9th Cir. 1985).

Indeed, it is important to note that while Plaintiffs argued at the April 27, 2001 hearing that sequencing is the exception and not the rule in patent cases, in fact that case management technique is quite common in patent cases. See Manual For Complex Litigation, 3d § 33.62, pp. 405-406 (Federal Judicial Center 1995) (recognizing the need for, and encouraging trial judges to bifurcate or trifurcate patent trials).

Dividing the issues in this case and addressing them in a logical sequence would be efficient and convenient. Because Plaintiffs have asserted the same three patents against all Defendants, the basic issues of claim construction, patent validity, and enforceability are common to all Defendants. The infringement and damages issues, however, are specific to each Defendant because they involve the particular products made by each Defendant, the specific methods used by each Defendant, and other issues unique to each Defendant. Accordingly, it clearly would be more efficient to separate the collective patent validity/enforceability issues from the individual infringement/damages issues and take them each in turn, as necessary.

Further, "[tr]ifurcation is particularly appropriate when resolution of a single claim

or issue could be dispositive of the entire case." *Cook v. United Service Auto. Ass'n.*, 169 F.R.D. 359 (D.Nev. 1996); see also *In re Palumbo Family Ltd. Partnership*, 182 B.R. 447, 464-465 (E.D. Va. 1995); *O'Malley v. United States Fidelity and Guaranty Company*, 776 F.2d 494, 501 (5th Cir.1985); 9 Wright & Miller, Federal Practice and Procedure: Civil 2d, § 2388, p. 476 (1994). The likelihood that the validity and enforceability of the patents-in-suit will be dispositive issues in this case emphasizes the importance of considering those issues before all else. See, e.g., *Wang Laboratories v. Mitsubishi Electronics America, Inc.*, 29 U.S.P.Q.2d (BNA) 1481, 1482 (C.D.Cal.1993).[2]

These issues will likely be dispositive of the entire case for a number of reasons. First, if this Court finds the patents-in-suit invalid or unenforceable, there will be no need to resolve any infringement or damages claims. Even if the Court finds to the contrary,

---

[2] Indeed, the Supreme Court has long indicated that validity issues should be resolved by the district court, even if no infringement is found. See *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993) ("In Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 89 L. Ed. 1644, 65 S. Ct. 1143 (1945), we approved of the District Court's decision to consider the question of validity even though it had found that a patent had not been infringed. Criticizing the contrary approach taken by other courts, we stated that 'of the two questions, validity has the greater public importance, Cover v. Schwartz, 133 F.2d 541 [(CA2 1943)], and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent.' 325 U.S. at 330.") If infringement were resolved first, as suggested by Plaintiffs at the April 27, 2001 hearing, and some or all of the Defendants were adjudged to be non-infringing, the Court would still be obligated to conduct an inquiry into validity. Addressing validity first is in the public interest, the most logical course of action, and a finding of invalidity eliminates the need for any further action whatsoever by this Court.

such a finding may promote settlement of the action before trial on the infringement and damages issues, and would certainly aid in framing discovery.

Second, there is ample evidence to demonstrate that narrowed, focused discovery, examining only these preliminary issues, will in fact confirm the invalidity and unenforceability of Plaintiffs' claims, without the necessity of engaging in any examination of issues which would then have become moot. The recent decision in *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.* 00-1304, 2001 U.S. App. LEXIS 7262 (Fed. Cir. April 20, 2001)(copy attached) highlights the legitimacy of Defendants' position that Plaintiffs' patents-in-suit are invalid and their Complaint should therefore be dismissed without further time and expense. The Federal Circuit reiterated a basic premise of patent law particularly applicable here: "Newly discovered results of known processes directed to the same purpose are not patentable because such results are inherent." Id. at *18. An abundance of prior art not previously examined further confirms that Plaintiffs' patents are invalid and unenforceable.

From the comments of Plaintiffs' lead counsel at the April 27 hearing, Plaintiffs seemingly assume that this Court will confirm the validity of its patents merely because they were held valid as part of a *consent* decree and as a result of an *ex parte* reexamination. Such proceedings certainly do not act as collateral estoppel on the issue of validity. Although where a patent is declared *invalid* in a proceeding in which the "patentee has had a full and fair chance to litigate the validity of his patent", the patentee (e.g. the Plaintiffs of the present case) is collaterally estopped from relitigating the patent,

no defendant is ever similarly barred from challenging the validity of claims that were upheld in a prior infringement suit to which said defendant was not a party. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("Some litigants – those who never appeared in a prior action – may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.") Further, it is well established that the statutory presumption of validity (35 USC § 282) is not augmented by an earlier adjudication of validity and may be rebutted. See *Shelcore, Inc. v. Durham Industries, Inc.,* 745 F.2d 621, 627 (Fed. Cir. 1984) (affirming the ruling of a district court holding US Patent 4,208,831 invalid and thus, not infringed).

    Third, no prejudice will accrue to Plaintiffs by sequencing the issues in this action. As Plaintiffs' counsel admitted at the April 27, 2001 hearing, Plaintiffs are not engaged in the design, manufacture, and sale of products – rather, they merely receive royalties under the patents-in-suit. Even if sequencing somehow extended the length of discovery, a result Defendants believe highly unlikely, potential damages to Plaintiffs will have continued to accrue and remain due to them if a favorable verdict is rendered. Moreover, Plaintiffs sought MDL consolidation and urged the MDL Panel to consolidate the cases in this district, arguing that it made sense to do so because the inventors, other Plaintiffs' witnesses and records were located here or in Washington, D.C. In these circumstances,

Plaintiffs cannot persuasively claim that sequenced and issue-focused discovery will unduly inconvenience or prejudice them.

    C.    **Sequencing Is Necessary Because Construing the Claims Of the Patents-In-Suit Is Solely A Matter Of Law And Not For Consideration By the Finder Of Fact.**

Evaluation of a patent to determine infringement is a two-step process. The first step requires that the claims of the patent be construed as a matter of law to determine their meaning, see *Markman,* 52 F.3d at 976, and that the patents be confirmed valid, if challenged. This validity analysis involves the comparison of properly construed patent claims to the prior art. See *Key Pharmaceuticals Inc. v. Hercon Laboratories Corp.*, 161 F.3d 709, 714, 48 USPQ2d 1911, 1915 (Fed. Cir 1998); *Rockwell International Corp. v. United States*, 147 F.3d 1358, 47 USPQ2d 1027 (Fed. Cir. 1998); *Beachcombers v. WildeWood Creative Prods, Inc.*, 31 F.3d 1154, 1160, 31 USPQ2d (BNA) 1653, 1600 (Fed. Cir. 1994). The claims must be construed the same for both validity and subsequently, if necessary, for infringement. *Vivid Technologies Inc. v. American Science Engineering Inc.*, 200 F.3d 795, 803, 53 USPQ2d 1289 (Fed. Cir. 1999) ("It is well recognized that the construction of the claims may resolve some or all of the issues of infringement."); *Smith Kline Diagnostics, Inc. v. Helena Laboratories, Corp.*, 859 F.2d 878, 8 USPQ2d 1468 (Fed. Cir. 1998). This entire first step involves the court's determination of issues of law.

The second necessary step to a patent infringement action is only reached if the court finds that the patents-in-suit are valid after the first analysis. This step requires a

comparison of the appropriately construed claims of any valid patents to the accused product to determine if that product infringes. The latter step requires a factual determination by the jury. See *Markman,* 52 F.3d at 976.

With respect to an initial *Markman* determination of the claims, "[i]t is well-settled that, in interpreting an asserted claim, the court should first look to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic Corp.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). The court must initially consider the terms of each claim itself, giving each term its ordinary meaning unless the specification or prosecution history expressly provides a special different definition of that term. See *Kegel Co. v. AMF Bowling Inc.,* 127 F.3d 1420, 1427 (Fed. Cir. 1997). Defendants stipulate that they will rely solely upon intrinsic evidence with respect to the construction to be given the present claims. Accordingly, no discovery of experts is required for claim construction, only legal briefing, so the Court can address the construction of claims expeditiously without the necessity for any discovery.

It is within the discretion of the court to construe the claims at the beginning of the proceedings, and in this case it is particularly appropriate to do so. See *Vivid Technologies Inc.,* 200 F.3d at 803-804 (affirming the district court's construction of claims where district court stayed discovery, stating "A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation.") In *Vivid Technologies*, the

Federal Circuit upheld the district court's stay of all discovery and early construction of the claims, despite one party's urging that the court adopt a uniform rule that claim construction should be done no earlier than the end of discovery. The court reasoned, "[w]e see no need for such a rule, for the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case. . . . When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved." Id. at 803, 804.[3]

The resolution of claim construction at an early stage of this case will avoid unnecessary discovery as well as subsequent disputes between the parties as to the appropriate construction of the claims. Since construing the claims is solely an issue of law, it can be done based upon briefs and legal arguments presented to the Court and should be done before, or as part of, any inquiry into the validity of the patents-in-suit and well before any discovery proceeds. Appropriate claim construction will, at a minimum, provide the parties with clear instruction as to the scope of discovery with respect to the preliminary issue of patent invalidity as well as infringement. The holding in *Vivid Technologies* obtains here as well: "[t]he court's management of discovery at the claim

---

[3] In so ruling, the *Vivid Technologies* Court made reference to *EMI Group North America Inc. v. Intel Corp.*, 157 F.3d 887, 891, 48 USPQ2d 1181, 1884 (Fed. Cir. 1998) ("This case illustrates the resolution of most of a complex infringement case with no more trial than a two-day Markman hearing.")

construction stage may serve the salutary goals of speed and economy, and is appropriate in cases in which the dispute may be resolved at this stage without the compromise of justice." Id. at 804.

### III. Conclusion

The present case should be sequenced so that the Court may first examine the dispositive issues of patent invalidity and enforceability. Before conducting any discovery, a *Markman* determination should be made to provide the appropriate legal construction of the claims. Such a schedule will alleviate the burdens on all parties of conducting lengthy and attenuated full-scale discovery prior to a ruling on whether or not it will even become necessary to proceed further with the case. This approach is logical, fair, and efficient for all parties and for the Court.

Respectfully Submitted,

_____
Philip M. Andrews
Federal Bar No. 00078
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax: (410) 539-1269

Defendants' Lead Counsel
            and
Attorneys for Defendants Edrich Farms, Inc., Edward F. Stanfield, Jr., Richard Stanfield, Edward B. Stanfield, III, and Sally F. Stanfield

Delbert J. Barnard
Barnard & Pauly, P.S.
P.O. Box 58888
Seattle, Washington 98138-1888
Phone: (206) 246-0568
Fax: (206) 243-4618

Attorneys for Defendants Harmony Farms, LLC, Gregory H. Lynn, Lorna M. Lynn, International Specialty Supply, LLC, and Robert L. Rust


Joseph A. Kromholz
Dan Johnson
Ryan, Kromholz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618
Phone: (262) 783-1300
Fax: (262) 783-1211

Attorneys for Defendants Sunrise Farms, Inc., Frank Crikelair, and Becky Crikelair


Donald W. Ullrich, Jr.
P.O. Box 160007
Sacramento, California 95816-0007
Phone: (916) 441-4554
Fax:    (916) 441-5465

Attorneys for Defendants Banner Mountain Sprouts, Inc. and Lawrence Ravitz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2001, a copy of the foregoing Defendants' Memorandum in Support of Sequencing Issues and Early Markman Determination was sent by hand-delivery to:

>Paul Mark Sandler, Esquire
>Freishtat & Sandler
>201 E. Baltimore Street, Suite 1500
>Baltimore, Maryland  21202
>*Counsel for Plaintiffs Brasssica Protection Products, L.L.C.*
>*and Johns Hopkins University*

and by first-class mail, postage prepaid, to:

>E. Anthony Figg, Esquire
>Joseph A. Hynds, Esquire
>Rothwell, Figg, Ernst & Manbeck, P.A.
>Suite 701 East Tower
>555 Thirteenth Street, N.W.
>Washington, D.C.  20004
>*Counsel for Plaintiffs Brasssica Protection Products, L.L.C.*
>*and Johns Hopkins University*
>
>Chau Minh Do
>16220 Compromise Court
>Mount Airy, Maryland  21771

_____
Philip M. Andrews