IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |
|---|---|
| IN RE CRUCIFEROUS SPROUT LITIGATION ) ) ) ) | Civil Action No.:  MDL-1388<br>Hon. William M. Nickerson |

**PLAINTIFFS' MEMORANDUM REGARDING
FORMAT AND SCHEDULING OF PROCEEDINGS**

In accordance with the Court's direction at the April 27, 2001 Initial Conference, Plaintiffs respectfully submit the following memorandum setting forth Plaintiffs' recommendations for the format and scheduling of further proceedings in this litigation.

## I. Plaintiffs' Proposed Schedule

Plaintiffs believe that the issues of this consolidated litigation would be most efficiently addressed and resolved in a single proceeding, as is generally contemplated by multidistrict consolidation.  It is most efficient in a patent case to try all issues together for at least four reasons. First, discovery on several issues will involve the same or similar facts, or at a minimum facts from the same sources.  Discovery relating to issues of infringement and damages will likely involve the deposition of one or two representatives of each defendant who will testify as to each Defendant's sprouting operations, and a modest document production of their growing and sales records covering the relevant period of time.  The issue of validity and enforceability will involve discovery relating to the Brassica patents and their claim scope, the history of the invention claimed therein, and the patent prosecution.  A limited group of witnesses are in possession of the relevant facts relating to these issues, and the relevant documents are all located in the same place.  Thus, this discovery can all be

accomplished by deposition of the same limited group of witnesses, and the production from a single limited universe of documents. Discovery on all of these issues therefore can be efficiently accomplished by a consolidated document production and deposition of a small number of witnesses on all issues.

Second, proceeding on all issues simultaneously will move the litigation ahead much more quickly than otherwise, because there would be no necessity (for example) for multiple reviews of the same files for multiple document productions, nor for multiple depositions of the same witnesses on the separate issues. Summary judgment motions can be filed as the record warrants it, rather than under an artificially drawn-out serial schedule. Furthermore, proceeding on all issues will avoid the inevitable delay that would result from consideration by the court of each issue separately (see Section II, below).

Third, proceeding simultaneously on all issues will be more likely to lead to early settlement, if settlement is possible. Thorough and early discovery on all issues will put all parties in the best position to assess the strengths and weaknesses of their respective cases, thus maximizing the chances of early settlement.

Fourth, proceeding simultaneously will permit the parties (particularly the Plaintiffs) to present their case in a coherent fashion, addressing inter-related issues such as infringement, validity and enforceability, in their proper context.

Patent cases most typically are conducted in this manner, and the considerations set forth in the Manual for Complex Litigation, § 21.632, "Separate Trials," are no different than those applied when considering bifurcation under Fed. R. Civ. P. Rule 42(b) in a single patent lawsuit.  Indeed, Plaintiffs are aware of no authority to support separation of the issues of claim construction, validity, enforceability, damages and infringement into separate proceedings (as has been proposed by Defendants).  In some cases the issues of liability and damages can be bifurcated, when there is an issue of willfulness involved and the defendant may need to rely on the advice of counsel as an affirmative defense (see, e.g., Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1572 (Fed. Cir. 1988)), or the issues are especially complex.  See, e.g., Avia Group Int'l. Inc. v. Nike, Inc., 22 U.S.P.Q.2d 1475 (D. Ore. 1991) (Tab A).  It is, however, generally appropriate to bifurcate antitrust claims under certain circumstances such as those present here.  In re Innotron Diagnostics, 800 F.2d 1077 (Fed. Cir. 1986). In the present case, any possible advantage that could be gained by separation of the patent issues is outweighed by: (1) the delay that would result, (2) the inconvenience to witnesses created by having to submit to multiple depositions, (3) the potential for increased cost associated with preparation and travel for multiple depositions and multiple document productions, (4) the unfairness to the Plaintiff of having to litigate affirmative defenses before the substantive claims of the lawsuit, and (5) the inability to present a coherent picture of the case that would result from addressing inter-related issues (such as infringement and validity, validity and enforceability) in isolation.

If conducted as a single proceeding, Plaintiffs estimate that discovery on all fact issues in the consolidated cases will take nine (9) months, and that expert discovery will take four (4) months, for a total discovery period of thirteen (13) months.  Plaintiffs believe that this schedule will provide the most

compact, fair and efficient proceeding, and provide the greatest opportunity for settlement or resolution of case-dispositive issues.[1]

## II. Separation of Issues Into Separate Proceedings Is Neither Efficient Nor Fair

The Defendants have proposed a six-way severance of the issues in the present proceeding, addressing each issue separately, and in series. Defendants further propose to address their affirmative defenses first, and Plaintiffs' claims afterward. This proposal is neither efficient, nor fair.

Counsel for Defendants estimated at the Initial Conference that the entire proposed "hexafurcated" proceeding can be resolved in nine months. This is significantly overly optimistic. According to Defendants' proposal, the parties would conduct limited discovery relating to summary judgment on the issue of patent validity and claim construction, brief and argue these issues, await the Court's decision on each motion, and then pursue interlocutory appeal. Full discovery would then proceed on patent enforceability, presumably followed by summary judgment motions, and so on for each of the six issues Defendants identify. Under this scheme, the issues of claim construction and patent validity <u>alone</u> would likely take over nine months to resolve, and it would take literally years to

---

[1] Plaintiffs note that one of the Defendants, Banner Mountain Sprouts, has filed counter-claims alleging Federal antitrust violations, unfair competition and unfair business practices under the California Business and Professions Code and the California Commercial Code, and that Plaintiffs have moved under Fed. R. Civ. P. 12(b)(6) to dismiss these counterclaims as failing to state the causes of action for which relief can be granted. Briefing is not yet completed on Plaintiff's motion. In the event the antitrust counterclaims survive Plaintiffs' motion to dismiss, Plaintiffs submit that these claims should be bifurcated in a separate proceeding, as they do not relate factually to the patent issues of this litigation, and implicate only one defendant, Banner Mountain Sprouts.

resolve the entire litigation by addressing each issue serially according the Defendants' proposed "hexafurcation".

This is a consolidated proceeding. The purpose of multidistrict consolidation is to promote efficiency by conducting a single pre-trial proceeding for the various consolidated cases. 28 U.S.C. §1407; see also the Panel's decision ordering consolidation in the present case. The Defendants' proposal is the very antithesis of this, because it will cause great delay and inefficiency in resolving the common issues of the several cases. Defendants have provided no rational whatsoever for severing, for example, the issue of infringement from validity, or infringement from damages, other than the alleged "Hobson's choice" of waiving attorney-client privilege to mount an "advice of counsel" defense to a claim of willfulness. First, this reason has absolutely no applicability to claim construction, infringement, validity, enforceability or patent misuse, and therefore cannot justify separation of these issues into separate proceedings. Second, no defendant has asserted the advice of counsel as a defense to willful infringement, so the issue has not even been raised in this litigation. Defendants have already filed a summary judgment motion on what they consider to be the case-dispositive issue -- validity. Nothing would be gained from the point of view of efficiency by staying proceedings on all other issues pending this court's resolution of the issue of validity. As set forth in Section I above, the issues of this case are very inter-twined and the witnesses and document sources relating to each issue are in most cases going to be the same. Defendants' hope that their summary judgment motion will be decided in their favor without any discovery at all does not justify the potential for extensive delay and increase in costs that will come from their proposed schedule. Because simultaneous discovery on all issues avoids duplicate depositions, multiple document productions and overlapping written discovery, at a great

savings in time and money to all parties, discovery will proceed most efficiently and quickly by going forward with all issues.

The proposed "hexafurcation" also would work a fundamental injustice on the Plaintiffs, who filed these lawsuits against the Defendants in order to protect their presumptively valid patent rights.[2] Furthermore, the validity of one of the patents, U.S. 5,725,895, has been upheld in re-examination by the U.S. Patent & Trademark Office, therefore making it more difficult to overcome the presumption of validity.[3]  As the aggrieved parties, Plaintiffs have a right to have their claims heard in a timely and coherent fashion.  To delay resolution of the basic claims of this litigation, and further to split them up into isolated bites, while all Defendants are continuing the activities that Plaintiffs suspect infringe their patents and cause Plaintiffs' damage, is fundamentally unfair and discounts entirely Plaintiffs' right to assert their presumptively valid patent rights against suspected infringers.  Defendants have presented no compelling reason why staying discovery on the issues of infringement and damages (that is, discovery on Plaintiffs' claims) would in any way increase the overall efficiency of these proceedings.

---

[2] See, e.g., Texas Instruments Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165, 1177 (Fed. Cir. 1993) ("A patent is presumed valid and the party asserting invalidity must overcome this presumption by clear and convincing evidence establishing facts which support the conclusion of invalidity").

[3] See i.e., Custom Accessories Inc. v. Jeffrey-Allan Industries Inc., 807 F.2d 955, 961 (Fed. Cir. 1996); E.I. du Pont de Nemours v. Polaroid Graphics, 706 F. Supp. 1135, 1141 (D. Del. 1989), aff'd 887 F.2d 1095 (Fed. Cir. 1989) ("because the PTO issued a Reexamination Certificate, Polaroid's burden is more difficult to satisfy, especially because all the prior art upon which it bases its anticipation defense, including the Law patent, was before the examiner at both the original and reexamination proceeding."); E.I. du Pont de Nemours v. Polaroid Graphics, 19 U.S.P.Q.2d 1174, 1179 (N.D. Cal. 1990) (Tab B) ("[t]he court therefore regards the PTO's reexamination findings of validity for all claims of the '202 and '195 as highly probative on the issues considered and with respect to the prior art considered during reexamination. [citations omitted].  It thus views plaintiffs' burden of proving invalidity as heavier than it would have been in the absence of the reexamination").

No argument advanced by the Defendants outweighs the fundamental unfairness that would result from their proposed delay in addressing the Plaintiffs' claims until well towards the end of the proposed schedule, and preventing Plaintiffs from preparing their case in a coherent and timely fashion.

Plaintiffs therefore respectfully submit that a single proceeding on all issues is the most efficient and fair manner of conducting these consolidated proceedings, and that severance of the case into multiple separate consideration which would actually complicate and delay the proceedings, is not only contrary to the principles of multidistrict litigation, but unfair to Plaintiffs.  Accordingly, Plaintiffs urge the Court to issue a scheduling order embodying Plaintiffs' proposed format and schedule, requiring that all issues be addressed in a single proceeding.

Respectfully submitted,

_____
Paul Mark Sandler (Federal Bar No. 00145)
William Michael Mullen (Federal Bar No. 11015)
Freishtat and Sandler
201 E. Baltimore Street
Suite 1500
Baltimore, MD 21202
(410) 727-7740

Of Counsel:
E. Anthony Figg
Joseph A. Hynds
Mark I. Bowditch
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
Suite 701 East Tower
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 783-6040

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this _____ day of May, 2001, a copy of the foregoing Plaintiffs' Memorandum Regarding Format And Scheduling Of Proceedings was hand delivered to:

Philip M. Andrews, Esquire
Kramon & Graham, P.A.
One South St., Suite 2600
Baltimore, Maryland 21202

Lead and Liaison Counsel

 

_____
William Michael Mullen

**TAB A**

AVIA GROUP INTERNATIONAL, INC., Plaintiff and Counterdefendant, v. NIKE, INC., Defendant and Counterclaimant.
Civ. No. 91-326-JU

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

1991 U.S. Dist. LEXIS 20492; 22 U.S.P.Q.2D (BNA) 1475

September 17, 1991, Decided
September 17, 1991, Filed

SUBSEQUENT HISTORY: [*1] Adopting Order of November 15, 1991, Reported at 1991 U.S. Dist. LEXIS 20493.

DISPOSITION: Defendant's motion for separate trials of the issues of liability, damages, enhanced damages and attorneys' fees and for a stay of discovery related to willfulness (docket #13) is GRANTED. Separate jury trials for the issues of liability and damages will be held. After these trials a separate court trial on the issue of enhanced damages and attorneys' fees will be held. Discovery related to willfulness is stayed until after a determination of liability, but this stay is limited to attorney-client privileged information and attorney work product.

CORE TERMS: patent, discovery, infringement, patent infringement, willfulness, overlap, enhanced, privileged information, separate trial, work product, bifurcation, determination of liability, Seventh Amendment, attorney-client, jury trial, awarding, willful, infringing, principal place of business, issue of liability, broad discretion, treble damages, require proof, counterclaims, enhancement, invention, demanded, damages issue, prejudiced, work-product

JUDGES: Juba

OPINION BY: GEORGE E. JUBA

OPINION: ORDER

JUBA, Magistrate:

INTRODUCTION

This is an action for patent infringement brought by plaintiff, AVIA Group International, Inc. ("Avia") against defendant, Nike, Inc. ("Nike"). Avia is a Delaware corporation having its principal place of business in Portland, Oregon. Nike is an Oregon corporation having its principal place of business in Beaverton, Oregon. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a). Venue is proper in the District of Oregon under 28 U.S.C. §§ 1391(c) and 1400(b).

Avia charges Nike with infringement [*2] of Avia's U.S. Patent Nos. 4,372,058 ("the '058 Patent"); 4,741,114 ("the '114 Patent"), and 4,449,307 ("the '307 Patent"). Avia requests preliminary and permanent injunctive relief, damages, treble damages for willful infringement, and reasonable attorneys' fees and costs. Avia has demanded a trial by jury of all issues.

Nike denies any allegations of infringement on its part and asserts affirmative defenses challenging the validity and enforceability of the three Avia Patents. Nike also asserts counterclaims charging Avia with infringement of Nike's U.S. Patent Nos. 4,439,936 ("the '936 Patent") and 4,562,651 ("the '651 Patent"). In the counterclaims, Nike requests an injunction, damages, treble damages for willful infringement, and attorneys' fees and costs. Nike has also demanded a jury trial.

Defendant Nike has brought this motion for separate trials of the issues of liability and damages, separate trial to the court of the issues of enhancement of damages under 35 U.S.C. § 284 and awarding of attorneys' fees under 35 U.S.C. § 285, and a stay of discovery on enhanced damages and attorneys' fees.

STANDARDS

F. R. Civ. P. 42(b) provides in relevant part:

The court, [*3] in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy, may order a separate trial . . . of any separate issue . . . or issues, always preserving inviolate the rights of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a Statute of the United States.

Bifurcation of trial liability and damages issues is to be decided on a case-by-case basis at the informed discretion of the trial judge. Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3rd Cir. 1978), cert. denied, 439 U.S. 955 (1978). The trial court has broad discretion to deny or grant separate trials under F. R. Civ. P. 42(b). Davis & Cox v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985). Notwithstanding this broad discretion, a court should not routinely order separate trials. Keyes Fibre Co. v. Packaging Corp. of America, 763 F.Supp. 374, 375-376 (N.D. Ill. 1991).

DISCUSSION

A. The Issues of Liability Should Be Tried Separately From and Prior to the Issues of Damages.

A leading patent infringement case notes that although a normal[*4] law suit seldom requires bifurcation, "the issues of validity, title, infringement, and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties." Swofford v. B & W, Inc., 34 F.R.D. 15 (S.D. Tex. 1963), aff'd, 336 F.2d 406, 415 (5th Cir. 1964).

1. Separate Trials Will Promote Judicial Economy and Efficiency.

Currently five patents are at issue in this case, and there are at least eight allegedly infringing products. Defendant's Memorandum, Page 5. Through highly technical proof, the jury will be required to interpret the patents and the allegedly infringing products. Evidence regarding damages may also be complex and involved with the potential for calculations of reasonable royalties and lost profits.

A separate trial on liability will likely result in a simplification of damage issues or the elimination of such an inquiry altogether. Should the jury find any of the patents invalid, unenforceable, or not infringed, no damages inquiry need be presented for those patents nor for any non-infringing product. Furthermore, a jury[*5] finding on liability may encourage settlement of the damages issue and thereby eliminate the need for a second trial.

2. The Issues of Liability and Damages are Substantially Distinct To Permit Separate Trials.

An important limitation under F. R. Civ. P. 42(b) is that the issues to be tried must be sufficiently distinct and separable such that separate trials will not result in overlap. Swofford, 336 F.2d at 415. Here the liability issues will require proof of the specifics of the invention, the validity of the patent, and the structure and operation of the allegedly infringing product. The damages issue is substantially different and will require proof of sales, costing factors, profit levels and offsetting costs.

Plaintiff contends that the issue of willfulness will overlap under both liability and damages and therefore result in violation of the Seventh Amendment. The Ninth Circuit has unequivocally asserted, "In determining the question of infringement, the desire or intent to infringe a patent is irrelevant. However intent is crucial to the imposition of increased damages." Wilden Pump & Engineering Co. v. Pressed & Welded Products Co., 655 F.2d 984, 989 (9th Cir. 1981)[*6] (emphasis added) (citations omitted). Because intent is irrelevant to a determination of patent infringement, there is no overlap concerning willfulness between the issue of liability and damages.

Although an overlap regarding evidence of the "commercial success" of the products is likely to occur, this court is not convinced that such an overlap is great enough to justify denial of bifurcation. One court granting separate trials for liability and damages in a patent infringement dispute explains, "The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller." Paine, Webber, Jackson & Curtis v. Merrill Lynch, 587 F.Supp. 1112, 1116 (D. Del. 1984).

Plaintiff also contends that defendant's request for bifurcation is premature because discovery has just commenced. It is not uncommon, however, for courts to bifurcate issues of liability and damages before substantial discovery has occurred and there is time to stay discovery

3. Plaintiff Will Not Be Prejudiced by Separate Trials.

Separate trials only violate the Seventh Amendment when they involve both overlapping issues and different juries. Paine, Webber, 587 F. Supp. at 1116 (emphasis in original). Because this court has found no substantial overlap between the issues of liability and damages, there is no Seventh Amendment violation.

B. There Is No Right to a Jury Trial On The Issue of Enhancement of Damages and Awarding Attorneys' Fees.

35 U.S.C. § 284 provides that the court may increase damages up to three times the amount found or assessed in patent infringement cases. 35 U.S.C. § 285 allows the court to award reasonable attorneys' fees to the prevailing party in an exceptional case. After both a detailed analysis of the language of 35 U.S.C. § 284 and prior patent case law, the leading case on this issue held that there is no constitutional right to a jury trial on issues under either § 284 or § 285. Swofford, 336 F.2d at 411-414.[*8] See, also White v. Mar-Bel, Inc., 509 F.2d 287, 292 (5th Cir. 1975) (jury's finding that compensatory damages should be trebled is advisory only). Therefore the issues of enhancement of damages and awarding of attorneys' fees must be presented to the court in a separate trial.

C. Discovery of Attorney-Client Privileged Information and Attorney Work-Product Related to Enhanced Damages and Attorneys' Fees Shall Be Stayed Until After a Determination of Liability.

The Federal Circuit has asserted that when a party charged with patent infringement fails to produce exculpatory opinion of counsel, the court may infer that the party failed to obtain such an opinion or that the opinion advised against the party's continued use of its product. Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1672-73 (Fed. Cir. 1988). A party may be forced to waive the attorney-client privilege and the work of damages. See, e.g., [*7] Giro Sport Design, Inc. v. Pro-Tec, Inc., 10 U.S.P.Q.2d 1863 (N.D. Cal. 1989); Eaton Corp. v. Auburn Gear, Inc., 8 U.S.P.Q.2d 1373 (N.D. Ind. 1988).

product immunity in order to defend against a charge of willful infringement.

Because willfulness is not relevant to the issue of liability, Nike's request to stay all attorney-client privileged information and attorney work-product related to willfulness[*9] until after a determination of liability is reasonable. Nike will be unfairly prejudiced if it is required to divulge the contents of its private communication with counsel prior to a determination on liability because such communications typically discuss legal theories and strategy. The rationale for staying privileged information or attorney work product does not extend to a stay of all discovery relating to enhanced damages or awarding attorneys' fees. Therefore, discovery of attorney-client privileged information and attorney work product relating to enhanced damages and attorneys' fees is stayed until after a determination of liability.

CONCLUSION

Defendant's motion for separate trials of the issues of liability, damages, enhanced damages and attorneys' fees and for a stay of discovery related to willfulness (docket #13) is GRANTED. Separate jury trials for the issues of liability and damages will be held. After these trials a separate court trial on the issue of enhanced damages and attorneys' fees will be held. Discovery related to willfulness is stayed until after a determination of liability, but this stay is limited to attorney-client privileged information and[*10] attorney work product.

Dated this 17th day of September, 1991.

George E. Juba

United States Magistrate

**TAB B**

E.I. DU PONT DE NEMOURS & CO., a Delaware corporation, Plaintiff, v. CETUS
CORPORATION, a Delaware corporation, Defendant
No. C 89-2860 MHP

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1990 U.S. Dist. LEXIS 18382; 19 U.S.P.Q.2D (BNA) 1174

December 11, 1990, Decided
December 11, 1990, Filed

CORE TERMS: patent, printed publication, accessible, indexed, researcher, catalogued, shelved, thesis, matter of law, accessibility, anticipation, reasonable diligence, summary judgment, one year, replication, referenced, systematic, indexing, doctoral, Freedom of Information Act, reasonably find, case law, pre-trial, skilled

JUDGES: [*1]

Marilyn Hall Patel, United States District Judge.

OPINION BY: PATEL

OPINION: ORDER

BACKGROUND

Plaintiff Du Pont brings this action seeking a declaration of invalidity of defendant Cetus Corporation's U.S. patents 4,683,202 (" '202 patent") and 4,683,195 (" '195 patent"), which encompass the process of polymerase chain reaction ("PCR") using an exponential process of replication.

In its motion for summary judgment, plaintiff argued that a National Science Foundation grant proposal submitted by Dr. Gobind Khorana ("NSF Grant Proposal") anticipates the subject matter of the '202 patent and thus invalidates the patent under 35 U.S.C. § 102(b).

In its opposition to plaintiff's motion, defendant argued that a
During review of the issue at pre-trial conference on November 20, 1990, defendant informed the court that it intended to challenge at trial the Grant Proposal's status as prior art, material issue of fact exists as to whether the Khorana Grant Proposal is prior art. Specifically, defendant claimed that the Grant Proposal was not adequately stored and indexed, and hence was not sufficiently accessible to the interested segment of the public to constitute a "printed publication" under section 102(b). In addition, defendant noted that the Grant Proposal had a vague title ("Chemical and Biological Studies of Nucleic Acids").

The court found that, for the purposes of summary[*2] judgment, sufficient evidence had been presented that the Grant Proposal was accessible to the relevant public prior to one year before the date of the patent application to treat it as prior art. However, the court concluded that even assuming arguendo that the Grant Proposal met the standard for prior art, it did not describe the process of PCR with sufficient precision and detail to constitute anticipation of defendant's patent under section 102(b) as a matter of law.

and that it also intended to introduce a later grant application submitted by Dr. Khorana to the National Institutes of Health ("NIH Grant Application") as prior art "pointing away" from

anticipation. The court indicated its desire to avoid lengthy digression on this issue during trial, and stated that it would review the submissions of the parties to determine whether the issue could be decided by the court as a matter of law.

Having undertaken this review of the parties' arguments and the governing case law, the court finds that there[*3] is ample, undisputed evidence of the accessibility of the NSF Grant Proposal to the relevantly skilled and interested public, and that the law does not require the strong showing of "highly likely discovery of the prior art" suggested by defendant during the pre-trial conference. The court concludes that no jury could reasonably find that the NSF Grant Proposal was not prior art within the meaning of section 102(b). In addition, on the basis of the same arguments and considerations, it concludes that no jury could reasonably find that the NIH Grant Application was not prior art within the meaning of section 102(b). Therefore, the only issue remaining for trial is whether this prior art anticipated the patents under section 102, or otherwise rendered them obvious under section 103.

DISCUSSION

The statute governing anticipation of patents provides that

[a] person shall be entitled to a patent unless --
. . .
(b) the invention was patented or described in a printed publication . . . more than one year prior to the date of the application for patent in the United States, . . . .

35 U.S.C. § 102.

A printed publication is a publication that is "sufficiently accessible" to members[*4] of the public who are interested in the art and exercise "reasonable diligence." RCA Corp. v. Data Gen. Corp., 701 F. Supp. 456, 468 (D. Del. 1988)(citing In re Hall, 781 F.2d 897, 900 (Fed. Cir. 1986)), judgment aff'd, 887 F.2d 1056 (Fed. Cir. 1989). The relevant time period in this case is prior to March 28, 1984, one year before the filing of the '202 application.

Whether a document is a printed publication within the meaning of section 102 is a legal determination, although it may involve underlying questions of fact. Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 936 (Fed. Cir.)(citing Hall, 781 F.2d at 899 (Fed. Cir. 1986)), cert. denied, U.S.   , 111 S. Ct. 296 (1990).

Publication does not require dissemination in books or journals. Rather, given the advanced technology in information storage and retrieval, the courts regard "public accessibility" as the touchstone in determining whether a reference constitutes a printed publication under 35 U.S.C. § 102(b). Hall, 781 F.2d at 898-99. In Hall, for example, the court found that a doctoral thesis that had been indexed, catalogued and shelved in the Freiburg University library was sufficiently[*5] available to the relevant interested public to constitute prior art.

Defendant cites several cases in which courts have found various scholarly publications not to be prior art, but these cases are clearly distinguishable. In Application of Bayer, 568 F.2d 1357 (C.C.P.A. 1978), the court held that a graduate thesis held in a university library was not prior art where, as of the critical date for availability, it had not been catalogued or shelved and was available only to the student's thesis committee. Id. at 1359.

The court in In re Cronyn, 890 F.2d 1198 (Fed. Cir. 1989), also cited by defendant, held that undergraduate senior theses filed in the college's main and departmental libraries were not printed publications. Id. at 1161.

It found that the theses had not been "either cataloged [sic] or indexed in a meaningful way," since they were referenced only by index cards filed alphabetically by author and held in a shoebox in the chemistry department. The court distinguished Hall, in which doctoral dissertations had been indexed, catalogued, and shelved, and noted that such systematic storage and indexing is the "critical difference" in determining whether a document[*6] is a "printed publication." Id.

In the case at bar, by contrast with both Bayer and Cronyn, deposition testimony of Brian Mannion, Section Head of Grants and Awards for NSF, indicates that Dr. Khoranas NSF Grant Proposal was filed, indexed by title, author, institution and grant number in the NSF's published indices of grants and awards beginning in 1973. Mannion Decl. (Ex. E of Newland Decl.), Ex. 2. In addition, the Proposal was available upon request from NSF under the Freedom of Information Act, 45 C.F.R. § 612 et seq., well before the date of application of the PCR patents. Mannion Decl. at paras. 2-5.

Defendant suggests that the relevant test for accessibility is whether one skilled in the relevant art is likely to have encountered or tracked down the prior art, and argues that this inquiry presents an issue of fact to be resolved at trial. However, none of the cases submitted by defendant support this proposition. Under all of the existing case law, the appropriate inquiry in this case is not whether a DNA researcher would have come across the Khorana Grant Proposal or references to it in the course of her work, but rather whether the Proposal was "sufficiently[*7] accessible" to a researcher who exercised "reasonable diligence." Thus, the emphasis is on systematic indexing and availability upon request.

However, even under the more strenuous standard proposed by defendant, the Grant Proposal would qualify as prior art. Dr. Khorana was preeminent researcher and pioneer in the field of DNA technology at the time of the grant and thereafter; it was widely known in the scientific community that groundbreaking work was being done in his laboratory. Thus, anyone interested in the field would have been alert to the publications under Khorana's name, and defendant does not dispute this. Moreover, the Grant Proposal itself was cited by grant number in the 1974 article published by Panet and Khorana in the Journal of Biological Chemistry. Newland Decl., Ex. G. Any researcher interested in DNA replication is likely to have come across the article and would have been alerted to the relevance of the Khorana Grant Proposal from that citation.

The same reasoning applies to Dr. Khorana's 1975 grant application to the National Institutes of Health, through what was then the Department of Health, Education, and Welfare. This application was titled "Synthetic[*8] and Biological Studies of Nucleic Acids," and its predecessor grant, like the NSF Grant Proposal, was referenced by grant number on the first page of the Panet and Khorana article in the Journal of Biological Chemistry. Newland Decl., Ex. G. Access to the NIH Grant Application prior to March 28, 1984 was available under the Freedom of Information Act pursuant to 45 C.F.R. § 5.72(b), which provides that records pertaining to Department of Health and Human Services grant applications are available to the public under the Act. See 45 C.F.R. § 5.1 et seq. (1983).

CONCLUSION

For the above reasons, the court concludes that there are no underlying factual disputes and that, even assuming all facts as alleged by defendant, no reasonable jury could find that the Khorana NSF Grant Proposal and the Khorana NIH Grant Application were not accessible to the relevant public prior to March 28, 1984. It therefore rules as a matter of law that the two documents are prior

art within the meaning of 35 U.S.C. § 102(b).