1

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF MARYLAND/NORTHERN DIVISION
2

3

4  BRASSICA PROTECTION PRODUCTS,
   LLC, ET AL.
5          Plaintiffs

6
                    MDL/WMN 01-01388
7    v.

8  SUNRISE FARMS, ET AL.
                    April 27, 2001
9          Defendants
   _____/
10
            TRANSCRIPT OF MOTIONS HEARING
11       BEFORE THE HONORABLE WILLIAM N. NICKERSON
            UNITED STATES DISTRICT JUDGE
12

13

14  APPEARANCES:

15  On behalf of the Plaintiffs:

16  E. Anthony Figg, Esquire
    Paul M. Sandler, Esquire
17  W. Michael Mullins, Esquire
    Joseph Hynds, Esquire
18

19  On behalf of the defendants:

20  Philip M. Andrews, Esquire
    Delbert Barnard, Esquire
21  Joseph A. Kromholz, Esquire

22

23  Reported By:

24  Jacqueline Sovich, RPR, CM

25  Official Court Reporter

2

1          (PROCEEDINGS)

2          THE CLERK:  The matter now pending is Multi District

3  Litigation Number WMN-01-1388, Brassica Protection Products,

4  et al. versus Sunrise Farms, et al.  This matter comes before

5  the Court for scheduling and status conference.

6          THE COURT:  All right.  Counsel, the first thing that

7  I would like to do is call roll, find out who's here, who's

8  not here, if anybody who should be here, so I'll be up to date

9  on where we are in that respect.

10         Maybe the best way to do that is simply to go from

11  your right to your left.

12         MR. SANDLER:  Good morning.

13         THE COURT:  Mr. Sandler?

14         MR. SANDLER:  You know Mr. Mullins.

15         MR. MULLINS:  Good morning.

16         THE COURT:  Extremely well at the moment.

17         MR. SANDLER:  To my left is Mr. Figg, Anthony Figg,

18  from Washington.

19         MR. FIGG:  Good morning.

20         MR. SANDLER:  Lead counsel for the plaintiffs to my

21  left is my colleague and partner Mr. Joseph Hynds.

22      MR. HYNDS:  Good morning.

23      MR. ANDREWS:  Good morning.  Phillip Andrews.  To my

24  left is Del Barnard from Seattle.

25      MR. BARNARD:  Good morning.

3

1       MR. ANDREWS:  This Jules Shepherd, who works with my

2  office in Baltimore.

3       MS. SHEPHERD:  Good morning.

4       MR. ANDREWS:  Joseph Kromholz from Milwaukee.

5       MR. KROMHOLZ:  Good morning, Your Honor.

6       MR. ANDREWS:  And last, but not least, Don Ullrich,

7  who's from Sacramento, California.

8       THE COURT:  Nice to have had you.

9       Is there, to anybody's knowledge, anybody not here

10  who should be here?

11       MR. ANDREWS:  I believe, Your Honor, there's one

12  individual defendant who I don't believe has appeared by

13  counsel, and I'm not sure what his status.

14       THE COURT:  Chau M. Do?

15       MR. ANDREWS:  Yes, sir.

16       THE COURT:  All right.  Nobody is carrying a proxy

17  for anybody else?  All counsel are here?

18       MR. ANDREWS:  Yes, sir.

19       THE COURT:  Mary Jo, wasn't there another defendant

20  than that, Rust?

21       THE CLERK:  Mr. Barnard tells me that he, Mr.

22  Barnard, says that he represents Mr. Rust, that he filed his

23  answer for him, and doesn't know why he's not on the docket.

24  I will check with Claudia on that.

25      THE COURT:  All right.  We'll get it straightened out

4

1   as to Mr. Rust.

2      Is there anybody here who is not a member of the bar

3   of this Court and who also is not a member in good standing of

4   any other District Court?

5      MR. SANDLER:  Your Honor, at this time, we have not

6   moved -- asked for pro hac vice from my colleagues from

7   Washington, but we will do so after this session, if that's

8   acceptable.  They have appeared on occasion in this Court

9   under appropriate arrangements in the past.

10      THE COURT:  As long as they are members of any other

11   in good standing.

12      MR. SANDLER:  They're members of the bar in District

13   of Columbia, which, under the rule, would allow them to be

14   heard.

15      THE COURT:  They will be admitted.

16      MR. ANDREWS:  Miss Shepherd is -- although she's a

17   lawyer not admitted in District court yet, she's awaiting her

18   Maryland bar results.  She's a member of the Florida, West

19   Virginia, and District of Columbia bars.

20      THE COURT:  No other Federal Court at the moment?

21      MS. SHEPHERD:  Not at the moment, sir.

22          MR. ANDREWS:  Also, I should tell Your Honor, Mr.

23  Rust is here seated in the back.

24          THE COURT:  All right.

25          All right.  Counsel, first order of business is the

5

1  show and tell with regard to the electronic case filing system

2  that Claudia Gibson is going to present.  And before that is

3  presented to you, I will simply let it be known on the record

4  that this is not -- it is a luxury, but it's going to be

5  required that you use this system.  If it's not utilized by

6  everyone, it will produce all kinds of problems.

7       Mr. Welkie, you're going to do this?

8       MR. WELKIE:  Yes, I am.

9       THE COURT:  I'm sorry.  I thought maybe Claudia was

10  hiding behind that screen.

11       All right.  Well, I'll leave it up to you.

12       (Presentation by Mr. Welkie of the electronic filing

13  system.)

14       THE COURT:  Counsel, Claudia's offering to provide

15  some training to paralegals or whomever you may want to have

16  trained with the system.  If you all could possibly agree on a

17  date that she can set aside, and you can send whomever you

18  want to send to sit down with her and go through this.

19       MR. ANDREWS:  Do you want a --

20       MR. SANDLER:  I'm wondering if I could talk to Mr.

21  Andrews and call Claudia to get some dates, because I want to

22  get the people in my office and maybe in his office to

23  coordinate it.

24        MS. GIBSON:  That's fine.

25        MR. SANDLER:  Thank you.

6

1       MR. ANDREWS:  Thank you.

2       THE CLERK:  Thank you.

3       THE COURT:  All right.  There's an overriding theme

4  to all of this that I came across in the manual for complex

5  litigation that I want to -- it's just one paragraph, appears

6  at page 25 that struck me as all-important.

7       It says that the added demands and burdens of complex

8  litigation place a premium on professionalism.  Added to by

9  counsel, is cooperation, professional courtesy, and acceptance

10  of the obligations owed as officers of the Court is critical

11  to successful management for litigation.

12       Counsel need to perform their obligations as

13  advocates in the manner that will foster and sustain good

14  working relations among themselves and with the Court.

15       They need to communicate constructively and civilly

16  with one another and attempt to resolve disputes informally as

17  much as possible.

18       Even where the stakes are high, counsel should avoid

19  under necessary contentiousness and limit the controversy to

20  material issues genuinely in dispute.

21       I'm confident that everyone here operates in that

22  fashion in every instance, but it certainly is critical in

23  cases of this type.

24        I wanted to start out talking about designations of

25  counsel.  It strikes me that we are not going to need to run

7

1  through the whole gamut of steering committees and that sort

2  of thing in this proceeding, although some of you may have a

3  different idea.

4      It seems to me that perhaps the liaison counsel and

5  lead counsel are the two principal designations that we should

6  concern ourselves with, and maybe those two functions can be

7  combined.

8      It would appear thus far that Mr. Sandler and Mr.

9  Andrews have filled the role at least of liaison counsel, and

10  I appreciate the letters that were submitted.  I don't know

11  whether you all have had any opportunity to discuss this among

12  yourselves or whether there might be some --

13      MR. SANDLER:  Your Honor, you'll be pleased to hear I

14  hope that not only have we had many discussions, that all

15  lawyers in the case convened together in person here in

16  Baltimore to map out ideas to be helpful to the Court, so that

17  the paragraph that you read could be fulfilled and continued

18  throughout this contentious litigation.

19      So we have done that, and at the proper time we, when

20  asked, will share with you some of the ideas that we've had

21  and some of the differences.

22          THE COURT:  All right.  With respect to designation

23   of liaison counsel, is there any thought that anyone other

24   than Mr. Sandler and Mr. Andrews who have filled that role up

25   to this point to not continue?

8

1       MR. ANDREWS:  I guess it's a chance for the

2  defendants to tell me not to do it any more.

3       (Laughter.)

4       MR. ANDREWS:  I'm happy to serve in that role.  I

5  think that's what we anticipated.

6       THE COURT:  With respect to the designation of lead

7  counsel, and it strikes me that those responsibilities in this

8  particular situation are probably significantly less than in

9  most MDL cases, but that certainly the two designations could

10  be combined.

11       Does anybody have any particular thoughts about that?

12       MR. ANDREWS:  We had discussed among defense counsel

13  about the counsel.  I think Your Honor's right, but this case,

14  and given there are only four lawyers, our notion would be, if

15  acceptable to the Court is, I'll be liaison counsel.

16       I think there are a number of things liaison counsel

17  would do in terms of scheduling and pulling things together

18  that makes sense, whether that person's lead or liaison, to

19  do.

20       The only point we might depart from that is arguing a

21  particular motion or taking a particular deposition, something

22  what might make sense for someone other than me or Mr. Barnard

23  or Mr. Ullrich or Kromholz, designated, and let the plaintiffs

24  in know who, and let that person take the lead, as opposed to

25  right now for saying for all purposes it's got to be me or one

9

1  of these other gentlemen.

2      THE COURT:  Anybody else that wanted to chime in with

3  respect to that, or is everybody --

4      MR. SANDLER:  If Your Honor would not object, it

5  would not be inappropriate to suggest that Mr. Figg serve as

6  the lead counsel for the plaintiffs, although, as you

7  indicated, there probably won't be much difference in terms of

8  how Your Honor is interfaced with the case, because we among

9  ourselves carve out our responsibilities.

10      But in light of the nature of this case, the lead

11  attorney is really Mr. Figg, and I am here at his request to

12  be of assistance and serve as liaison counsel and to render

13  the proper collegial support that's appropriate.

14      THE COURT:  All right.  What we should do, or what I

15  should have is a proposed order with respect to these

16  designations, and perhaps Mr. Sandler and Mr. Andrews can get

17  together with respect to a proposed order designating liaison

18  and lead counsel.

19      Is ten days enough time to submit something in that

20  respect?

21      MR. ANDREWS:  Yes, yes, sir.

22          THE COURT:  And that should include, if it's expected

23  that compensation will be an item that should be included for

24  any work performed in those designated capacities, the terms

25  and the procedures for payment of any compensation should be

10

1  set out in that order.

2      The manual for complex litigation is an excellent

3  guide with respect to all that, as you might already be aware.

4  Sections 20.222 and 20.223 cover it pretty well.

5      Is it expected that there are going to be any new

6  suits filed?

7      MR. SANDLER:  There any be, but we're not sure.

8  We're looking into that.  We will be able to make a decision

9  shortly, Your Honor.

10      And before you leave this topic, when it's

11  appropriate, I would like to ask the Court a question.

12      THE COURT:  Go ahead.

13      MR. SANDLER:  I'm not clear on what Mr. Andrews had

14  in mind in terms of lead counsel.  Is he going to serve as

15  lead counsel as well as liaison?  But I'm not clear on exactly

16  who the lead attorney would be in their case from what his

17  response was.

18      MR. ANDREWS:  Let me see if I can clarify it.  The

19  notion would be this:  I'd be happy to be liaison and lead

20  counsel, as long as there's a flexibility for particular

21  depositions or particular proceedings that with notice to the

22  Court and to the plaintiff.

23       For example, if Mr. Kromholz was going to take the

24  lead in deposition, or take the lead at a hearing, that we

25  notify the Court and counsel of that.

11

1      If the Court wants someone to have the title of lead

2  counsel, I'm happy take it, but I think, in fairness to the

3  other parties here, given the fact that it's a small group,

4  we'd like to have that flexibility.

5      THE COURT:  It seems appropriate to me.  Do you have

6  any concerns about that end?

7      MR. SANDLER:  No.  As long as we know that Mr.

8  Andrews or someone is the lead attorney and the liaison

9  attorney, that's fine, because then if he wants to consult

10  with his colleagues on any matter, of course, that would be

11  appropriate.

12      But I just want to be sure we had a designee of lead

13  counsel, with the understanding that, Mr. Andrews, you may

14  have to talk to others to get consensus on decisions.

15      MR. ANDREWS:  Well, and that others would, instead of

16  me standing up arguing a motion, perhaps someone else

17  might.

18      MR. ANDREWS:  Of course, that goes without saying.

19      MR. ANDREWS:  Thank you.  That's fine.

20      THE COURT:  I'm wondering how counsel feel about the

21  consolidation of all of these cases for trial here.  As you

22  may be aware, there's a recent bill that passed the House,

23  House Bill 860, which, in effect, as I understand it, bypasses

24  the Supreme Court decision in Lexicon, which requires cases

25  all be remanded back to the original jurisdictions.

12

1    Not that you need to commit yourselves at this point,

2   but I'm just wondering whether there's any sense as to whether

3   these cases can be consolidated for trial here.  It helps us

4   to keep a focus down the road as to where we're going and when

5   we're going to get there, and just keeps things in better

6   focus.

7    MR. SANDLER:  On behalf of the plaintiffs, we think

8   that would be appropriate.  In fact, it would be helpful in

9   saving costs, expenses, streamlining judicial management of

10  the cases, and we would be willing and satisfied, more than

11  satisfied, to take that approach.

12    MR. ANDREWS:  As a Baltimore lawyer, I'm happy to try

13  my case here.  That's where I would be anyway.

14    But I think that these other lawyers can speak up.

15  There's a concern about committing to that at this point,

16  given the early juncture of this case.

17    MR. KROMHOLZ:  Your Honor, I have a concern about

18  that.  I feel it's convenient to say that, to the plaintiff's

19  position at this time, but I mean no disrespect to the

20  Baltimore courts, I was the lone voice crying in the

21  wilderness saying I didn't think this case needed to be

22  consolidated in one court.  I was so persuasive, you see me

23  standing here.

24          But it seems to me one of the underlying arguments in

25  favor of that consolidation was the understanding that, well,

13

1  they're all going to go back and have their trials in their

2  local jurisdictions, and now we're kind of chipping away at

3  that.

4        I certainly agree to that without really talking to

5  my client.  I think -- I represent a very small farmer, you

6  know.  To have him be sued and then to say, well, now you've

7  got to defend yourself in Baltimore from the Fox River Valley

8  in Wisconsin, that's a lot for him to have to swallow, and so

9  I'd respectfully ask the Court for an opportunity to consider

10  that with my client.

11        THE COURT:  Certainly.  I'm just trying to get the

12  temperature.

13        MR. BARNARD:  I'm Mr. Barnard.  My position is the

14  same thing.  I need to talk the my client.  At the present

15  time, he's expecting the trial to be back where the witnesses

16  are.

17        MR. ULLRICH:  Your Honor, Mr. Ullrich.  I'm on the

18  same position, too.  I'll consult with my client.  I've

19  considered the idea of consolidating the trial here.  At this

20  point in time, I'd rather not commit to it.

21        THE COURT:  That's fine.  I'm not asking for a

22  commitment, just trying to get a sense of where you are.

23       All right.  In the letters that I had from Mr.

24  Sandler and Mr. Andrews, there were listings of motions that

25  are on the table, and I'm wondering whether those are a

14

1 complete list of everything everybody knows about that's on

2 the table at this point.

3        MR. SANDLER:  They haven't all been fully briefed,

4 but the motions that have -- I mean, that's part of what we

5 talked about earlier among counsel as to what might be filed,

6 but what you see here is what has been filed is current.

7        THE COURT:  And that's all that's been filed up to

8 this point?

9        MR. SANDLER:  Yes.

10        THE COURT:  Any of those motions that might, for some

11 reason, be moot or maybe withdrawn or uncontested?

12        MR. ANDREWS:  Well, again, as Mr. Sandler said, Your

13 Honor, that's one of the things we talked about this morning.

14 If Your Honor recalls from my April second letter on page 3,

15 it's the defendant's view that the appropriate way to approach

16 this case is to break it up in sequence, or stages, which is

17 something we think the manual provides for and encourages, and

18 one of the things we discussed was the possibility of

19 combining the first of the six -- first and second of the six

20 stages into one piece.  Now, that would be the claim

21 construction and validity.

22        Mr. Barnard has a pending motion on validity, and the

23  thought was that'd be what the parties were trying to agree to

24  was we would do a -- defendants jointly would do a

25  supplemental memorandum on claim construction and validity.

15

1   The plaintiffs would respond, and any discovery would be

2   limited to matters raised in the original or the supplemental

3   memorandum, and then Your Honor could rule.

4          It's the defendant's view that then, of course, with

5   Your Honor's ruling, the discovery as to the other stages that

6   I've listed in my letter would then proceed in sequence.

7          But the idea, to answer Your Honor's question, Mr.

8   Barnard's motion for summary judgment on validity or

9   invalidity, if you will, will be supplemented by the

10  defendants, responded to by the plaintiffs, limited the

11  discovery only to what's in those papers, and then both claim

12  construction validity will be ruled on by Your Honor.

13          We think it makes sense.  The Court's got to construe

14  what the claims are before we can proceed and focus discovery.

15          And with respect to validity, if the patents aren't

16  valid, we, the defendants, think it would be inefficient and

17  waste of time and money to jumping into discovery and

18  enforceability and infringements and the like.  The first

19  question is were there claims in the past, and second is are

20  they valid?

21          THE COURT:  We're getting into an area that I thought

22  would be the area of primary concern and contention, I guess.

23  Why don't we just go ahead and move toward into this?

24      The last patent case that I tried was before the

25  Markman decision, which appears to me to have a considerable

16

1  effect on how this one is going to be tried, or how any patent

2  case, I guess, is to be tried now.

3      But I'm, frankly, anything but clear on just how the

4  whole thing gets fleshed out under Markman, how much you all

5  believe should be for the Court and how much for the jury, or

6  might have some difficulty comprehending how once -- once the

7  Court resolves the issues under Markman, what there is that's

8  really left in terms of other than damages.  In terms of

9  infringement, I don't know whether it's much left for the

10  jury.

11      You all are perhaps experienced all this and

12  understand it all.

13      MR. FIGG:  Your Honor, this question that you've

14  raised is something that has got a lot of attention in the

15  patent bar, as you can imagine, since Markman was decided,

16  what is the scope of claim construction, when should it occur

17  during the proceedings of the litigation.

18      We think that, in this case, some of those issues are

19  sort of forced on us by the fact that the plaintiffs have

20  filed, and, as we've heard this morning, intend to keep their

21  motion for summary judgment of patent invalidity.

22          In presenting that motion, of course, the plaintiff

23  -- the defendants must come forward with their interpretation

24  of the claims supported by the information from the

25  prosecution history, the patent and whatever else they think

17

1  is appropriate.

2        We then will oppose that motion.  And, in doing so,

3  we will address claim construction issues, because we think in

4  deciding the motions for summary judgment of invalidity, the

5  Court will necessarily have to make some decisions about claim

6  construction.

7        So this is a situation, we believe, where a separate

8  Markman hearing is probably not going to be necessary.  It

9  will be something that is done as part of the summary judgment

10  motion.

11        Markman has -- and its progeny in the Federal Circuit

12  have certainly made claim construction an issue of law for the

13  Court to decide.

14        And it's an issue that is to be decided based upon

15  intrinsic evidence.  But, invariably, there are some facts

16  which come into that determination, for example, what the

17  terms in the claim mean to a person of ordinary skill in the

18  art.  So the Court has to have some input on who is this

19  person of ordinary skill and the art.

20        There are various issues like that that come into

21  play, but we think that here, given the defendant's desire to

22  move for summary judgment at this early stage, the Court will

23  probably get to claim construction in that context.

24        Our position is that this case does not warrant

25  dividing it up in six different pieces and litigating each of

18

1  them piecemeal, as has been proposed in Mr. Andrews's letter

2  on page 3.

3        While indeed there are number of defendants here, the

4  issues of validity are certainly going to be common with all

5  of them, and the issues of infringement, we believe, are going

6  to be common with all of them.

7        The issues of damages will probably be unique in the

8  sense of what is the volume of their sales, but this is a

9  case, most likely, and I don't want to be absolutely committed

10  to this at this point, but this is a case where our client

11  operates its business through licensing the patent to

12  producers.

13        And so, most likely, the damages here will be in the

14  form of royalty of -- a reasonable royalty, and the issues on

15  that will be the same with respect to all of the defendants.

16        The notion that you take discovery on validity, then

17  you come back and take discovery on infringement, then you

18  come back and take discovery on unenforceability or patent

19  misuse, then you get to these other issues, is going to

20  increase rather than decrease the cost of this litigation.

21        Because there will be witnesses who have things to

22  say about all of these issues, and it would be a waste of time

23  to depose a witness on validity and then come back later and

24  redepose that same witness on issues of infringement.

25      I never been involved in a case in which the case has

19

1  been divided up like this for discovery, and I think it would

2  be counter-productive.

3      I would also say that I can understand why defendants

4  want to put the issue of validity first, because that is

5  essentially their defense.  But, quite frankly, the defendants

6  have a very steep uphill climb here.

7      As you know, the patents are presumed to be valid,

8  but in this case, we had a litigation earlier in Delaware,

9  which led to a consent judgment being entered after that a

10  reexamination of the patent here was requested in the patent

11  office, and all of the prior art, all of the invalidity

12  arguments that are being made now have already been addressed

13  in a reexamination by the patent office, and the patent office

14  reaffirmed the validity of the claims.

15      Then on top of that, the two other patents in suit

16  issued, and the examiner considered all of that prior art in

17  deciding to allow the other two patents.

18      So the prior argument that's being asserted as the

19  basis for invalidity here has been considered three times by

20  the patent office, and all three times the patent's validity

21  has been reaffirmed.

22          So we think that to postpone our case on infringement

23  so that they can do whatever they want to do on validity would

24  simply not be a fair way of dealing with this validity issue,

25  and we think it would be counter-productive.

20

1     THE COURT:  Do you have a specific proposal as to

2  what order to address what issues?

3     MR. SANDLER:  Your Honor, as far as discovery is

4  concerned, I really think that we should follow the procedure

5  that is followed in virtually every patent case that I've been

6  involved with, that we simply go forward with discovery on the

7  issues that are raised by the pleadings.

8     And those issues are, first and foremost,

9  infringement, because we filed a complaint alleging that the

10  defendants infringed the patent.  They have filed defenses of

11  invalidity and unenforceability, and we don't dispute their

12  right to take discovery on those issues.

13     But my point is simply I don't think there is a

14  reason here to depart from what, in my experience, is

15  certainly the norm in patent litigation, which is that the

16  parties go forward with discovery on all of the issues.

17     As far as the Court's dealing with the parties of

18  these issues, I think they have filed a motion for summary

19  judgment on invalidity.

20     We may file dispositive motions at some point down

21  the road as well.  And those motions will, you know, be

22  considered by the Court at the Court's pleasure.

23      There is one issue that we weren't really sure where

24  it stood, we got a little bit of a clarification this morning.

25  The defendant Banner Mountains, which is the California

21

1 defendant, filed a series of rather complicated antitrust and

2 unfair competition claims.

3       We moved under Rule 12(b)(6) to dismiss a number of

4 those claims, and we had understood that that motion, that

5 those counter-claims were going to be withdrawn, and I will

6 let Mr. Ullrich speak for himself, but I understand that he

7 may indeed withdraw them and refile them.

8       This is one area that where the Federal Circuit has

9 instructed that bifurcation has become the rule rather than

10 the exception, because the antitrust claims, you know, in a

11 case like this, tend to raise the complexity of the case to a

12 new level.  And those claims are pendent on the outcome of the

13 patent claims.

14       And so oftentimes, if the patentee prevails on the

15 patent claims, the antitrust claims go away entirely.  And

16 even if the patentee loses, sometimes the ruling on the patent

17 issues will simplify the antitrust claims.

18       Now, we don't know for sure exactly what's going to

19 happen with those claims, but that is the one area where we

20 think there might be some merit in holding those claims in

21 abeyance until the patent issues have been resolved.

22          THE COURT:  All right.  Mr. Andrews, you've been

23  waiting patiently to respond.

24          MR. ANDREWS:  Thank you, Your Honor.

25          Our view is that you take the case in sequence with

22

1 the opportunity for summary -- limited discovery on each of

2 the stages and summary judgment, the end of those stages, that

3 avoids a couple of things.

4        One, it really keeps the expense down.  It takes less

5 of the Court's time because, alternatively, Your Honor's going

6 to be faced with an omnibus motion with all the issues in it,

7 and if you proceed in this way, it just makes sense, there is

8 no point until we have the claim construction and it's

9 determined whether or not the patents are valid, there's no

10 sense in going ahead and running off and doing discovery on

11 infringement or damages.

12        The point is, and despite Mr. Figg's view of how he

13 thinks the litigation will go, we think it's going to go quite

14 different.  Our point simply was take the thing in stages.

15        I think Your Honor certainly has the discretion to

16 set this up the way that Your Honor wants to, but our point

17 would simply be do the claim construction and validity first.

18 Any discovery that has to be done in discovery can be limited

19 to those issues, then Your Honor decide the motions and we go

20 on from there.

21        But there's no point jumping ahead to infringement or

22  while that motion's pending running around deposing a number

23  of people.

24        The plaintiffs wanted this case here.  That's what

25  they told the MDL panel.  All the witnesses for them are here,

23

1  in Washington.  If there's any inconvenience, it's really for

2  the various defendants who are located elsewhere.

3        It seems to me it makes a lot more sense to take an

4  hour's deposition on validity of the issue of someone and then

5  after the Court rules, if there's something to come back to,

6  at some later point in time come back and do a deposition at

7  the next stage on infringement as opposed to filing all that

8  discovery early on.  I think that's what the manual

9  anticipates, and we think that's what makes sense here.

10       When we talked about it this morning, and when I met

11  with Mr. Sandler and Mr. Hynds about a month ago and tried to

12  talk about how long a period of discovery we think would be

13  appropriate, and completely agree, or commit ourselves to

14  agree, we spoke generally of around nine months for fact

15  discovery, three months for expert discovery.

16       And we think that -- and understand the burden's on

17  the Court to decide motions and handle other matters, but we

18  think in the context of that period of time, we could run

19  through these things in sequence and stages.  That's just a

20  more sensible and efficient way to do it, certainly more cost

21  effective.

22        THE COURT:  Do you agree with Mr. Figg that the

23  Markman claim construction issues are -- would be dealt with

24  in your motion, summary judgment?

25        MR. ANDREWS:  Coupled with validity, yes, sir.  I

24

1  mean, our point was claim construction first. We had

2  anticipated that we'd speak this morning and come to some

3  common ground on this.

4       Our view initially had been to say each side would

5  present Your Honor with a brief or memorandum on claim

6  construction and then have Your Honor rule on that, and then

7  we would move forward to validity and infringement and the

8  like.

9       It was suggested by Mr. Sandler and Figg why not

10  combine chose things, and I think defendants are willing to

11  combine claim construction and validity in a summary judgment

12  context. So long as we have discovery committed to those

13  issues, I don't think there's going to be much difference,

14  have the Court decide that, and then proceed.

15       THE COURT:  Do you -- I don't want to highlight the

16  work of counsel unnecessarily, but it occurs to me it might be

17  helpful to have some briefing just with respect to this

18  procedural issue.

19       MR. FIGG:  We can do that, Your Honor. There has

20  been a lot written and said about how patent trials should be

21  conducted when claim construction proceedings occur, and I

22  think we can provide some of that to Your Honor and see how

23  other people have thought this through.

24        I think that the most common, if there is a separate

25  Markman proceeding, which I think most patent litigators

25

1  believe is a good idea, it's usually somewhere toward the end

2  of discovery.  But by virtue of the filing of the summary

3  judgment motion, that's -- that process, I think, is likely to

4  be accelerated here.

5        I just wanted to make sure that it was clear that,

6  while we did reach an agreement this morning, that neither of

7  us is uncomfortable with the idea with the Court's looking at

8  the claims and construing them in the context of summary

9  judgment, there was no agreement that discovery on -- should

10  be limited to validity while that consideration of that motion

11  is going on, while you have that motion under advisement.

12        We believe that discovery should simply go forward on

13  the issues of the case, and the notion that a lawyer is going

14  to ask one hour's questions of the main inventor on this

15  patent and then he's going to sit down and we're going to come

16  back later, I think, in my experience, it doesn't work that

17  way.

18        If Mr. -- If Dr. Talalay is going to be deposed, he

19  should be deposed on all of the issues of the case, and that

20  should be the end of it, and we should move on.

21        Otherwise, this case is going to take much longer and

22  cost both sides a lot more if we have to have two or three or

23  even four depositions for each of the witnesses.  There really

24  aren't that many witnesses in this case.

25       There are literally just three or four people on

26

1  plaintiff's side that have been actively involved with the

2  invention of the patents and the business dealings that have

3  exploited the patents.

4      The defendants, I think, probably we're talking about

5  a single deponent on at most a couple from each of the

6  defendants, so I think that discovery can move forward much

7  more efficiently if we do it on all of the issues at the same

8  time.

9      MR. ANDREWS:  I think there will be more depositions

10  than Mr. Figg anticipates, and I think discovery has the

11  possibility in this case of becoming enormous.  I think it's

12  better to take the bite-size approach to that.

13      But my point simply is, if I think briefing it, if

14  Your Honor would like that, it might make some sense, and we

15  can each decide to give you support for what we're saying as

16  to our approach.

17      But I think, as a practical matter, taking it a step

18  at a time, particularly given this kind of case and the fact

19  that the plaintiffs wanted the case here and their witnesses

20  are all here, that any inconvenience is going to be on the

21  defendants.  We think sequencing it makes more sense.

22        THE COURT:  It seems to me I need some briefing from

23   you as to just how we're going proceed in all respects,

24   discovery-wise, maybe a proposed discovery schedule, and then

25   an overall concept as to how you believe that the matter

27

1  should be present to me and to the jury.

2      I'm thinking maybe two weeks to submit something to

3  me, is that enough time?

4      MR. ANDREWS:  Yes, sir.

5      MR. SANDLER:  If I understand -- well, let me see if

6  I understand what is happening.  They're essentially moving

7  under Rule 42 for separate trials, or separate proceedings on

8  six different issues.

9      THE COURT:  That's what he sets out in his letter.

10  Whether he really --

11      MR. FIGG:  I'm just thinking of the procedure to get

12  the information to Your Honor that you have requested.  Should

13  we wait for the defendant's motion and then respond to that,

14  or do you want something simultaneous?

15      THE COURT:  I was thinking simultaneous.

16      MR. FIGG:  That's fine.

17      THE COURT:  You have your views as to how it ought to

18  be, they have theirs.

19      MR. FIGG:  That's fine.

20      MR. ANDREWS:  Very well.

21      THE COURT:  Two weeks give you enough time?

22      MR. ANDREWS:  Yes, sir.

23      MR. FIGG.  Sure.

24      THE COURT:  That would be May 11th.

25      Do you think you want to have a hearing with respect

28

1  to it after you submit whatever you're going to submit?

2      MR. FIGG:  I think we would leave that to Your Honor,

3  if you think it would be helpful.

4      THE COURT:  If I do, I will let you know, how about

5  that?

6      MR. ANDREWS:  Very well, thank you.

7      I take it Your Honor does not want us to brief

8  whether or not to have a hearing?

9      THE COURT:  No.

10     (Laughter)

11     THE COURT:  I would like do something that I know

12  Judge Motz has done in MDL matters that he has had, and that

13  is to schedule a telephone conference with liaison counsel on

14  a monthly basis just to make sure we're all up to speed on

15  what's out there and the issues that are pending, or maybe any

16  new developments that I should be aware of, outstanding

17  rulings that you all are waiting for.

18     Perhaps on the last business day of each month, we

19  could get together on the telephone 9:30 that the morning,

20  maybe something like that --

21     MR. ANDREWS:  Yes, sir, that's fine.

22    THE COURT:  -- it would be helpful.

23    MR. SANDLER:  That's fine.  I'm wondering, may we

24  call your clerk to get dates to find, because you are saying

25  they are business days sometime in the morning.  That could be

29

1  a Friday, it could be a --

2      THE COURT:  Well, I've got a calendar here.  It looks

3  to me like May 31st would be the first one, last business day

4  in May, 9:30.

5      MR. SANDLER:  What time?

6      THE COURT:  9:30 in the morning.  Are you available?

7      MR. SANDLER:  Yes.  That would be -- well -- I have a

8  conflict, but I mean that's why, can we do it at a different

9  time or earlier?

10      THE COURT:  Yes.  9 o'clock?

11      MR. SANDLER:  Yes.

12      MR. ANDREWS:  That's fine.  Would Your Honor like Mr.

13  Sandler and me to initiate the call?

14      THE COURT:  That will be helpful.

15      MR. ANDREWS:  I'm happy to do that.

16      THE COURT:  All right.

17      MR. SANDLER:  5:31 9 a.m.  Okay.

18      THE COURT:  We're looking at June 29th, July first

19  31st, and so on.

20      MR. SANDLER:  Same time or later?  Doesn't matter.

21      THE COURT:  Same time.

22      MR. SANDLER:  Yes.

23      THE COURT:  Keep everything --

24      MR. SANDLER:  Yes, Your Honor.

25      THE COURT:  -- tuned in together.

30

1    (Pause.)

2    MR. SANDLER:  So maybe on the 31st, we'll pick the

3  next three, is that, or --

4    THE COURT:  That's fine.  We can do that.

5    MR. SANDLER:  I didn't want to have confusion in the

6  sense I was thinking there was a conference or wasn't or

7  wouldn't be available.  Thank you.

8    THE COURT:  That's a good idea.  Each time we talk,

9  we'll determine when the next time is we're going to talk.

10    MR. SANDLER:  If we do the piecemeal litigation, just

11  think we'll be talking for the next ten years every month.

12    THE COURT:  All right.  That really covers everything

13  that I had on my agenda, I think, but perhaps there's some

14  things that you have on your minds that we need to talk about.

15    MR. FIGG:  Your Honor, there was, I think, an order

16  asking the parties to hold off on additional filings or

17  discovery until this conference had occurred, and two things

18  occur to me.  The summary judgment motion is outstanding.  We

19  also have a motion, a couple of motions that are outstanding

20  for which opposition briefs would be due, and I think we need

21  some guidance.

22          THE COURT:  When are they now due?

23          MR. FIGG:  It depends on when you start counting, I

24  guess.  That would have been due some time ago, but then the

25  consolidation proceedings sort of put everything on hold, and

31

1  I think we all operated on the assumption things were still on

2  hold until this hearing, and we understand the summary

3  judgment motion is going to be withdrawn or supplemented or

4  something, so I think it would be premature for us to respond

5  to it.

6        THE COURT:  I'm satisfied to count today as the day

7  on which any motion that requires a response was filed so that

8  you'll have normal time from today to respond, but if there's

9  anything you think should be responded to --

10        MR. FIGG:  That will be fine with us.  I think the

11  most of the motions, then, that are remaining are our motions.

12  The summary judgment motion, however, I -- if I hear

13  defendants correctly, that isn't quite ready for us to file an

14  opposition brief to, because it's going to be supplemented.

15        And, if that's so, then I will ask that our time

16  period for responding to that commence when they file their

17  supplemental brief.

18        THE COURT:  Is there going to be a supplement?

19        MR. ANDREWS:  I believe there will be, and that

20  arrangement is certainly fine with us.  We had thought we

21  would ask if we could have 30 days to supplement it, and then

22  their time would start running after that, if that's okay with

23  Your Honor.

24        THE COURT:  Any concerns?

25        MR. FIGG:  Whenever they chose, from our standpoint.

32

1     THE COURT:  Do we have any concerns about a 30-day

2  time period for them to supplement?

3     MR. FIGG:  No.  I -- as I view it, this is their

4  motion.  They are essentially withdrawing the original motion

5  pending supplementation, so whenever they do that is up to

6  them, and then we'll respond in a timely way.

7     THE COURT:  All right.

8     MR. ANDREWS:  That's fine with us.

9     THE COURT:  That motion will be submitted within 30

10  days, and we'll have normal response time.

11     MR. ANDREWS:  Yes, sir.

12     (Pause.)

13     THE COURT:  Any other matters you wanted to discuss?

14     MR. FIGG:  Your Honor had asked, I think, that

15  discovery be held in abeyance until this hearing, and I guess

16  the question in my mind is, is it still in abeyance, or should

17  the parties respond to outstanding discovery and feel free to

18  initiate new discovery?

19     THE COURT:  That seems to me that may be a matter

20  that's going to be resolved in the context of the filings that

21  you're going to give to me with regard to how we're going to

22  proceed.

23      MR. FIGG:  So we'll wait until Your Honor gets back

24  to us on those submissions to commence discovery?

25      THE COURT:  Unless there's something that you feel

33

1  needs more immediate attention.

2      MR. FIGG:  No.  In view of the short schedule you've

3  set for that, I think that makes sense, from plaintiff's

4  standpoint.

5      THE COURT:  Any other concerns, Mr. Andrews?

6      MR. ANDREWS:  No other concerns, Your Honor.

7      One last item, that, I believe, is on Your Honor's

8  agenda, which is the application of the local rules.

9      THE COURT:  I know it's on the agenda.  I don't know

10  anything really in particular that we need to get into with

11  respect to it.

12      Any concerns about the local rules?  If there's

13  anything there that's concerning you, I'm certainly glad to

14  hear from you.

15      MR. ANDREWS:  No.  I can't say I know all the local

16  rules, but at least I know where to find them, as long as

17  we're not operating under some other local rules.  That's

18  fine.

19      THE COURT:  Anything else?

20      MR. SANDLER:  One and last point, a minor -- I have

21  had the privilege of participating in some of the conference

22  calls over the years with Judge Motz on these cases, and

23  sometimes -- I guess my question is, I would expect on

24  occasion other counsel to ask whether they can participate,

25  listen in on the conference call, and I would ask the Court to

34

1 allow that, provided, of course, that the liaison counsel was

2 there.

3        But if others wish to listen in, maybe they should be

4 invited, or unless that's going to make it too complicated?

5        THE COURT:  I would encourage it.

6        MR. SANDLER:  Thank you.

7        THE COURT:  If this case were a Microsoft case or

8 whatever, I might have concern, but not here.

9        MR. SANDLER:  Thank you.

10        THE COURT:  All right.  Anybody else?

11        All right.  I'll look forward to hearing from you in

12 two weeks, I think we said, to get things on track as promptly

13 as we can after I receive those.

14        MR. SANDLER:  Do you need an order?

15        THE COURT:  With respect to?

16        MR. SANDLER:  The first order, order in terms of

17 liaison, lead counsel, what we need to do.

18        But you made some other rulings, or from the bench,

19 and we encapsulate that in an order for Your Honor?

20        THE COURT:  If there's anything you heard that you

21 think ought to be in such an order, I'll leave it to you.

22      MR. SANDLER:  Thank you.

23      THE COURT:  All right.

24      MR. ANDREWS:  Thank you, Your Honor.

25      THE COURT:  Thank you very much.

35

1              (PROCEEDINGS ADJOURNED)

2

3              I, Jacqueline Sovich, RPR, CM, do hereby certify
   that the foregoing is a correct transcript from
4  the stenographic record of proceedings in the above-entitled
   matter.

5

6  _____
   Jacqueline Sovich              DATE
7  Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25