IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN RE: | * | |
| CRUCIFEROUS SPROUT PATENT LITIGATION | * | MDL Docket No. 1388 |
| | * | Hon. William M. Nickerson |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANTS BANNER MOUNTAIN SPROUTS, Inc., a California corporation, and LAWRENCE RAVITZ, individually and doing business as BANNER MOUNTAIN SPROUTS, RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTS II-VI OF SAID DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIMS AND CROSS-CLAIMS**

**I.      Background**

Plaintiffs, Brassica Protection Products, LLC, and John Hopkins University, have filed a motion to dismiss Counts II-VI of the counterclaims and cross-claims of defendants Banner Mountain Sprouts, Inc., and Lawrence Ravitz contained in their answer to plaintiffs' first amended complaint.  The counter-defendants are both plaintiffs.  The two cross-defendants are California Sprouts and The Sholl Group.

Counts II-VI consist of the following causes of action:

Count II - a federal claim asserted under authority of 15 U.S.C. section 1 [The Sherman Act] and 28 U.S.C. sections 1331 and 1337.

Count III [mistakenly labeled as the second Count II in the counterclaims and cross-claims] - a federal claim asserted under authority of 15 U.S.C. section 2 [The Sherman Act] and 28 U.S.C. sections 1331 and 1337.

Count IV – a federal claim asserted under authority of 15 U.S.C. section 14 [The Clayton

Act] and 28 U.S.C. sections 1331 and 1337.

Count V – a state law claim asserted under California Business & Professions Code sections 16700, et seq. [The Cartwright Act – California's anti-trust law] and 28 U.S.C. section 1367.

Count VI – a state law claim asserted under California Business & Professions Code sections 17000 et seq. [Unfair Practices Act] and 28 U.S.C. section 1367.

Count VII – a state law claim asserted under the California common law tort of interference with contract (using the California Commerce Code to establish the contract or contracts) or, in the absence of contract, interference with prospective economic advantage and 28 U.S.C. section 1367.

All of the above causes of action arose out of the same set of transactions and occurrences. Defendants had a long standing business relationship with two grocery chain stores doing business in California, to wit: Albertson's and Sav-mart. Defendants alleged that this long-standing business relationship was founded on one or more contracts under the California Commercial Code, and in any event constituted an economically advantageous relationship to defendants, which was known to counter-defendants and cross-defendants.

One of the cross-defendants, California Sprouts, a licensee of plaintiff Brassica Protection Products, LLC, with regard to patented broccoli sprouts the subject of this patent infringement case, and a sole distributor in California, Nevada, and Arizona of the Brassica label as that label pertains to all sprouts available in the market place, is alleged to have intentionally disrupted this relationship for the purpose of gaining a monopoly over the sale of sprouts in the relevant market, which is the market in which defendants' sprouts compete with the sprouts of

California Sprouts. California Sprouts is a direct competitor of defendants. As the result of the unlawful or unfair market practices of California Sprouts, defendants not only lost their account with Albertson's and Sav-mart as to broccoli sprouts but as to all sprouts. Defendants also received indications that California Sprouts was trying to do the same thing with defendants' remaining customers, one of which was Raley's, defendants' biggest customer. If defendants lose their Raley's account, they will be go out of business. Defendants contend this result is exactly what California Sprouts ultimately wants to happen.

After the filing of the defendants' answer, counterclaims and cross-claims, it has come to the knowledge of defendants that California Sprouts did the same thing to another competitor of its sprouts, to wit: Kowalke Sprout Farm in Topango Canyon, California, by persuading Ralph's, a large grocery chain, to cease doing any business with Kowalke Sprout Farms as to all sprouts if it wanted to be able to buy the patented broccoli sprouts from California Sprouts. California Sprouts using the Brassica label is now the sole supplier of all sprouts to Albertson's, Sav-mart, and Raley's. If these market practices are not stopped, California Sprouts as the distributor of the Brassica label of sprouts will likely become the primary if not sole supplier of _all_ sprouts to consumers in California.

The other cross-defendant is The Sholl Group. Defendants believe this entity is the marketing arm of Brassica Protection Products, LLC, and California Sprouts for the Brassica label (as it is or was the marketing agent for the Green Giant label). The counter-defendant, John Hopkins University, is believed to own an equity position in Brassica Protection Products, LLC, and is the source of the patents from which Brassica Protections Products, LLC, derives its royalties. Defendants believe that California Sprouts is the sole Brassica sprout distributor in

California, Nevada and Arizona.

It is conceded that defendants could have done a better job of drafting Counts II-VII. However, in reading plaintiffs' motion, there appears to be not one purported defect that could not be cured by drafting an amended Counts II-VII. Consequently, plaintiffs' arguments primarily seem to concern the form of the pleading rather than its substance. The substance of the pleadings are its factual allegations. It is these factual allegations that must be looked at to determine whether they could support one or more of the causes of action.

**II.    Argument**

   **A.  Count II (first Count II)**

15 U.S.C. section 1 provides for civil liability for a contract, combination or conspiracy in restraint of trade. The elements of a Section 1 violation are: (1) a contract, combination or conspiracy, (2) that results in an unreasonable restraint of trade and (3) that involves interstate commerce. National Society of Professional Engineers v. United States, 435 U.S. 679, 687-90 (1978); Continental T.V., Inc., v. GTE Sylvania, Inc., 433 U.S. 36, 49 (1977); Board of Trade v. United States, 246 U.S. 231, 238 (1918); Standard Oil Co. v. United States, 221 U.S. 1, 60 (1911). The Supreme Court has developed two distinct approaches to determine unreasonableness under Section 1 – the per se rule and the rule of reason. See Northern Pacific Railroad v. United States, 356 U.S. 1, 5 (1958) for discussion of per se violations. Vertical restraints involving patent licenses are normally judged under the rule of reason that permits inquiry into their origin, motivation and effect on overall competition. See Continental T.V., Inc., supra, 433 U.S. at 49 & n.15; Board of Trade v. United States, supra, 246 U.S. at 238.

The criticism leveled by plaintiffs with regard to this count appears to largely stem from

an unfortunate "copy and paste job" with regard to some "boilerplate" language in the counterclaims and cross-claims contained in paragraph 77, pages 27 and 28 of same. In defense of this language, it is pointed out this language uses the disjunctive "or." Moreover, consent, approval, or ratification of someone else's act does not necessarily imply agency, employment, partnership, or some other form of association. Note also the language's use of the words "combination" and "in concert with" toward the end of the paragraph. These words are not usually associated with notions of agency or employment. Plaintiff is obviously trying to take advantage of some admittedly ambiguous language [a risk no doubt inherent when one makes an entire paragraph one sentence].

The simple fact is that California Sprouts, Brassica Protection Products, LLC, The Sholl Group, and John Hopkins University are most likely <u>not</u> one and the same legal or economic entity. One observation to support this contention, at least with respect to Brassica Protection Products, LLC, and California Sprouts, can be found in the court's file. California Sprouts was served with process in this action on January 2, 2001. The proof of service is on file (it was filed January 29, 2001, prior to the transfer order) along with a supporting declaration of Katarzyna Micherda. If Brassica Protection Product, LLC, was in fact one and the same entity as California Sprouts one could reasonably expect some sort of responsive action or communication from Brassica Protection Products, LLC, with regard to this service, yet, there has been <u>no</u> action or communication from any of the counter or cross-defendants with regard to same. Finally, other factual allegations in the counterclaims and cross-claims identify the nature and known extent of the relationships of the various parties. The "boilerplate" language has to be interpreted in light of these more specific allegations.

In terms of satisfying the elements of a Section 1 violation, the allegations are there in the counterclaims and cross-claims. The counter and cross-defendants do have market power otherwise they would not have been able to accomplish what they did. The relevant market is the market in which the sprouts of California Sprouts compete with the sprouts of defendants. The licensing agreement between Brassica Protection Products, LLC, and California Sprouts, can be the basis of the contract in restraint of trade as can any agreement between Albertson's and Sav-mart with California Sprouts and Brassica Protection Products, LLC.

Any of the alleged defects in the counterclaims and cross-claims can easily be remedied by drafting.

### B. Count III (the second Count II)

Section 2 of the Sherman Act provides for civil liability for every person who *inter alia* attempts to monopolize any part of the trade or commerce among the several states. 15 U.S.C. section 2. Attempted monopolization generally consists of (1) a specific intent to monopolize a relevant market on the part of the anti-trust defendant and (2) a dangerous probability that the defendant will succeed in accomplishing actual monopolization if its conduct remains unchecked. Spectrum Sports, Inc., 113 S. Ct. 884 (1993); Loctite Corp. v. Ultraseal Ltd., 781 F. 2d 861, 875 (Fed. Cir. 1985); Oetiker v. Jurid Werke, G.m.b.H., 566 F. 2d 1, 7-8, (D.C. Cir. 1977). The counterclaims and cross-claims contain factual allegations that support attempt at monopolization.

Monopolization may consist *inter alia* of the improper use of monopoly power, however acquired, to exclude competitors from the relevant market or the improper use of monopoly power, however acquired, in one market to foreclose competition, or destroy competitors in

another market ("leveraging").  United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); United States v. Griffith, 334 U.S. 100, 105-106 (1948); United States v. United Shoe Mach. Corp., 110 F. Supp. 295 (D. Mass. 1953), aff'd per curiam, 347 U.S. 521 (1954).  The counterclaims and cross-claims contain allegations that support improper use of monopoly power (with regard to the patented sprouts).  If the non-patented sprouts are each considered other markets, then it is leveraging.  If it is just one entire sprout market or groups of sprout markets depending upon cross-elasticity of demand, then it is the improper use of validly acquired monopoly power of the patented sprouts.  In either case, the likely end result is that counter-defendants and cross-defendants will control or dominate the entire sprout market in California even though their lawful monopoly only extends to certain cruciferous sprouts that have been patented.

Finally, in the context of this case, 15 U.S.C. section 2 also prohibits combinations and conspiracies to monopolize.  The elements of such a claim consist of: (1) a combination or conspiracy; (2) an overt act to further the conspiracy; and (3) specific intent to monopolize. United States v. Yellow Cab Co., 332 U.S. 218, 225-228 (1947); American Tobacco Co. v. United States, 328 U.S. 781, 788, 809 (1946).  Acts that would violate Section 1 of the Sherman Act will satisfy the overt requirement.  United States v. Paramount Pictures, 334 U.S. 131, 173-174 (1948); American Tobacco Co., supra, 328 U.S. at 804.  However, acts not otherwise unlawful can also suffice.  American Tobacco Co., supra, 328 U.S. at 809.  The conspiracy to monopolize claim does not require any showing of a dangerous probability of success.  H.L. Hayden Co. v. Siemens Medical Sys., 879 F. 2d 1005, 1019 (2d Cir. 1989); International Distribution Centers, Inc., v. Walsh Trucking Co., 812 F. 2d 786, 795 n.8 (2d Cir.) (collecting

cases), cert. denied, 482 U.S. 915 (1987); Hunt-Wesson Foods, Inc., v. Ragu Foods, Inc., 627 F. 2d 919, 926 (9th Cir. 1980), cert. Denied, 450 U.S. 921 (1981). The counterclaims and cross-claims contain allegations that support this alleged violation of section 2 of the Sherman Act. California Sprouts and Brassica Protection Products, LLC, are separate economic and legal entities as is The Sholl Group and John Hopkins University.

If the counterclaims and cross-claims have some problem in not making the above clear, it is problem that can be easily fixed by drafting.

### C. Count IV

Tying in patent licenses may run afoul of Section 1 of the Sherman Act and is illegal under Section 3 of the Clayton Act when a sale or lease of commodities is involved. International Salt Co. v. United States, 332 U.S. 392 (1947); 15 U.S.C. section 14. A tying arrangement will be judged per se illegal if the following are shown: (1) two distinct products are involved; (2) sale of one product is conditioned on purchase of another; (3) the seller has "appreciable economic power" over the tying product sufficient to restrain trade; and (4) the tie-in affects a not insignificant amount of interstate commerce. Northern Pacific Railroad v. United States, 365 U.S. 1, 5-6 (1958); Fortner Enters v. U.S. Steel Corp., 394 U.S. 495, 503 (1969); Eastman Kodak Co. v. Image Technical Servs., 112 S. Ct. 2072 (1992).

Plaintiffs appear to argue that since sprouts are alleged to be commodities they must be one product. There is nothing in the law that supports such a view. Moreover, such a view would undermine application of the Clayton Act to any tying arrangement since tying arrangements under the Clayton Act must necessarily involve commodities. Defendants see their sprouts as consisting of different products, each sprout being one product and each product

having one market.  There may be such high levels of cross-elasticity of demand between sprouts or groups of sprout that practically speaking they are one product or market but these are matters for discovery, not for motions to dismiss prior to any discovery taking place.  Moreover, grouping the patented sprouts with the non-patented sprouts and calling them one product or one market begs the question.  Again, such a position would insulate counter-defendants and cross-defendants from any liability for tying arrangements whether under Section 1 of the Sherman Act or Section 3 of the Clayton Act.

Defendants have alleged in the counterclaims and cross-claims a tying arrangement between the patented broccoli sprouts and all other sprouts over which California Sprouts and defendants compete.  The factual allegations are that the counter-defendants and cross-defendants used the market power of a patented sprout to tie-in their exclusive supply of non-patented sprouts – they made it a condition that in order to obtain the patented sprout the grocery stores had to buy all sprouts from them.

It may also be illegal tying to insist on a "tie-out," a prohibition on the patent licensee from dealing in the non-infringing goods of a competitor of the patent holder.  <u>United Shoe Mach. Corp. v. United States</u>, supra, 258 U.S. at 457-58.  This can be easily extended to a situation, such as this case, where the patent holder demands that any user of the patented good must also use the non-patented goods of the patent holder, and prohibits the user from dealing in the non-infringing goods of a competitor.

Again, like the previous counts, whatever defects exist in the pleadings can be easily cured by drafting.

    **D.  Count V**

California Business and Professions Code sections 16700, et seq., [The Cartwright Act] is the state analog to federal anti-trust laws. California Business & Professions Code section 16720 defines a trust as a combination of capital, skill or acts by two or more persons for *inter alia* to create or carry out restrictions in trade or commerce and to prevent competition in the making, sale or purchase of produce or any commodity. Federal decisions interpreting the Sherman Act [15 U.S.C. sections 1 and 2] and the Clayton Act [15 U.S.C. section 14] may be applicable to interpret California law. Corwin v. Los Angeles Newspaper Service Bureau, Inc., (1971) 4 Cal. 3d 842, 852-853, 94 Cal. Rptr. 785, 484 P. 2d 953; Reynolds v. California Dental Service (1988) 200 cal. App. 3d 590, 596 n.9, 246 Cal. Rptr. 331; State of California ex rel. Van de Kamp v. Texaco, Inc. (1988) 46 Cal. 3d 1147, 1163 n.15, 1168, 252 Cal. Rptr. 221, 762 P. 2d 385. A Cartwright Act violation may also be subject to the unfair competition provisions of California Business & Professions Code sections 17200-17208. B.W.I. Custom Kitchen v. Owens-Illinois, Inc. (1987) 191 Cal. App. 3d 1341, 1345, 1348, 1348 n.6, 235 Cal. Rptr. 228.

The factual allegations of the counterclaims and cross-claims support this cause of action as they do Sections 1 and 2 of the Sherman Act in Counts II and III, respectively, and Section 3 of the Clayton Act, Count IV. Moreover, if one or more of the said federal anti-trust causes of action survive, this cause of action ought to survive.

**E. Count VI**

Defendants concede that California Business & Professions Code sections 17040 and 17047 of the California Unfair Practices Act [California Business & Professions Code sections 17000 et seq.] have not been implicated by the facts of the counterclaims and cross-claims as currently drafted since the courts in California have defined the reach of this statute in terms of

locality discriminations mainly involving price. However, defendants fully expect to find such locality discriminations as California Sprouts, with the knowledge, consent, approval and ratification of Brassica Protection Products, LLC, continues to seek monopoly power over <u>all</u> sprouts in California as they target sprout growers in selected localities to drive them out of business by selling under cost. This would result in price differentials between localities that could not be explained by differentials in transportation cost. Moreover, defendants believe that if the market practices of the counter-defendants and cross-defendants continue as they have been, such locality discriminations will likely be used as a means of policing any monopoly obtained. For example, locality discriminations can be used to selectively increase the barriers of entry to would-be market entrants.

The sections of the California Business and Professions Code for which Count VI should state a cause of action as currently drafted are Sections 17200 et seq.; however, the statute was not specifically mentioned in the counterclaims and cross-claims.

California Business & Professions Code section 17200 defines "unfair competition" *inter alia* to mean and include any unlawful, unfair, or fraudulent business act or practice. Note that this section addresses both illegal acts <u>and</u> unfair acts. See <u>Cel-Tech Communications, Inc., v. Los Angeles Cellular Telephone Co.</u> (1999) 20 Cal. 4th 163, 184, 83 Cal. Rptr. 2d 548, 973 P. 2d 527. These illegal acts can involve violations of the Cartwright Act. See <u>BILJAC Associates v. First Interstate Bank</u> (1990) 218 Cal. App. 3d 1410, 1422-1423, 267 Cal. Rptr. 819. However, a violation of virtually any state, federal or local law, unless the defendant's conduct is privileged or immunized by another statute, or the underlying statute expressly bars its enforcement, will support a cause of action under California Business & Professions Code section 17200. <u>Stevens</u>

v. Superior Court (1999) 75 Cal. App. 4th 594, 603-604, 89 Cal. Rptr. 2d 370.

When a party claims to have suffered an injury from a direct competitor's "unfair" act or practice, as that terms is defined in California Business & Professions Code section 17200, the conduct is "unfair" if it threatens an incipient violation of anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. Cel-Tech Communications, Inc., supra, 20 Cal. 4th at page 187. The allegations of the counterclaims and cross-claims support such a cause of action.

As with the causes of action discussed above, any defect in the pleadings can be easily cured by drafting.

**F. Count VII**

The following elements are necessary to state a cause of action for intentional interference with contract: (1) the existence of a valid contract or some other economic relationship between the counter and cross-plaintiff and a third party containing a probability of future economic benefits to the counter and cross-plaintiff; (2) the counter-defendants and cross-defendants knowledge of the existence of the relationship; (3) intentional acts on the part of the counter-defendants and cross-defendants designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the counter and cross-plaintiff proximately caused by the counter-defendants and cross-defendants acts. Blank v. Kirwan (1985) 39 Cal. 3d 311, 330, 216 Cal. Rptr. 718, 703 P. 2d 58; Savage v. Pacific Gas & Electric Co. (1993) 21 Cal. App. 4th 434, 448, 26 Cal. Rptr. 2d 305; Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal. App. 4th 842, 845, 17 Cal. Rptr. 2d 757; Wanland v. Los Gatos Lodge, Inc. (1991) 230 Cal. App. 3d

1507, 1522, 281 Cal. Rptr. 890; <u>Summit Mach. Tool Mfg. v. Victor CNC Systems</u>, 7 F. 3d 1434, 1442 (9th Cir. 1993).

    Defendants maintain two alternative approaches within this one cause of action. The first approach is based on one or more contracts established under the California Commercial Code. The second approach, if no such contract or contracts can be so established, is based on interference with prospective economic advantage, which does not require a contract. Perhaps, due to the structure of the cause of action, plaintiffs became confused because their argument seems to assume that these two approaches to the tort, i.e., interference with contract and interference with prospective economic advantage, are one and the same. This is not correct. Regardless, the allegations as currently drafted support either basis.

    *Contract Basis*. The California Commercial Code can be used to establish a contract between merchants where under common law none could be found, and to fill in the terms and conditions of that contract using the merchants' course of dealing, course of performance and trade usage. This is true even though the time of the making of the contract is indeterminate. Defendants had a business relationship with Albertson's and Sav-mart that extended beyond one transaction. In fact, defendants were the sole suppliers of sprouts to both grocery store chains and that this relationship lasted over months if not years. Under such circumstances, it is quite conceivable that defendants may be able to prove using the California Commercial Code that one or more contracts existed between defendants and Albertson's and/or Sav-mart. See California Commercial Code sections [derived from the Uniform Commercial Code] 1102, 1201(3), 1205, 2104, 2105, 2106, 2201, 2204, 2206, and 2207. This is not an issue that should be disposed of by a motion to dismiss prior to discovery.

*Prospective Economic Advantage.* In the event that one or more contracts cannot be so establish, defendants aver that plaintiffs intentionally disrupted and usurped the prospective economic advantage that defendants had with Albertson's and Sav-mart. In a case involving interference with prospective economic relationship that is short of contractual, the plaintiff must plead and prove as part of its case-in-chief that the counter-defendants and cross-defendants not only knowingly interfered with the counter and cross-plaintiffs' expectancy, but engaged in conduct that was wrongful by some other legal measure beyond the fact of the interference itself. Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal. 4th 376, 393, 45 Cal. Rptr. 2d 436, 902 P. 2d 740. If any of the preceding causes of action survive, they will support this claim. These allegations are incorporated in the cause of action and made a part of it. See paragraph 107, page 38, of the counterclaims and cross-claims. Moreover, the counterclaims and cross-claims are clearly predicated on the theory that what counter-defendants and cross-defendants did to defendants and their sprout accounts at Albertson's and Sav-mart was "conduct outside the realm of legitimate business transactions." Plaintiffs by this argument also appear to contend that because of the alleged pleading defects of the earlier causes of action, this must leave by default only legitimate business transactions to consider with regard to this cause of action; therefore, this cause of action must fail, too. Allegations in the counterclaims and cross-claims contradict this notion that what defendants are complaining about are legitimate business transactions.

### G. Motions to Dismiss.

As a general rule, motions to dismiss because of a failure to state a claim upon which relief can be granted are not favored, and should be granted sparingly and with caution and only where

it appears to a certainty that no set of facts could be proven at trial which would entitle the plaintiff to any relief.  Dann v. Studebaker-Packard Corp., 288 F. 2d 201 (1961, CA6 Mich); Harman v. Willbern, 227 F. Supp. 892 (1964, DC Kan).  A party should be given every opportunity to cure formal defects in the pleading – the generous procedure of not dismissing under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim and of allowing plaintiff leave to file an amended complaint is in accord with federal policy that cases should be decided on the basis of substantive rights involved rather than on technicalities.  Buchler v. United States, 384 F. Supp. 709 (1974, ED Cal).  A complaint which may not have contained sufficient details should not have been dismissed with prejudice without permitting plaintiff an opportunity to amend where there is no indication that allowing such amendment would have been futile.  Ostrzenski v. Seigel, 177 F. 3d 245 (1999, CA 4 Md).  See also Welch v. Laney, 57 F. 3d 1004 (1995, CA 11 Ala) [where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow plaintiff to amend the complaint rather than dismissing it].  It is defendants' contention that if they were able to prove the factual allegations of the counterclaims and cross-claims at trial, defendants would be entitled to relief under all of the stated causes of action, and if that is not easily seen from the counterclaims and cross-claims as currently drafted, it is only a problem with the drafting and not one of substantive right.  Certain words and phrases could be added that would satisfy all of plaintiffs' objections.

**III.  Conclusion**

The most important part of the counterclaims and cross-claims are their factual

allegations.  It is these that must be looked at to determine sufficiency of the pleadings.  Defendants contend that these factual allegations support one or more of the causes of action set forth in their counterclaims and cross-claims.  If there are any defects in the pleading as asserted by plaintiffs in their motion to dismiss, they are defects that can be easily cured by careful and more detailed drafting.  This indicates that if there is a problem, it is one of form and technicality, not substance.  If the court is inclined to find problems in the counterclaims and cross-claims as currently drafted, it should grant defendants leave to amend rather than dismiss their Counts II-VII outright.

Respectfully Submitted,

_____
Donald W, Ullrich, Jr.
Attorney at Law
P. O. Box 160007
Sacramento, CA  95816-0007
Phone:  (916) 441-4554
Fax:  (916) 441-5465

Attorneys for Defendants Banner Mountain Sprouts, Inc., and  Lawrence Ravitz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2001, a copy of the foregoing DEFENDANTS BANNER MOUNTAIN SPROUTS, Inc., a California corporation, and LAWRENCE RAVITZ, individually and doing business as BANNER MOUNTAIN SPROUTS, RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTS II-VI OF SAID DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIMS AND CROSS-CLAIMS was sent by Federal Express next business day delivery to:

> Paul Mark Sandler, Esquire
> Freishtat & Sandler
> 201 E. Baltimore Street, Suite 1500
> Baltimore, Maryland 21202
> *Counsel for Plaintiffs Brassica Protection Products, LLC*
> *and John Hopkins University*
>
> E. Anthony Figg, Esquire
> Joseph A. Hynds, Esquire
> Rothwell, Figg, Ernst & Manbeck, P. A.
> Suite 701 East Tower
> 555 Thirteenth Street, N.W.
> Washington, D.C. 20004
> *Counsel for Plaintiffs Brassica Protection Products, LLC*
> *and John Hopkins University*

and by first-class mail, postage prepaid, to:

> Chau Minh Do
> 16220 Compromise Court
> Mount Airy, Maryland 21771

_____
Donald W. Ullrich, Jr.