IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN RE: * | |
| CRUCIFEROUS SPROUT | MDL Docket No. 1388 |
| PATENT LITIGATION * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THEIR JOINT MOTION
REGARDING INVALIDITY OF THE PATENTS-IN-SUIT**

**I.     Introduction**

This memorandum is filed pursuant to Order No. 2.  A finding of invalidity under either 35 U.S.C. §§ 101 or 102 is a sufficient basis to grant Defendants' motion for partial summary judgment.

**II.     The Fundamental Question of this Case**

The case presents a fundamental question of patent law:  Can a plant (broccoli sprouts), long well known in nature and cultivated and eaten by humans for decades, be patented merely on the basis of a recent realization that the plant *has always* had some heretofore unknown but naturally occurring beneficial feature?  Defendants' reply: No, as a matter of law.  If the answer is yes, then maple trees are patentable for their syrup, oranges are patentable for their vitamin C content, and, in fact, all plants are patentable for their inherent features, once realized.  Under the Patent laws, such things are *not* patentable, and the bounty that nature provides remains freely accessible to *all* people and

cannot be removed from the public domain to private control by action of the issuance of a patent.

### III. Undisputed Material Facts

A.  The Defendants in this case are all farmers and farming businesses who, among growing other food products, have engaged in the business of growing sprouts for people for, in some cases, well over 20 (twenty) years.

B.  The Defendants have been sued for allegedly infringing the Patents-in-Suit under 35 U.S.C. § 271(a) and/or 271(b) by allegedly making, using, offering to sell, and/or selling and/or actively inducing others to make, use, offer to sell and/or selling the patented inventions of the Patents-in-Suit, including selling broccoli sprouts allegedly embodying the patented inventions. *See, e.g.,* Plaintiffs' essentially identical Complaints against these Defendants, and, as an example from the attached copy of the Complaint against the Sunrise Farms Defendants, Ex.A at ¶¶ 28, 29, 32,33,36,37, 40,41, 44, 45, 48, 49, 52, 53, 56, 57, 60, and 61.

C.  U.S. Patent No. 5,725,895 discloses and claims a method of preparing a food product which involves germinating certain cruciferous seeds, including broccoli seeds, and harvesting the sprouts prior to the two-leaf stage to produce a food product. *See, e.g.,* Ex. A at ¶ 19.

D.  U.S. Patent No. 5,968,567 discloses and claims a method of preparing a human food product comprising cruciferous sprouts containing naturally

       high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, which involves identifying seeds which produce the sprouts, germinating the seeds, and harvesting the sprouts prior to the two leaf stage. *See, e.g.,* Plaintiffs' Complaint against Sunrise Farms et al at paragraph 20. Ex. A.

E.    U.S. Patent No. 5,968,505 discloses and claims a method of increasing the chemo-protective amount of Phase 2 enzymes in a mammal which involves identifying certain seeds which produce sprouts containing naturally high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, germinating the seeds, harvesting the sprouts prior to the two-leaf stage to form a food product comprising such sprouts, and administering the food product to a mammal. *See, e.g.,* Ex. A at ¶ 21.

F.    The earliest effective date of application for any of the Patents-in-Suit was September 15, 1995. *See* attached Exs. B, C, and D.

G.    Certain varieties of vegetables, such as broccoli, contain natural chemical agents that are potent inducers of cellular detoxification enzymes that protect against the formation of cancer causing chemicals in the human body. *See, e.g.,* Ex. A at ¶ 16.

H.  In June of 1994, more than one year before the earliest date of application for any of the Patents-in-Suit, the following statement was published: "In 1992, researchers at Johns Hopkins University Medical school isolated sulphoraphane, a compound found in broccoli and other brassica family vegetables. Sulphoraphane stimulates a cell's production of certain protective enzymes that resist tumor growth[9]. . . . Foods that contain sulphoraphane are . . . the sprouts of broccoli." *See* Ex. E, Steve Meyerowitz, Sprout It! 121-122 (Sixth Printing June 1994)(1983).

I.  Concentrations of cancer-fighting compounds in cruciferous plants are considerably higher during the sprout stage than at later stages of development of the plant. *See, e.g.,* Ex. A at ¶ 18.

J.  "[A] stage of growth prior to the two-leaf stage, [is] typically between 1 and 14 days after germination of the seeds." *See* Ex. B, Plaintiffs U.S. Patent No. 5,725,895 at Col. 9, lines 50-52.

K.  In 1977, almost 20 years before the earliest date of application for any of the Patents-in-Suit, the following statement was published: "CABBAGE FAMILY-Broccoli . . . Cauliflower . . . and Kale. . . . All are easy to sprout . . . Sprouting time is 3 to 5 days for a sprouted length of ½ to 1 inch. . . . these sprouts tend to be strong flavored or bitter if grown too long, so use them when they are most pleasant to your taste in soups, salads and main dishes. Like their parent plants they are high in vitamins and so are well

worth sprouting." *See* Ex. F, Esther Munroe, <u>Sprouts to grow and eat</u>, 9-14 (Second printing December 1977)(1974).

L. The specific types of broccoli disclosed in the prior art as being used for the sprouts of the Patents-in-Suit are old and well known. For example, "Brassica oleracea Botryis Group - Cauliflower, Perennial broccoli . . . Sprouted seeds are eaten." *See* Ex.G, Stephen Facciola <u>Cornucopia: A Source Book of Edible Plants</u>, 47 (1990).

M. Growing broccoli sprouts for use as a food product is an old and well known methodology. *See* Ex. F, Esther Munroe, <u>Sprouts to grow and eat</u>, 9-14, 21-31 (Second printing December 1977)(1974).

N. None of the Patents-in-Suit require or disclose modification of seeds used or the plants/sprouts grown, harvested, and consumed. *See, e.g.,* Ex. B, U.S. Patent No. 5,725,895 at Col. 21, lines 52-56; Ex. C., U.S. Patent No. 5,968,567 at Col. 21, lines 59-67; and Ex. D, U.S. Patent No. 5,968,505 at Cols. 21 and 22, lines 55-67 and 1-2.

O. There is no modification by the hand of man of the patented cruciferous (e.g., broccoli) sprouts grown using the patented methodology of the Patents-in-Suit. *See, e.g.,* U.S. Patent 5,725,895, all objects of the invention "are achieved by providing cruciferous sprouts . . . harvested prior to the 2-leaf stage." *See* Ex. B., U.S. Patent No. 5,725,895 at Col. 2, lines 50-53;

        Ex. C, U.S. Patent No. 5,968,567 at Col. 2, lines 52-55; and Ex. D, U.S. Patent No. 5,968,505 at Col. 2, lines 52-55.

P.    The seeds used to produce the patented broccoli sprouts at issue "are completely natural." *See* Plaintiffs, *BroccoSprouts* advertising literature. Ex. H. *See also* Plaintiffs "BroccoSprouts® Product Fact Sheet," located at www.brassica.com/products/factsheet.htm. Ex. I, and Plaintiffs' "Questions About Sprouts," located at www.broccosprouts.com/faq.html (specifically reference the answer to question 31, "Are BroccoSprouts genetically engineered?")

Q.    The seeds used to produce the patented sprouts were selected by culling them from previously known varieties of broccoli seed. *See* Ex. J., Plaintiffs' "Questions About Sprouts," located at www.broccosprouts.com/faq.html, (specifically reference the answer to question 31, "Are BroccoSprouts genetically engineered?")

R.    The patented broccoli sprouts at issue are not genetically engineered. They are completely natural. *See* Ex. J., Plaintiffs' "Questions About Sprouts," located at www.broccosprouts.com/faq.html, (specifically reference the answer to question 31, "Are BroccoSprouts genetically engineered?")

## IV. Argument

### A. Summary Judgment is Proper in the Present Case

The entry of summary judgment is proper when one party is able to show that no genuine issue as to a material fact exists on which that party will bear the burden of proof at trial, so long as judgment is appropriate as a matter of law. *See* Nebraska v. Wyoming, 507 U.S. 584, 589 (1993). The purpose of summary judgment is to isolate, and then terminate, claims that are factually unsupported. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

The Supreme Court has emphasized that summary judgment is to be viewed not as a disfavored shortcut, but rather as an integral component of the Federal Rules. Celotex Corp., 477 U.S. at 327. Of course, summary judgment under F.R.Civ.P. 56 is appropriate in a patent case as in any other case. STX, Inc. v. Brine, Inc., 37 F.Supp. 2d 740, 745, 50 U.S.P.Q. 2d 1236 (D.Md. 1999), *citing* Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 795-96, 17 U.S.P.Q. 2d 1097 (Fed. Cir. 1990).

**B.   An Inherent Property of a Plant Is Not Patentable and a Patent Issued on Such an Inherent Property Is Invalid as a Matter of Law under 35 U.S.C. § 102(b)**

A patent is invalid as "anticipated" if "the invention ... was described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for the patent in the United States." 35 U.S.C. § 102(b). Defendants must show that "each element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency." Tyler Refrigeration v. Kysor Indus. Corp., 777 F.2d 687, 689, 227 U.S.P.Q. 845 (Fed.Cir.1985), (*quoting* Kalman v.

Kimberly-Clark Corp., 713 F.2d 760, 771 (Fed. Cir. 1983) *cert. denied*, 465 U.S. 1026 (1984)).

By contrast, a new use of an old process is patentable. *See* 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process . . . may obtain a patent therefor."); 35 U.S.C. § 100(b) ("The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."). In the present case the claimed processes of the Patents-in-Suit are not directed to a new use. They are directed to a very old use, namely preparing a food product for consumption by planting a seed and harvesting a resulting sprout. *See* Ex. G, Cornucopia at p. 47; *See* Ex. F, Sprouts to grow and eat, at 9-14, 21-31; *See generally* Ex. K, The Beansprout Book, 1973 (discussing elementary sprouting technique). *See also*, Ex. L, U.S. Patent No. 4,765,092, and Ex. L1, U.S. Patent No. 4,642,939. The process of sprouting seeds to produce a food product is quite old, dating back at least to 2939 B.C., when the Emperor of China first documented bean sprouting. Ex. M., Bertha B. Larimore, Sprouting for All Seasons, at 9 (5th printing, 1993).

Although a *new use* of an old process is patentable, *newly discovered results* of old processes *are not patentable* because the newly discovered results are inherent in the prior art. Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc., 246 F.3d 1368, 1376, 58 U.S.P.Q. 2d 1508, (Fed.Cir. April 20, 2001)("[n]ewly discovered results of known processes directed to the same purpose are not patentable because such results are inherent.")(affirming the district courts grant of summary judgment in finding that claims

1-3 and 6 of U.S. Patent 5,641,803 were invalid); *see also*, In re May, 574 F.2d 1082, 1090, 197 U.S.P.Q. 601, 607 (CCPA 1978); Verdegaal Bros., Inc. v. Union Oil Co., 814 F.2d 628, 633, 2 U.S.P.Q. 2d 1051, 1054 (Fed. Cir. 1987) (holding claimed process for making fertilizer anticipated by a disclosure of the same process for making fertilizer even though prior art did not disclose the "inventive concept"); *cf.* Mehl/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1366, 52 U.S.P.Q. 2d 1303, 1306-1307 (Fed. Cir. 1999) (finding anticipation of a method of hair depilation by an article teaching a method of skin treatment but recognizing the disruption of hair follicles); Hughes Aircraft Co. v. United States, 15, Cl Ct. 267, 271, 8 U.S.P.Q. 2d 1580, 1583 (Ct. Cl. 1988)("The mere fact that a prior art reference fails to mention something that undeniably existed is of no consequence, for the element must have been there.") *overruled on unrelated grounds* by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F. 3d 558, 56 U.S.P.Q. 2d 1865 (Fed. Cir. 2000). "Inherency occurs when the invention described by the prior art necessarily functions in accordance with a claim limitation, even if the limitation is not expressly mentioned in the art." Bristol-Myers Squibb Co. v. Beohringe Ingelheim Corp., 86 F.Supp.2d 433, 436 (D.N.J. 2000), aff'd in part, Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc., 246 F.3d 1368, 58 U.S.P.Q. 2d 1508 (Fed.Cir. April 20, 2001).

In the present case, the alleged inventors of the Patents-in-Suit claim to have found newly discovered results of an old process of growing and harvesting broccoli sprouts prior to the two-leaf stage. Even if this claim were true, newly discovered results are not patentable as a matter of law because the inventions claimed in the Patents-in-Suit do not

manipulate or otherwise alter the basic known application of broccoli sprouting. *See* Bristol-Myers Squibb, 86 F.Supp.2d at 443 ("where the prior art discloses the steps of a process, and experiments conducted by the patentholder did not 'manipulate or otherwise alter the basic application and experimentation' disclosed in the prior art, the patent is invalid as anticipated.")

During re-examination of U.S. Patent Nos. 5,725,895 the issue of anticipation by inherency was raised. Claims 1-6 and 9-13 were rejected by the Patent and Trademark Office (PTO) Examiner as being anticipated by inherency under 35 U.S.C. § 102(b). The PTO Examiner correctly asserted that broccoli sprouts were well known in the art. The PTO Examiner pointed out that the "rich in glucosinolate" (i.e. cancer chemoprotective compounds) and "at least 200,000 Units per gram fresh weight of Phase 2 enzyme-inducing potential" statements mentioned in the claims were inherent features of the sprout, i.e., the plant. *See* Re-Examination Rejection, attached as Ex. N.

The attorney prosecuting the patent application for the Plaintiffs made the legal argument that the prior art cited against applicants as being anticipatory must *necessarily* anticipate the claim limitations, instead of only *possibly* or *probably* anticipating the claim limitations. *See* Ex. O, Re-Examination Amendment and Request for Reconsideration Under 37 C.F.R. § 1.111 at pp. 4-5. The Plaintiffs argued that of 28 randomly selected commercial cultivars of broccoli, only 46%, or thirteen (13), commercial cultivars of broccoli produced 3-day-old sprouts that had 200,000 **or less** Units quinone reductase [cancer chemoprotective compound] inducing activity per gram

fresh weight. *Id.* at p. 7. Therefore, 54% of randomly tested commercial cultivars of broccoli **did** have "at least 200,000 Units per gram fresh weight of Phase 2 enzyme-inducing potential," or were rich in "glucosinolate" as stated in the claims of the '895 patent.[1]

The Plaintiffs' argument was that growth of a random strain of broccoli sprouts yielded results "rich in glucosinolate" and "at least 200,000 Units per gram fresh weight of Phase 2 enzyme-inducing potential" only 54% of the time, not 100% of the time as the Plaintiffs asserted is the standard for anticipation by inherency.

Assuming, for the sake of this motion, that this argument was correct at the time it was made, it is now contradicted by prior art not presented to, and thus not considered by, the PTO Examiner. Specifically, Cornucopia reports that sprouted seeds of the group Brassica oleracea botrytis are eaten. Ex. G at 47. Cornucopia reports that sprouted seeds of the group Brassica napus are eaten. *Id.* at 661. Cornucopia reports that sprouted seeds of the group Brassica rapa pekinensis are eaten. *Id.* Cornucopia reports that sprouted seeds of the group Brassica rapa Rapifera are eaten. *Id.* These are all cruciferous sprouts described and claimed in the Patents-in-Suit. *See* Ex. B at Col. 2, lines 53-54, Ex. C at Col. 2, lines 55-56 and Ex. D at Col. 2, lines 55-56. The teaching of cultivating and eating sprouts grown from those seeds anticipates the claims of the Patents-in-Suit

---

[1] The propriety and correctness of Plaintiffs' argument to the Patent Examiner is, solely and only for the purpose of this motion, not disputed, without waiver of the right of any Defendant to address at a later time Plaintiffs' argument to the Patent Examiner.

because all the cancer chemoprotective agents including glucosinolates claimed in the Patents-in-Suit were *inherently* present in the plants identified in the prior art, even if the consumers or growers did not know it. Accordingly, the rationale used by the Plaintiffs to overcome the rejection of their patent application by the PTO Examiner no longer exists and this court should, consistent with the PTO Examiner's initial ruling, find the Patents-in-Suit to be invalid.

### C. The Plaintiffs Have Done Nothing More Than Patent a Natural Property of a Naturally Occurring Plant. Therefore, The Patents-in-suit Are Also Invalid as a Matter of Law Under 35 U.S.C. § 101

Title 35 U.S.C. § 101 states that any person who "invents or discovers any *new* and useful...composition of matter, or any *new* and useful improvement thereof, may obtain a patent..." (emphasis added) subject to the conditions and requirements of the law. The U.S. Supreme Court, in addressing 35 U.S.C. § 101, has ruled that *a product of nature, unmodified by the hand of man is not patentable.* Diamond v. Chakrabarty, 447 U.S. 303, 312 (1980)(requiring "work of [a] plant breeder '**in aid of nature**'. . . ." for there to be patentability)(emphasis added)(the Court specifically stating: "a new plant found in the wild is not patentable subject matter.") *Id.* at 309.

It must be understood that the patented inventions at issue are methods for growing sprouts, in particular broccoli sprouts. It is undisputed that broccoli sprouts were known, grown, and eaten long before the earliest date of the Plaintiffs' patent application for a

"Method of Preparing a Food Product From Cruciferous Seeds," as described in the Patents-in-Suit.

Nothing in the Patents-in-Suit teaches the modification of a broccoli sprout by the hand of man. In the Patents-in-Suit, a *natural unmodified* seed is germinated and grown into a *natural unmodified* broccoli sprout that is harvested as a food product for the public, just as it has always been. *See, e.g.,* Ex. B at Col. 21, lines 52-56; Ex. C at Col. 21, lines 59-67; and Ex. D at Cols. 21 and 22, lines 55-67 and 1-2. No new method of planting, cultivation, or harvesting is disclosed and patented. There is no modification of the seed used or the plant cultivated in the Patents-in-Suit.

The Patents-in-Suit disclose that **nothing** is done to the broccoli sprouts to produce the levels of "cancer chemoprotective compounds" claimed therein. *See* Exs. B, C, and D. *See* Ex. F at 9-14, 21-31. Neither the seeds nor the plants grown from the seeds are genetically modified and only water and light (the oldest known process for growing plants) are used to grow the patented broccoli sprouts. The "cancer chemoprotective compounds" are a natural quality of the broccoli sprout and have always been in the broccoli sprouts identified in the Patents-in-Suit and always at the levels noted in the patents. The patented broccoli sprouts, as the Plaintiffs specifically admit, "are completely natural." *See* Exs. H and J.

The law is clear: where no modification of a plant has occurred, but only the identification of a naturally occurring feature of the plant, then any patent based upon claiming either the plant or the methodology for making the plant is invalid by law. *See,*

*e.g.,* <u>Funk Bros. Seed Co. v. Kalo Inoculant Co.</u> 333 U.S. 127, 130 (1948)(holding a patent for a mixture of root nodule bacteria to be invalid, reversing the circuit court's finding of validity)("The qualities of these bacteria, like the heat of the sun, electricity, or the qualities of metals, are part of the storehouse of knowledge of all men.  They are manifestations of laws of nature, free to all men and reserved exclusively to none.").

### V. Conclusion

The Patents-in-Suit are invalid under the law, and Defendants are entitled to summary judgment in their favor on Plaintiffs' claims that are based on those invalid patents.

Respectfully Submitted,

_____
/s Philip M. Andrews (Federal Bar No. 00078)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone:  (410) 752-6030
Fax:  (410) 539-1269
*Attorneys for Defendants Edrich Farms, Inc., Edward F. Stanfield, Jr., Richard Stanfield, Edward B. Stanfield, III, and Sally F. Stanfield*

Delbert J. Barnard
Barnard & Pauly, P.S.
P.O. Box 58888
Seattle, Washington 98138-1888

Phone: (206) 246-0568
Fax: (206) 243-4618
*Attorneys for Defendants Harmony Farms, LLC, Gregory H. Lynn, Lorna M. Lynn, Interntional Specialty Supply, LLC, and Robert L. Rust*

Joseph A. Kromholz
Daniel R. Johnson
Ryan, Kromholz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618
Phone: (262) 783-1300
Fax: (262) 783-1211
*Attorneys for Defendants Sunrise Farms, Inc., Frank Crikelair, and Becky Crikelair*

Donald W. Ullrich, Jr.
P.O. Box 160007
Sacramento, California 95816-0007
Phone: (916) 441-4554
Fax:     (916) 441-5465
*Attorneys for Defendants Banner Mountain Sprouts, Inc. and Lawrence Ravitz*