IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

IN RE:                              *

CRUCIFEROUS SPROUT                  MDL Docket No. 1388
PATENT LITIGATION                   *

                                    *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANTS' JOINT REPLY TO PLAINTIFF'S
## MEMORANDUM ON CLAIM CONSTRUCTION

Philip M. Andrews (Federal Bar No. 00078)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone (410) 752-6030
Fax: 410-539-1269
*Attorneys for Defendants Edrich Farms,*
*Inc., Edward F. Stanfield, Jr., Richard*
*Stanfield, Edward B. Stanfield, III and Sally*
*F. Stanfield*

Delbert J. Barnard
Barnard & Pauly, P.S.
947 Powell Avenue, SW, Suite 105
Renton, Washington 98055
Phone: (206) 246-0568
Fax: (206) 243-4618
*Attorneys for Harmony Farms, LLC,*
*Lorna M. Lynn and Gregory H. Lynn, and*
*for Robert L. Rust and International*
*Specialty Supply, LLC*

Joseph A. Kromholz
Dan Johnson
Ryan Kromhoz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618
Phone: (262) 783-1300
Fax: (262) 783-1211
*Attorneys for Sunrise Farms, Inc.,*
*Frank Crikelair and Becky Crikelair*

Donald W. Ullrich, Jr.
P.O Box 160007
Sacramento, California 95816-0007
Phone: (916) 441-4554
Fax: (916) 441-5465
*Attorney for Banner Mountain Sprouts,*
*Inc. and Lawrence Ravitz*

A.    **INTRODUCTION**

Plaintiffs, Brassica Protection Products, L.L.C. and Johns Hopkins University are herein collectively referred to as "Brassica."  The defendants collectively are referred to as "Defendants."  Brassica's U.S. Patents Nos. 5,725,895; 5,968,567 and 5,968,505 are herein referred to as the "'895; '567 and '505 patents."  All defendants have joined in the pending claim construction and summary judgment motions and memoranda. Defendants' main Motion Memorandum, filed October 25, 2000, is herein referred to as "Defendants' Memorandum I."  Defendants' First Supplemental Memorandum, filed March 1, 2001, is herein referred to as "Defendants' Memorandum II."  Defendants' Second Supplemental Memorandum, filed on June 7, 2001, is herein referred to as "Defendants' Memorandum III."

On page 1 of their Memorandum, Brassica correctly points out that Defendants' Motion for Summary Judgment re: Invalidity only addresses representative claims from the three patents, namely, claims 1-6 of the '895 patent, claims 1 and 8 of the '567 patent, and claims 1 and 16 of the '505 patent.  In a memorandum filed with the Judicial Panel on Multidistrict Litigation on November 8, 2000, and referred by the Panel to this Court for consideration, Defendants Harmony Farms LLC, and Lorna and Greg Lynn, requested an early *Markman* hearing and in the Memorandum included claim 9 of the '895 patent.  A similar memorandum was filed on behalf of Defendants ISS, L.L.C. and Robert L. Rust. Defendants request that claim 9 of the '895 patent be considered with respect to

-2-

Defendants' Motion for Summary Judgment Re: Invalidity as well as with respect to claim construction. Claim 9 is discussed in detail in the November 8, 2000 Memorandum.

The Appendix is a claim-by-claim summary of Defendants' claim construction contentions, previously set forth in Defendants' memoranda I and II; it is attached for the Court's ease of reference. References to a double-letter exhibit (*eg*, "AO") refer to the exhibits attached to Memorandum II. Single letter exhibit references refer to exhibits attached to Memorandum III.

## B.    BRASSICA DID NOT INVENT A METHOD OF GROWING SPROUTS

It is inaccurate and misleading for Brassica to argue that they invented methods of making food products comprised of cruciferous sprouts (pages 5-7 of Brassica's Memorandum). What Brassica did was to use a well-known method for growing the sprouts, and then Brassica assayed the sprouts to determine the amount of a naturally occurring substance (glucosinolates) that was in sprouts. What the Brassica inventors most certainly did not do was to cause or enhance the production of the naturally occurring glucosinolates by altering the seeds or adding a step or material to the method. Brassica's contribution is discussed in greater detail in Defendants' Memorandum I, starting on page 19.

## C.    DEFENDANTS ARE ENTITLED TO A JUDICIAL REVIEW OF THE ORIGINAL '567 AND '505 PATENTS AND THE REEXAMINED '895 PATENT

Defendants' Rule 56 motion seeks, among other things, a judicial review of the Patent Examiner's decision in the reexamination. Plaintiffs are wrong in suggesting that this Court must accept the Patent Examiner's re-examination determination; to the contrary, this Court must make an independent and separate evaluation of the undisputed evidence:

> However, a re-examination is an *ex parte* proceeding which is not binding on a district court that evaluated the validity of a patent at a later date. Indeed, in evaluating the validity of a patent, a district court must make an independent evaluation thereof, and may not simply rely upon the opinion of a patent examiner to determine a patents validity. *Greenwood v. Hattori Seiko Co.*, 900 F.2d 238, 240-241 (Fed Cir. 1986).

*Sawgrass Systems, Inc. v. BASF Corp.*, 1999 WL 358, 682. An Examiner's decision on an original or reissue [or reexamination] application is never binding on a court. *See., e.g., Fromson v. Advanced Offset Plate, Inc.,* 755 F.2d 1549, 1555 (Fed. Cir. 1985).

That is particularly true here where the Examiner's reasons for allowance, quoted below, shows a misunderstanding of the law:

> A method of preparing a food product wherein cruciferous sprouts, with the exception of cabbage, cress, mustard and radish sprouts, that are rich in glucosinolates or contain high levels of Phase 2 inducer activity are harvested prior to the 2-leaf stage is not taught nor fairly suggested by the prior art or any combination thereof.

In her reasons for allowance, the Examiner omitted any reference to "inherency", indicating that she felt that the reference to Phase 2 inducer activity to the claims made the claims allowable because such activity was neither "taught nor fairly suggested by the

prior art or any combination thereof." It is clear that the sulforaphane did not consider the applicable case law.

Review of the reexamination proceeding makes clear that the Examiner did not give proper consideration to the admitted prior art that is identified in the common specification of the three Brassica's patents. In column 10 of the '895 patent, starting on line 10, the Brassica inventors admit that "[t]ypically sprouts are grown on a non-nutritive support---with water and light supplied" and "numerous methods for the cultivation of sprouts are known, as exemplified by U.S. Pat. Nos. 3,733,745, 3,643,376, 3,945,148, 4,130,964, 4,292,760 or 4,086,725." In Example 1, it is stated that the seeds used were "seeds of different species from the cruciferae family." (column 12 of the '895 patent, starting on line 25). The germination method described is clearly among the known methods. On its website, Brassica states that it grows "BroccoSprouts® naturally, adding only water and light." The BroccoSprouts® product contains the "natural compound sulforaphane glucosinolates" and the broccoli sprouts are grown "from ordinary broccoli seeds." (Exhibit AO).

Brassica did not make these admissions to the Examiner. Brassica did not request that she make her decision in light of them. Instead, Brassica made arguments that did not take the admissions into account and instead directed the Examiner's attention away from their importance.

**D.    DEFENDANTS HAVE PROVIDED FACTS, ARGUMENTS AND CASE LAW THAT WERE NOT BEFORE THE EXAMINER**

On page 10 of its Memorandum, Brassica argues that "[i]n re-affirming the validity of the '895 patent claims, the Patent Office considered and rejected the very same arguments being made by Defendants in their present motion for summary judgment over virtually the identical prior art references." Brassica is wrong. Defendants point to the above admissions by Brassica that were never made to the Patent Examiner, to the admissions made in the specification, and to texts that were not before the Examiner. Defendants also have presented relevant case law to this Court that was not argued to the Examiner. One of these cases, *Bristol-Myers Squibb Co. v. Ben-Venue Laboratories,Inc.,* 246 F.3d 1368 (Fed. Cir. 2001), was not decided until the reexamination and could not have been considered by the Examiner. *Bristol-Myers* is particularly relevant to the issues in this case.

### E.    CLAIM CONSTRUCTION PRECEPTS

The claims of the patent must be construed as a matter of law to determine their meaning. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). Additionally, the claims must be construed to preserve their validity; if there is no way to construe the claims, then they are invalid. As stated in *Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345 (Fed. Cir. 1999):

> We, too, have consistently employed the caveat, 'if possible,' to our instruction that claims should be construed to sustain their validity. *See, e.g., Whittaker Corp. v. UNR Indus., Inc.,* 911 F.2d 709, 712, 15 U.S.P.Q.2D (BNA) 1742, 1744 (Fed. Cir. 1990) ("Claims are generally construed so as to sustain their validity, if possible.") We have also admonished against judicial rewriting of claims to preserve validity. *See Becton*

> *Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 799 & n.6
> (Fed. Cir. 1990).  Therefore, if the only claim construction
> that is consistent with the claim's language and the written
> description renders the claim invalid, then the axiom does not
> apply and the claim is simply invalid.

*Id.* at 1345.

If Plaintiffs' claims are to be construed in a manner that maintains their validity,

then they must be construed in such a way that does not prevent the public (and the

Defendants) from practicing the sprouting of broccoli and other cruciferous sprouts as

disclosed in prior art cited in the record of the present motions for summary judgment.

Given the present language of the claims, such a construction is impossible.

### F.    THE "CLEAR AND CONVINCING" STANDARD DOES NOT APPLY TO CLAIM CONSTRUCTION

Brassica contends that it is not arguing that the presumption of validity changes, or

is higher, when a patent is reexamined.  However, Brassica suggests that a court owes

some deference to the decision of the Patent Office, "therefore making it more difficult

for defendants to satisfy their heavy burden by clear and convincing evidence."

(Plaintiffs' Memorandum at 38) In answer, the Examiner's decision on an original or

reissue application is <u>never binding on a court</u>.  *Fromsom v. Advanced Offset Plate, Inc.*,

755 F.2d 1549, 1555 (Fed. Cir. 1985).  Further, the "clear and convincing" standard

relates to specific factual questions, but does not apply to claim construction which, as a

matter of law, must be decided *de novo* by the reviewing court.  *SSIH Equipment S.A. v.*

*U.S.  International Trade Comm'n*, 718 F.2d 365, 375 (Fed.  Cir. 1983).  <u>See also</u> *Surface*

*Technology, Inc. v. U.S. International Trade Comm'n*, 801 F.2d 1336 (Fed. Cir. 1986) and

*Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983).

### G.    DETERMINING WHAT IS BEING CLAIMED IS A MATTER OF CLAIM CONSTRUCTION

Brassica also argues that Defendants' "result of the method" argument addresses

the substantive issue of anticipation by inherency, not the predicate issue of claim

construction. (Plaintiffs' Memorandum at 14) Brassica is wrong; determining what

subject matter is being claimed is a matter of claim construction and is free from the

clearly erroneous standard of review. *Titanium Metals Corporation of America v.

Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985). Here, the prior art anticipates Brassica's

claims even though the prior art does not express a prior understanding of the inherent

properties of the sprouts. Accordingly, Brassica's assay results in the claims amount to

"no more than a claim to the discovery of an inherent property of the prior art, *not the

addition of a novel element*." *Atlas Powder Co v. IRECO, Inc.,* 190 F.3d 1342, 1349

(Fed. Cir. 1999) (emphasis added). Determining what are action steps and what are

statements of results is a matter of claim construction. *Titanium Metals*, 778 F.2d at 782.

Claim 1 of the '895 patent starts by specifying "[a] method of preparing a food

product rich in glucosinolates, comprising germinating cruciferous seeds", and concludes

with the statement "and harvesting sprouts prior to the 2-leaf stage, to form a food

product comprising a plurality of sprouts." Between these beginning and ending

statements, claim 1 specifies "with the exception of cabbage, cress, mustard and radish

seeds."  Claim 9 is like claim 1, except that its "in-between-portion" reads "that produce sprouts having at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth and which contain non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates."

The in-between-portions of the claims constitute two different ways of describing the same inherent property of the sprouts.  Neither statement adds an action step to its claim that is not in the prior art.  The inclusion of the inherent property statement in the claims does not prevent the claims from being anticipated by prior art that discloses the action steps.  *Titanium Metals,* 778 F.2d at 782; *Bristol-Myers,* 246 F.3d at 1374.

Additionally, with respect to Plaintiffs' legal argument that the preamble of claims 1 and 16 of '505 patent should be legally construed as a limitation on those claims, it should be noted that the test for determining whether a preamble term is a substantive claim limitation was stated in *Bell Communication Research, Inc. v. Vitalink Communication Corp.*,

> [T]he preamble has been denied the effect of a limitation where . . . the claim or [inference] count apart from the introductory clause completely defined the subject matter [of the invention], and the preamble merely stated a purpose or intended use of that subject matter.  On the other hand, in those . . . cases where the preamble to the claim was given the effect of a limitation, the introductory phrase was deemed essential to point out the invention defined by the claim or deemed essential to point out the invention defined by the claim or count.  In the latter class of cases, the preamble was considered necessary to give life, meaning, and vitality to the

claims or counts.  [*quoting Kropa v. Robie,* 187 F.2d 150, 88
U.S.P.Q. 478 (CCPA 1951)].

55 F.3d 615, 620-621 (Fed. Cir. 1995).  Construing the claims is a question of law under

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517

U.S. 370 (1996), and so no deference is given to the Plaintiffs' position regarding claim

construction.  Plaintiffs' cite to preambles that merely define a desired result, and do not

further limit the claims.  The preambles are necessary to give life, meaning, or vitality to

the claims.

The terms "increasing the chemoprotective amount of Phase 2 enzyme in a

mammal" ('505 patent, claim 1) and "reducing the level of carcinogens in a mammal"

('505 patent, claim 16) are both located in the preamble of their respective claims.

Neither term recites a manipulative step to be performed.  Instead, both only describe an

intended purpose and result of carrying out the steps of the claims.  If those terms were

removed, the claims would still recite a method that could be understood by a person of

ordinary skill in the art.  Consequently, the preambles of those claims are not limitations,

and those claims do no more than present a method wherein a naturally-occurring plant is

picked and eaten.

## H.    THE CLAIMED ACTION STEPS ARE IN THE PRIOR ART

Any publication dated before September 15, 1994 is "prior art."  35 U.S.C. §

102(b).  Further, a patentee's disclosure is available as a reference against the claimed

invention insofar as the disclosure is acknowledged as prior art.  *In re Hellsand*, 474 F.2d

1307 (C.C.P.A. 1973). In Example 1, appearing in all three patents, it is stated that sprouts were prepared from "seeds of different species from the cruciferae family." The Example does not admit that the seeds were "ordinary seeds" but as discussed above, that fact has subsequently been admitted by Brassica (Exhibit AO).

Example 1 also states that the "seeds were [sanitized] and placed on a support that did not contain added nutrients. The environment was carefully controlled with broad-spectrum fluorescent lighting, humidity and temperature control." Accordingly, the germination method used was a "known" method. *See* column 10 of the '895 patent, in lines 21-24.

Example 1 continues by stating that "sprouts were harvested." At this point, the steps of (1) seed selection, (2) germinating the seeds and (3) harvesting the sprouts amounted to practicing the prior art. Following practice of the prior art action steps, the sprouts were assayed, using a known bioassay method. See column 12 of the '895 patent, lines 52-54. Example 1 concludes with the statement:

> Broccoli and cauliflower sprouts harvested and assayed at 3-days after incubation of seeds under growth conditions have Phase 2 enzyme-inducer potential greater than 200,000 units/g fresh weight. On the other hand, cabbage, radish, mustard and cress have Phase 2 enzyme-inducer potential of less than 200,000 units/g fresh weight when assayed at the same time point.

The assay showed that all of the sprouts contained a Phase 2 enzyme-inducer potential (consistent with the prior art teaching of *Meyerowitz,* Exhibits M and Y), but the amount was not the same in all of the sprouts. Some of the sprouts included a greater

amount than the others.  However, the existence and amount, or non-existence of the Phase 2 enzyme-inducer is not material to patentability.  The steps of the method are performed in the same way regardless of whether or not the sprouts are found to include any amount of Phase 2 enzyme-inducer.  Finding that such substance exists in the sprouts, and in what amounts, is merely finding of an inherent result.  *Bristol-Myers*.

Defendants submit that the admissions relating to Example 1, and Brassica's other admissions, constitute clear and convincing evidence that the assay results obtained by Brassica's investors were the result of using a public domain method.  Admissions constitute clear and convincing evidence.  *Tyler Refrigeration v. Kysor*, 777 F.2d 687, 690 (Fed. Cir. 1985).

I.    **THE ONLY CLAIMS AT ISSUE ARE THOSE IDENTIFIED IN THE PRESENT MOTIONS FOR CLAIM CONSTRUCTION OR SUMMARY JUDGMENT**

The present Scheduling Order of the Court set the briefing schedule for *Markman* interpretation of the Patents-In-Suit.  Plaintiffs assert that ruling on Defendants' present motion for summary judgment will not be dispositive of all the issues in this litigation because only 10 out of 58 claims of the Patents-In-Suit are related to the present motions for summary judgment.  Construing claims as a matter of law is a predicate step to any determination of infringement.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996).  Accordingly, the Court must first construe any claim that is to be asserted to be infringed.  Since Plaintiffs have only, by their own admission, presented 10 of 58 claims to the Court to be construed, the remaining 48

claims cannot be evaluated for infringement because they have not been submitted to the Court to be construed as a matter of law as required under *Markman*.  The present Scheduling Order set July 23, 2001 as the date for a *Markman* hearing to construe the claims.  Plaintiffs had ample notice of this Order of the Court.  Plaintiffs have waived asserting infringement of any claims that have not now been submitted to the Court to be construed as a matter of law.  Because Plaintiffs have not identified any claims other than those identified in the present motions before the Court, Plaintiffs cannot assert more claims, which would then have to be construed in yet another *Markman* hearing, are now at issue.

**J.     THE HARMONY FARMS/ISS METHODS HAVE BEEN SHOWN TO BE PUBLIC DOMAIN METHODS**

Brassica has not disputed the statements made in the declarations of Defendants Gregory H. Lynn and Robert L. Rust.  Both selected readily available, ordinary broccoli seeds and germinated them to produce broccoli sprouts, harvested them while they were still sprouts, and they sold the sprouts to customers to be used as a food product. Regardless of the content of the sprouts, the method used by Gregory H. Lynn and Robert L. Rust to produce them was a public domain method.  Brassica's lawsuits against these Defendants can only be based on a contention that Brassica's assay results amount to a patentable discovery – a contention that has been squarely rejected by *Titanium Metals, Atlas Powder* and several other cases argued by Defendants in their several Memoranda.

**K.     BRASSICA'S PATENTS CANNOT BE CONSTRUED TO COVER SUBJECT MATTER THAT IS IN THE PUBLIC DOMAIN**

Defendants and other members of the public are entitled to follow the teachings of the prior art. For example, they are entitled to follow the teachings of Whyte and *select* broccoli seeds for germination to produce sprouts, and then either eat the sprouts raw in salads or add them to soup just before serving (Exhibit E, HF0043). They are entitled to follow the teachings of *Snellman* and include sprouts in their diets because the sprouts contain more concentrated and more digestive nutrition than the mature plant (Exhibit T, HF0073). They are entitled to follow the teachings of *Meyerowitz*, and to *select* and germinate broccoli seeds to produce sprouts and then eat the sprouts because they contain the chemical sulforaphane that "could be the most anti-cancer enzyme found in food to date." (Exhibit Y, HF0226 and Exhibit M, HF0179, HF0181 and HF0182). They are entitled to select and use the public domain method of germinating cruciferous seeds solely based on a request from their customers for the sprouts produced by the method.

Brassica is not entitled to patents that can be used to remove subject matter from the public domain. *Bonito Boats, Inc. v. Thunder-craft Boats, Inc.,* 489 U.S. 141 (1989) ("[C]oncepts within the pubic grasp, or those so obvious that they readily could be, are the tools of creation available to all. *Titanium Metals; Atlas Powder.* In *Titanium Metals,* the court noted that "it is immaterial, on the issue of their novelty, what inherent properties the alloys have or whether these applicants discovered certain inherent properties." 778 F.2d at 782. In *Atlas Powder,* the court stated that this same reasoning holds true when it is not a property, but an ingredient, which is inherently contained in the

prior art. "The public remains free to make, use, or sell prior art compositions or processes, regardless of whether or not they understand their complete makeup or the underlying scientific principles which allow them to operate. The doctrine of anticipation by inherency, amongst other doctrines, enforces that basic principle." *Atlas Powder,* 190 F.3d at 1348.

### L.    DISCOVERING THAT THE AMOUNT OF GLUCOSINOLATES VARIES AMONG THE VARIOUS CRUCIFEROUS SPROUTS IS A PART OF INHERENCY

Brassica's assay results, obtained from assaying sprouts produced by practice of the prior art, showed that some of the sprouts had greater amounts of glucosinolates than did the others. The lower amounts in some sprouts are inherent to those sprouts. The higher amounts in other sprouts are inherent to those sprouts. All of the seeds that were sprouted were ordinary seeds that were publicly available. The seeds were sprouted by use of a public domain method, *viz.* nature's germination method. There is absolutely no disclosure in the Brassica patents that Brassica added material and/or steps to the germination process and Brassica has not made that claim in its Memorandum. The only conclusion that can be reached is that the amount of glucosinolates existing in any particular sprout is an inherent result of germinating the seeds to produce the sprout. That is a proper, legal conclusion that can and should be drawn from the indisputable facts: the claimed action steps are in the public domain.

In any event, based on *Bristol-Myers*, the issue can be looked at as follows. If the claimed action steps are followed with respect to cruciferous seeds, in the manner

described in the various pieces of prior art, the claims are anticipated whether or not the stated amount of glucosinolates are found in the sprouts and/or whether such sprouts would have any cancer fighting benefit.  If the glucosinolates exist, in the claimed amounts, it is only because such result is an inherent result of using the public domain action steps.

### M.    KRATZ AND HYBRITECH ARE NOT ON POINT

*In re Kratz & Strasburger,* 592 F.2d 1169 (C.C.P.A. 1979) is not an inherency case.  The invention related to a method of providing artificial strawberry flavor to a foodstuff.  The method comprised adding to the foodstuff "about 0.5 up to about 25 parts per million, based on the weight of said foodstuff of a composition consisting of essentially a synthetically produced, substantially pure 2-methyl-2-pentenoic acid."  The inventors did more than assay a product produced by a public domain method to determine the amount of a substance that was in the product produced by the method.  The method claim included an action step that was not in the prior art.  Thus, the grant of the patent did not act to remove a public domain method from the public domain.

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) involved a patent that claimed "[a] process for the determination of the presence of [*sic, or]* concentration of an antigenic substance in a fluid."  The claim sets forth five action steps, each directed to assaying a sample.  This was not a case of attempting to patent a public domain method of making a food product by including assay results in the claims.

## N.  CONCLUSION

Defendants ask the Court to rule that Defendants have, by clear and convincing evidence, established that the claimed action steps of germinating cruciferous seeds to produce sprouts and harvesting the sprouts for use as a food product are in the public domain, free to be used by Defendants and other members of the public.  The assay discoveries by Brassica that have been written into the claims merely amount to describing the discovery of an inherent property or substance in the sprouts.  That discovery does not prevent the claims from being anticipated by the public domain action steps.  For these reasons, the Court is asked to rule that the claims of Brassica's patents are anticipated under 35 U.S.C. § 101 and § 102 and, therefore, are invalid.

Respectfully submitted,


_____    /s Philip M. Andrews (Federal Bar No. 00078)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
410- 752-6030
Fax: 410-539-1269

*Attorneys for Defendants Edrich Farms, Inc.,
Edward F. Stanfield, Jr., Richard Stanfield,
Edward B. Stanfield, III and Sally F. Stanfield*

Delbert J. Barnard
Barnard & Pauly, P.S.
947 Powell Avenue, SW, Suite 105
Renton, Washington 98055
Phone:  (206) 246-0568
Fax:  (206) 243-4618

*Attorneys for Harmony Farms, LLC,*
*Lorna M. Lynn and Gregory H. Lynn, and for*
*Robert L. Rust and International Specialty*
*Supply, LLC*

Joseph A. Kromholz
Dan Johnson
Ryan, Kromho,z & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin  53226-0618
Phone: (262)  783-1300
Fax:  (262)  783-1211

*Attorneys for Sunrise Farms, Inc.,*
*Frank Crikelair and Becky Crikelair*

Donald W. Ullrich, Jr.
P.O Box 160007
Sacramento, California 95816-0007
Phone:  (916) 441-4554
Fax:     (916) 441-5465

*Attorney for Banner Mountain Sprouts, Inc. and*
*Lawrence Ravitz*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of July, 2001, copies of the foregoing

Defendants' Joint Reply to Plaintiffs' Memorandum on Claim Construction were hand-

delivered to:

> Paul Mark Sandler, Esquire
> W. Michael Mullen, Esquire
> Freishtat & Sandler
> 201 E. Baltimore Street, Suite 1500
> Baltimore, Maryland 21202
> *Liaison Counsel for Plaintiffs Brasssica Protection Products L.L.C.*
> *and Johns Hopkins University*


                                    _____

                                    Philip M. Andrews

## APPENDIX 1

## ADMITTED PRIOR ART

The inventors admit that "germinating" seeds is not their "discovery." See, the '895 patent, column 10, lines 8-27, whereat amongst other things it is stated "numerous methods for the cultivation of sprouts *are known*, as exemplified by U.S. Patent Nos. 3,733,745, 3,643,376, 3,945,148, 4,130,964, 4,292,760 or 4,086,725." U.S. Patent No. 4,086,725, granted May 2, 1978 to Tsiang Kwang Li (Exhibit P) is submitted as an example. In column 1 of this patent, (lines 9-11) it is stated that "[p]lant sprouts are commonly grown for human and animal consumption by subjecting them to controlled conditions of temperature, light and humidity" (lines 9-11) and "[p]lant sprouts grown by conventional procedures usually require about five or more days of growth before they are ready for harvesting." (lines 19-21).

## CLAIM 1 OF THE '895 PATENT

Claim 1 of the '895 patent reads:

1.     A method of preparing a food product rich in glucosinolates, comprising germinating cruciferous seeds, with the exception of cabbage, cress, mustard and radish seeds, and harvesting sprouts prior to the 2-leaf stage, to form a food product comprising a plurality of sprouts.

This claim starts with the preamble "[a] method of preparing a food product rich in glucosinolates—", followed by the word "comprising", followed by a first action step:

> germinating cruciferous seeds, with the exception of cabbage, cress,
> mustard and radish seeds,

> This action step is followed by a second and final action step:

> and harvesting sprouts prior to the 2-leaf stage, to form a food product
> comprising a plurality of sprouts.

The "2-leaf stage" is effectively defined in the '895 patent in column 7, lines 63 and 64,

whereat the patent refers to "growing these plants only to the seedling or sprout stage, that

is between the onset of germination and the 2-leaf stage." Thus, the "2-leaf stage" merely

means that germination is stopped while the "sprout" is still a "sprout."

The term "rich in glucosinolates" is not defined anywhere in the specification of

the '895 patent. However, whether or not a given sprout is "rich in glucosinolates" is a

"result" of the method. Here it is a consequence of nature caused by germinating the

seeds. It is well established, it is immaterial, on the issue of the novelty of a patent claim,

what inherent properties were possessed by a product and/or who discovered the inherent

properties. The discovery of a previously unrecognized property and the recitation of that

property in a patent claim does not lend patentable novelty to the claim. *Titanium Metals*

*Corporation of America v. Banner*, 778 F.2d 775, 227 USPQ 773 (Fed. Cir. 1985).

"Cruciferous seeds", as used in claim 1, is stated to be all "cruciferous seeds" with

the exception of cabbage, cress, mustard and radish seeds. In the discussion of example

1, column 12, lines 55-61, the '895 patent states:

> Broccoli and cauliflower sprouts harvested and assayed at 3-days after
> incubation of seeds under growth conditions have Phase 2 enzyme-inducer
> potential greater than 200,000 units/g fresh weight. On the other, cabbage,

radish, mustard and cress have Phase 2 enzyme-inducer potential of less than 200,000 units/g fresh weight when assayed at the same time point.

Example 1 shows that what the patentees did was to (1) germinate several varieties of cruciferous seeds to produce sprouts by use of a known method ('895 patent, column 10, lines 8-27), (2) then harvest the sprouts, and then (3) assay the sprouts to (a) confirm that the sprouts contained a natural substance which earlier studies indicated might be beneficial in the treatment of cancer and (b) determine which of the sprout varieties contained the largest amount of the substance. However, they made no addition to the method itself. Anticipation cannot be avoided by including the assay results in the patent claims. *In re Wilder*, 429 F.2d 447, 166 USPQ 545 (CCPA 1970). *See also Titanium Metals*, 227 USPQ at 779.

The exception of "cabbage, cress, mustard and radish seeds" from "cruciferous seeds" has no significance for several reasons. This is not important, however, because the claim specifies a group of seeds. It is an elementary principle of patent law that when, as by recitation of ranges or otherwise, a claim covers several things, the claim is "anticipated" if *one* of them is in the prior art. *In re Petering*, 301 F.2d 676, 682, 133 USPQ 275, 280 (CCPA 1962) and *Atlas Powder Co. v. IRECO, Inc.* 190 F.3d 1342, 51 USPQ2d 1943 (Fed. Cir. 1999). *See also Titanium Metals*, 227 USPQ at 779. Thus, in order to anticipate claim 1, a prior art method need only disclose the steps of germinating and harvesting *one* of the cruciferous seed varieties that was not excluded (e.g. broccoli).

## CLAIM 2 OF THE '895 PATENT

Claim 2 depends from claim 1 and thus incorporates all of the limitations of claim

1.  35 U.S.C. § 112, paragraph four.  Claim 2 reads:

> The method according to claim 1, wherein said sprouts contain non-toxic
> levels of indoleclucosinolates and their breakdown products and goitrogenic
> hydroxybutenyl glucose isolates.

Claim 2 adds no action steps to the method of claim 1.  Rather, it sets forth results

of the assay.  As indicated by the word "contained", the "indole glucosinolates", etc. are

naturally occurring substances in the sprouts.  Specifying that the sprouts include these

naturally occurring substances has no patentable significance.

## CLAIM 3 OF THE '895 PATENT

Claim 3 depends from claim 1 and thus includes all the limitations of claim 1.  35

U.S.C. § 112, paragraph four.  Claim 3 reads:

> 3.     The method according to claim 1, wherein said seeds are a
> *Brassica oleracea* selected from the group of varieties
> consisting of *acephala, alboglabra, botrytis, costata,*
> *gemmifera, gongylodes, italica, medullosa, palmifolia,*
> *ramose, sabauda, sabellica,* and *selensia.*

This claim merely restricts the *Brassica oleracea seeds* to those that when

germinated produced the higher levels of the naturally occurring substance.

## CLAIM 4 OF THE '895 PATENT

Claim 4 depends from claim 3 which in turn depends from claim 1.  Thus, claim 4

includes all of the limitations of claims 1 and 3.  35 U.S.C. § 112, paragraph four.  Claim

4 reads:

4.    The method according to claim 3, wherein said seeds are *brassicas oleracea* variety *italica*.

Claim 4 limits the seeds that are to be germinated to broccoli seeds.  Whyte and others of the prior art publications disclose germinating broccoli seeds to produce a food product comprising a plurality of sprouts.

### CLAIM 5 OF THE '895 PATENT

Claim 5 depends from claim 3 which in turn depends from claim 1.  Thus, claim 5 incorporates all of the limitations of claims 1 and 3.  35 U.S.C. § 112, paragraph four. Claim 5 reads:

5.    The method according to claim 3, wherein said seeds are *brassica oleracea* variety *botrytis*.

Claim 5 limits the method to the germination of cauliflower seeds.

### CLAIM 6 OF THE '895 PATENT

Claim 6 depends from claim 5 which depends from claim 3 which depends from claim 1.  Thus, claim 6 includes all of the limitations of claims 1, 3 and 5.  Claim 6 reads:

6.    The method according to claim 5, wherein said seeds are *brassica oleracea* variety *botrytis* sub variety *cauliflora*.

Based on the information provided by the patentees in column 10, lines 27-42 of the '895 patent, claim 6 is also specifically directed to the germination of cauliflower seeds.

### CLAIM 9 OF THE '895 PATENT

9.    A method of preparing a food product rich in glucosinolates, comprising germinating cruciferous seeds that produce sprouts

having at least 200,000 units per gram fresh weight of Phase 2
enzyme-inducing potential when measured after 3-days of growth
and which contain non-toxic levels of indole glucosinolates and their
breakdown products and goitrogenic hydroxybutenyl glucosinolates,
and harvesting sprouts prior to the 2-leaf stage to form a food
product comprising a plurality of sprouts.

The inventors have admitted that germinating seeds is not their discovery. See the
'895 patent, column 10, lines 9-11 and 8-27, whereat it is stated "[t]ypically the sprouts
are grown on a non-nutritive solid support---with water and light supplied" (lines 9-11)
and "[n]umerous methods for the cultivation of sprouts *are known*, as exemplified by U.S.
Patents Nos. 3,733,745, 3,643,376, 3,945,148, 4,130,964, 4,292,760 or 4,086,725."
(Exhibit A). U.S. Patent No. 4,086,725, granted May 2, 1978 to Tsiang Kwang Li is
submitted as an example. In column 1 of this patent, lines 9-11, it is stated that "[p]lant
sprouts are commonly grown for human and animal consumption by subjecting them to
controlled conditions of temperature, light and humidity" and "[p]lant sprouts grown by
conventional procedures usually require about five or more days of growth before they
are ready for harvesting" (lines 19-21)(Exhibit P).

As clearly established by example 1 (column 12, lines 22-61 of the '895 patent)
(Exhibit A) the inventors followed the prior art and subjected a variety of seeds to
controlled conditions of temperature, light and humidity (column 12, lines 26-37). After
producing sprouts, they "assayed" the sprouts, using a standard bioassay method (column
12, lines 52-54). The results of the assay are set forth in the last paragraph of example 1
(column 12, lines 55-61):

Broccoli and cauliflower sprouts harvested and assayed at 3-days after incubation of seeds under growth conditions have Phase 2 enzyme-inducer potential greater than 200,000 units/g fresh weight.  On the other hand, cabbage, radish, mustard and cress have Phase2 enzyme-inducer potential of less than 200,000 units/g fresh weight when assayed at the same time point.

Following the assay, the inventors filed their patent application and put the assay information in the claims.  During the proceedings in the Patent Office, they successfully argued that it was necessary for this assay information to be in the prior art before the prior art could be used to invalidate the claims.

Stripped of the assay information, claim 9 reads: "[a] method of preparing a food product---comprising germinating cruciferous seeds---and harvesting sprouts prior to the 2-leaf stage, to form a food product comprising a plurality of sprouts."  The "2-leaf stage" is not explicitly defined in the patents.  However, in column 7, lines 63 and 64 of the '895 patent, there is a reference to "growing these plants only to the seedling or sprout stage, that is between the onset of germination and the 2-leaf stage."  Thus, the "2-leaf stage" merely means that germination is stopped while the "sprout" is still a "sprout." Otherwise, its meaning is indefinite and the claims should be found invalid under 35 U.S.C. § 112, paragraph 2.

### CLAIM 1 OF THE '567 PATENT

Claim 1 reads:

1.    A method of preparing a human food product comprising cruciferous sprouts containing high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products

and goitrogenic hydroxybutenyl glucosinolates, comprising the steps of:

(a)    identifying seeds which produce said sprouts, with the exception of *Brassica oleracea capitata, Lepidium sativum, Sinapis alba, Sinapis nigra,* and *Raphanus sativus* sprouts;

(b)    germinating said seeds; and

(c)    harvesting said sprouts between the onset of germination up to and including the 2-leaf stage, to form a human food product comprising a plurality of said sprouts.

Stripped of the assay results, this claim is also limited to the two action steps of "germinating said seeds" and "harvesting said sprouts between the onset of germination up to and including the 2-leaf stage".  The reference in the claim preamble to "cruciferous sprouts containing high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates" is a reference to the assay results.  Example 1 ('567 patent, column 12, line 35, to column 13, lines 5) begins by stating that seeds of different species from the cruciferae family were sterilized and grown in sterile plastic containers for one to nine days without added nutrients.  The seeds and sprouts were then assayed.  Starting in column 12, line 66, and continuing over into column 13, line 5, it is stated:

Broccoli and cauliflower sprouts harvested and assayed at 3-days after incubation of seeds under growth conditions have Phase 2 enzyme-inducer potential greater than 200,000 units/g fresh weight.  On the other hand, cabbage, radish, mustard and cress have Phase 2 enzyme-inducer potential of less than 200,000 units/g fresh weight when assayed at the same time point.

The assay established that a first group of the sprouts, consisting of broccoli and cauliflower sprouts, had a desirable amount of Phase 2 enzyme-inducer potential. The "other" group, consisting of cabbage, radish, mustard and cress did not. Thus, the "identifying seeds" step merely amounts to dividing the assay results into two groups, a first group resulting in over 200,000 units and a second group resulting in under 200,000 units. Determining by the assay that the sprouts contained "Phase 2 enzyme-inducing potential", etc. merely amounted to discovering a naturally occurring substance in the sprouts. The assaying steps or acts are not true method steps in a method of preparing a food product. They in no way change the "method of preparing a human food product" steps—"germinating said seeds" and "harvesting said sprouts", etc. The assay determination of the presence and amount of the naturally occurring substance, and the recitation of this and other assay information in the patent claims, does not lend patentable novelty to the claim. *Vitamin Technologists, Titanium, In re Wilder, Verdegaal Brothers, Bird Provision, Woodruff* and *Bristol-Myers*.

### CLAIM 8 OF THE '567 PATENT

Claim 8 reads:

8.      A human food product comprising cruciferous sprouts made according to the method of claim 1.

This is a product-by-process claim. A claim of this type is permitted in limited situations. However, a product-by-process claim is never patentable if it depends from a method claim that is unpatentable. Here, a person practicing the public domain method of

germinating cruciferous seeds that is prior art publications would produce a food product

by that method that would anticipate claim 8.

### CLAIM 1 OF THE '505 PATENT

Claim 1 reads:

1.    A method of increasing the chemoprotective amount of Phase 2
      enzymes in a mammal, comprising the steps of:

>    (a)    identifying seeds which produce cruciferous sprouts, with the
>           exception of *Brassica oleracea capitata, Lepidium sativum,*
>           *Sinapis alba, Sinapis nigra,* and *Raphanus sativus* sprouts,
>           containing high Phase 2 enzyme-inducing potential and non-
>           toxic levels of indole glucosinolates and their breakdown
>           products and goitrogenic hydroxybutenyl glucosinolates;

>    (b)    germinating said seeds;

>    (c)    harvesting said sprouts between the onset of
>           germination up to and including the 2-leaf stage
>           to form a food product comprising a plurality of
>           sprouts; and

>    (d)     administering said food product, or a non-toxic
>           extract of said food product, to said mammal.

The preamble statement "increasing the chemoprotective amount of Phase 2

enzymes in a mammal" is a result of the sprouts being eaten by the mammal.  The

"identifying seeds" step merely means that the seeds Brassica wants to be covered by the

claim are those seeds that will produce the sprouts that contain a desirable amount of the

naturally occurring substance.  Both the selected seeds and the rejected seeds are in the

prior art and have for many years been germinated to produce sprouts that are eaten or

otherwise ingested by humans.

The "germinating said seeds" and "harvesting said sprouts", etc. steps are the same steps that are discussed above in connection with the other claims. These are public domain steps. They are included in the prior art methods that are disclosed in Whyte and the other prior art publications.

The last step of claim 1, "administering said food products, or a non-toxic extract of said food products, to said mammal" reads on or encompasses the eating of the sprouts by a human.

## CLAIM 16 OF THE '505 PATENT

Claims 1 and 16 are identical except for different statements in their preambles. The preamble of claim 1 includes "increasing the Chemoprotective amount of Phase 2 enzymes in a mammal". The preamble of claim 16 includes "reducing the level of carcinogens in a mammal." Both of these are statements of "result." Each is an inherent result of the prior art method of germinating certain of the prior art cruciferous seeds to produce sprouts that are eaten by a human or other mammal. All of the above argument directed to claim 1 pertains also to claim 16 and so it will not be repeated.