IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN RE: * | |
| CRUCIFEROUS SPROUT | MDL Docket No. 1388 |
| PATENT LITIGATION * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' JOINT REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' JOINT MOTION FOR SUMMARY
JUDGMENT RE: INVALIDITY OF THE PATENTS-IN-SUIT**

Philip M. Andrews (Federal Bar No. 00078)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone (410) 752-6030
Fax: 410-539-1269
*Attorneys for Defendants Edrich Farms, Inc., Edward F. Stanfield, Jr., Richard Stanfield, Edward B. Stanfield, III and Sally F. Stanfield*

Delbert J. Barnard
Barnard & Pauly, P.S.
947 Powell Avenue, SW, Suite 105
Renton, Washington 98055
Phone: (206) 246-0568
Fax: (206) 243-4618
*Attorneys for Harmony Farms, LLC, Lorna M. Lynn and Gregory H. Lynn, and for Robert L. Rust and International Specialty Supply, LLC*

Joseph A. Kromholz
Dan Johnson
Ryan Kromhoz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618
Phone: (262) 783-1300
Fax: (262) 783-1211
*Attorneys for Sunrise Farms, Inc., Frank Crikelair and Becky Crikelair*

Donald W. Ullrich, Jr.
P.O Box 160007
Sacramento, California 95816-0007
Phone: (916) 441-4554
Fax:    (916) 441-5465
*Attorney for Banner Mountain Sprouts, Inc. and Lawrence Ravitz*

### A. PLAINTIFFS DO NOT DISPUTE THE MATERIAL FACTS ESTABLISHED BY THE DEFENDANTS

Plaintiffs do not dispute the material facts stated in Defendants' memoranda. For example, Plaintiffs admit, *inter alia*, that "[t]hat *Cornucopia*[1] reference discloses . . . sprouting and eating particular cruciferous sprouts like . . . broccoli (*i.e. Brassica Oleracea Botryis*) . . ." (Plaintiffs' Memorandum at 28). Nor do Plaintiffs dispute that their patent specification, which they admit to be identical in all of the patents-in-suit, specifically listed *Brassica Oleracea Botryis* as a sprout type covered by the claims of the Patents-In-Suit. *Id.* at p. 5, n.3; *See e.g.,* Patent '895 at Col. 4, Lines 49-62. Plaintiffs admit that the prior art references, including the *Cornucopia* reference, individually "disclose . . . eating certain cruciferous sprouts" and "that the seeds used in the claimed invention were . . . natural." (Plaintiffs' Memorandum at 30).

Defendants do not have to show more to establish that the Patents-In-Suit are invalid. Plaintiffs have admitted that the Patents-In-Suit claim a plant (broccoli sprouts), long well known in nature and cultivated and eaten by humans for centuries. The sole basis for the Plaintiffs' position that the Patents-In-Suit are not invalid is Plaintiffs' inventors recent realization that the kn own sprouts/plants disclosed in the Patents-In-Suit *have always* had some heretofore unknown, but naturally occurring beneficial feature, specifically the naturally occurring chemoprotective compounds.

---

[1] Specifically, Stephen Facciola, *Cornucopia: A Source Book of Edible Plants,* 47 (1990) and hereinafter referred to as *Cornucopia*.

### B. PLAINTIFFS' PATENTS ARE INVALID AS A MATTER OF LAW

#### 1. The Patents-In-Suit are Inherently Invalid

Two salient and undisputed facts support all of Defendants' arguments for granting them summary judgment, and, at the same time, disposes of Plaintiffs' legal arguments. No matter how Plaintiffs may try to cloud the legal issues before this Court, Plaintiffs admit that: (a) the sprouts of their claimed methodology are inherently rich in chemoprotective compounds, such as glucosinolates, that induce the activity of Phase 2 enzymes that can inactivate carcinogens, without inducing biologically significant activities of Phase 1 enzymes; and (b) the prior art *Cornucopia* reference discloses the identical type of sprout that is inherently rich in said chemoprotective compounds as a food product that can be consumed.

Further, Plaintiffs do not dispute the teaching of the independent prior art reference of Esther Munroe in *Sprouts to Grow and Eat* that "CABBAGE FAMILY - broccoli . . . Cauliflower . . . and Kale . . . All are easy to sprout . . . Sprouting time is 3 to 5 days for a sprouted length of ½ to 1 inch . . . these sprouts tend to be strong flavored or bitter if grown too long, so use them when they are most pleasant to your taste in soups, salads and main dishes. Like their parent plants, they are high in vitamins and so are well worth sprouting." *See* Ex. F., *Esther Munroe, Sprouts to Grow and Eat*, 9-14 (Second printing December 1977) (1974).

It is well-established that even though a reference does not specifically disclose one or more claim limitations, it will still anticipate if the reference inherently

discloses those limitations. *See Verdegaal Brothers, Inc. v. Union Oil Co. of California,* 814 F.2d 628 (Fed. Cir.) *cert. denied*, 484 U.S. 827 (1987); *In Re King*, 801 F.2d 1324 (Fed. Cir. 1986). As stated in *Verdegaal Brothers,* "a claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Id.* at 631.

The doctrine of inherency is based upon the principle that once certain knowledge enters the public domain, it cannot later be withdrawn from the public domain. If granting patent protection on a disputed claim would allow the patent holder to exclude the public from practicing the prior art, then that claim is anticipated. *See Atlas Powder*, 190 F.3d at 1346; *Titanium Metals Corp. of America v. Banner,* 778 F.2d 775, 781 (Fed. Cir. 1985). Inherency is not necessarily coterminous with the knowledge of those of ordinary skill in the art. *See Atlas Powder*, 190 F.3d at 1347; *MEHL/Biophile Int. Corp. v. Miligram*, 192 F.3d 1362 (Fed. Cir. 1999); and *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985). The discovery of a previously unappreciated property of a prior art composition, or of a specific explanation of a prior art's function, does not render the old composition patentably new to the discoverer. *See Atlas Powder*, 190 F.3d at 1347, *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985). The same is true for the discovery of an old process. *See In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990) ("It is a general rule that merely discovering and claiming a new benefit of an old process cannot render the process again patentable.").

Inherency in the present case is grounded in just plain common sense. There is no dispute that both the *Cornucopia* reference and the *Sprouts to Grow and Eat* reference teach the sprouting and consuming of broccoli as disclosed and claimed in the Patents-In-Suit; in *Sprouts to Grow and Eat*, generically as to all types of broccoli, and in *Cornucopia*, as to the specific type of broccoli disclosed in the Patents-In-Suit.

More telling is that under Plaintiffs' interpretation of the claims of the Patents-In-Suit, the public may no longer follow the instruction of the *Cornucopia* reference, or any of the other separate and independent references attached as exhibits to Defendants' motion, and grow broccoli sprouts, without the permission of the patent owners. This is the essence of invalidity by inherency.

Conclusively, plain and simple, Plaintiffs do not dispute that the actual manipulative steps of their method claims, germination and harvesting, and the actual manipulative steps of the prior art references, are identical. "In the present case the claimed processes of the Patents-In-Suit are not directed to a new use. They are directed to a very old use, namely preparing a food product for consumption by planting a seed and harvesting a resulting sprout. *See* Ex. G. *Cornucopia* at p. 47; *See* Ex. F., *Sprouts to Grow and Eat*, at 9-14, 21-31; *See generally* Ex. K, *The Beansprout Book*, 1973 (discussing elementary sprouting technique). *See also* Ex. L. U.S. Patent No. 4,765,092, and Ex. L1, U.S. Patent No. 4,642,939." (All exhibits are attached to Defendants' Supplemental Memorandum in Support of their Joint Motion Regarding Invalidity of the Patents-In-Suit. In fact, Plaintiffs specifically admit this to be true in Patent '895 at Col.

10, Lines 21-24, where Plaintiffs' inventors stated "Numerous methods for the cultivation of sprouts are known, as exemplified by U.S. Pat. Nos. 3,733,745, 3,643,376, 3,945,148, 4,130,964, 4,262,760, or 4,086,725." As previously discussed, newly discovered results of old processes are not patentable because the newly discovered results are inherent in the prior art. *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001) (*stating* "[n]ewly discovered results of known processes directed to the same purpose are not patentable because such results are inherent", affirming district courts' grant of summary judgment that claims 1-3 and 6 of U.S. Patent 5,641,803 were invalid.)[2]

### a.  Brassica's Inherency Cases are Not on Point

Brassica argues that the Defendants have failed to show that the prior art methods produce sprouts that are inherently rich in glucosinolates. (Plaintiffs' Memorandum at 2-5, 22 and 23) Brassica relies on *Applied Materials v. Advanced Semiconductor Materials Am.*, 98 F.3d 1563 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *Finnigan Corp. v. ITC*, 180 F.3d 1354 (Fed. Cir. 1999); *Glaxo, Inc. v. Novopharm, Ltd.*, 830 F.Supp. 871 (E.D.N.C. 1993), *aff'd*, 52 F.3d 1043 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 988 (1995); *In re King*, 801 F.2d 1324, (Fed. Cir. 1986);

---

[2]  Plaintiffs' assertion here that the discovery of the assay results was surprising and unexpected to the inventors, while accepted as true solely for the purpose of this motion, is irrelevant to the issue of inherency. "[E]vidence of nonobviousness [which includes evidence of surprising or unexpected results] is irrelevant for patentability purposes when an invention is anticipated under Section 102." *See In Re Paulsen*, 30 F.3d 1475, 1482 n.11 (Fed. Cir. 1994).

*MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362 (Fed. Cir. 1999); *Standard Oil Co. v. Montedison, S.p.A.*, 664 F.2d 356 (3d Cir. 1981), *cert. denied sub nom.*, *Montedison S.p.A. v. Phillips Petroleum Co.*, 456 U.S. 915 (1982); and *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001). Those cases, however, are inapposite.

*Applied Materials* is not an anticipation case. The validity issues addressed in that case are double-patenting and obviousness.

*Finnigan* involves a method claim that includes the action step of "changing the three-dimensional trapping field so that the simultaneously trapped ions of consecutive specific masses become sequentially unstable and leave the trapping field." The prior art was an article that did not disclose this action step. Jefferts testified that the injection technique used in the system disclosed by the article "must involve variation of the trap parameters." However, in the end, Jefferts as much as admitted that the system disclosed by the article was set up for performing either residence or non-residence ejection. The court held that because of this equivocal testimony, the defendant had not proven the existence of the action step by clear and convincing evidence.

*Glaxo* involved a patent that disclosed a method for making a composition and claimed the combination. The prior art was an earlier patent that disclosed a different method for making a different composition. The defendant attempted to show that a practice of example 32 in the prior patent would produce the claimed composition. The district court found that the defendant had not carried its

burden of proof on this point. The Federal Circuit affirmed. Here, the action steps that are claimed are public domain action steps.

*King* involved a method invention in which the claims in issue included the action step of varying the thickness and composition of a metal oxide layer. The Patent Office Board of Appeals found that the claim was anticipated by an article written by Donley. The Board found that Donley's and appellant's structures were the same and that Donley had expressly stated that the thickness of its reflective layer and the thickness and composition of its metal oxide layer can be varied to achieve different reflectants and transmittance characteristics and colors. On appeal, the Federal Circuit stated:

> The only arguable shortcoming we see with Donley respecting its adequacy to support an anticipation rejection is Donley's failure to articulate a scientific explanation of why his structure behaves as it does, namely, that optical interference causes color which changes when the thickness of the metal oxide layer is varied. Finally, to the extent that appellant thinks he is entitled to a patent because he sets out the scientific formulae explaining what happens to light as it passes through the device, it is well settled that he is not so entitled. *See Parker v. Flook*, 437 U.S. 584, 198 USPQ 193 (1978).

*In re King*, 801 F.2d at 1327. In fact, *King* supports the Defendants' position, not Brassica's position, as does *Flook*. *Flook* involved a method patent in which the claimed method included a mathematical formula. The Court found the claim unpatentable under 35 U.S.C. § 101. The mathematical formula was considered to be phenomena of nature:

> The rule that the discovery of a law of nature cannot be

> patented rests, not on the notion that natural phenomena are not processes, but rather on the more fundamental understanding that they are not the kind of "discoveries" that the statute was enacted to protect. *The obligation to determine what type of discovery is sought to be protected must precede the determination of whether that discovery is, in fact, new or obvious.* (emphasis added).

*Parker v. Flook*, 437 U.S. 584, 593 (1978).

This holding is essentially the same as the holding in *Titanium*. The court in *Titanium* referred to the need to come to grips with the real issues: (1) what do the claims cover and (2) is what they cover new? The court then continued:

> Under the laws Congress wrote, they must be considered. Congress has not seen fit to permit the patenting of an old alloy, known to others through a printed publication, by one who has discovered its corrosion resistance or other useful properties, or has found out to what extent one can modify the composition of the alloy without losing such properties.

*Titanium Metals Corp. of America v. Banner*, 778 F.2d 775 (Fed. Cir. 1985).

*MEHL* involves a method of hair depilation. The claim at issue included the action step of "aligning a laser light applicator substantially vertically over a hair follicle opening, said applicator having an aperture of sufficient area to surround a hair follicle and over lie its papilla." *MEHL*, 192 F.3d 1362, 1364 (Fed. Cir. 1999). The single reference was a manual that taught the use of a laser to remove a tattoo. The court stated that there was no necessary relationship between the location of a tattoo and the location of hair follicles. It was argued that an operator of the prior art laser could use it by aligning the laser light substantially vertically over a hair follicle opening. The court

stated that the possibility of such a use does not legally suffice to show anticipation. This was not a case of all the action steps being in the prior art, and the novelty in the claim merely being an inherent property of a product produced by the action steps.

*Standard Oil* is not an anticipation case. Rather, it relates to "first inventor" and "sufficiency of disclosure" issues. In this case, the district court held that properties that were not specifically described were inherently disclosed. It was shown that at least six experimenters following the description made products that had properties that complied with the requirements of the disclosure. *Standard Oil* at 373.

*Telemac* supports the Defendants' position. The district court had found that the disputed claims were invalid as being anticipated under 35 U.S.C. § 102(b) by the Wittstein patent even though the patent did not expressly identify four specific rate categories that were required by the claims in issue. However, the district court found that the disputed features were necessarily present in the disclosure of the Wittstein patent. The court based this finding in part on statements made in the patent-in-suit. The written description of the patent-in-suit showed that the inventors understood that wireless providers would have included at least the claimed rate categories in their service. The Federal Circuit affirmed the district court's ruling:

> Indeed, when read in light of the '418 patent, the '100 patent, and the admission of Mr. McGregor, it is evident that as of the time the application which issued as the Wittstein patent was filed a Call Detail Record necessarily included information regarding the rates for the claimed call categories. Thus, the Wittstein patent discloses an algorithm which calculates charges for all four claimed categories of calls. Accordingly,

>we are in agreement with the district court's conclusion that no reasonable jury could find the claims of the '100 patent valid in light of the anticipating disclosure found in the Wittstein patent.

*Telemac*, 247 F.3d at 1330.

### b. *Titanium Metals* is Very Much on Point

*Titanium Metals* is discussed in detail in Defendants' Memoranda I and II and is further discussed in some detail in this Reply Memoranda. It is very much on point for several reasons. First, it considered an attempt to patent an old alloy by claiming a property of the alloy. Second, it makes it clear that a reviewing court must come to grips with the questions: (1) what do the claims cover and (2) is what they cover new? Third, it establishes that a determination of these questions is a matter of law. Fourth, it establishes that a discovery of an inherent property cannot be the basis for patenting subject matter that is already public domain. Finally, it establishes that it makes no difference who discovers the inherent property. *Bristol-Myers* is also very much on point.

### c. Brassica has not Distinguished Defendants' Case Law

In their Memorandum, Brassica discusses *Atlas Powder* and *Titanium Metals* has to some extent the following additional cases which are relied upon by the Defendants: *Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369(5th Cir. 1978); *In re Woodruff*, 919 F.2d 1575 (Fed. Cir. 1990); *Verdegaal Bros., Inc. v. Union Oil Co.*, 84 F.2d 628 (Fed. Cir. 1987), *cert denied*, 484 U.S. 827 (1987); *Vitamin*

*Technologists v. Wisconsin Alumni Research Found.,* 146 F.2d 941, (9th Cir. 1945), *cert denied,* 325 U.S. 876 (1945). Important additional cases which Brassica has not discussed are *In re Wilder,* 42 F.2d 447 (C.C.P.A. 1970); *In re Petering*, 301 F.2d 676, 682 (CCPA 1962) and *Bristol-Myers. Bristol-Myers* is discussed above and on page 9 of Defendants Memorandum III. The other cases are discussed in some detail on pages 9-12 of Defendants' Memorandum I. It is interesting that Brassica chose to ignore *Bristol-Myers*, particularly since Brassica's lead counsel in this case was one of the attorneys for the winning side in *Bristol-Myers.*

### 2. The Patents-In-Suit Fail to Meet the Statutory Criteria under 35 U.S.C. § 101

The limits of § 101 are well-established:

This Court has undoubtedly recognized limits to § 101 and every discovery is not embraced within the statutory terms. Excluded from such patent protection are laws of nature, natural phenomena, and abstract ideas. *See Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk v. Benson*, supra, at 67; *Funk Bros Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). "An idea of itself is not patentable," *Rubber Tip Pencil Co. v. Howard,* 20 Wall. 498, 507 (1874). "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." *LeRoy v. Tatham*, 14 How. 156, 175 (1853). Only last Term, we explained: "[A] new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity. Such discoveries are 'manifestations of . . . nature, free to all men and reserved exclusively to none." *Diamond v. Chakrabarty,* 447 U.S. at 309, *quoting Funk Bros. Seed Co. v. Kalo Inoculant Co., supra*, at 130.

*Diamond v. Diehr,* 450 U.S. 175, 185 (1981).

Plaintiffs try to suggest that there is no evidence that cruciferous sprouts rich in glucosinolates ever existed in nature. Plaintiffs fail because, simultaneously, Plaintiffs do not dispute that: (1) The seeds used to produce the patented broccoli sprouts at issue "are completely natural." *See* Plaintiffs, *BroccoSprouts* advertising literature. Ex. H. *See also* Plaintiffs *BroccoSprouts® Product Fact Sheet,"* located at [www.brassica.com/products/factsheet.htm.](www.brassica.com/products/factsheet.htm.) Ex. I, and Plaintiffs' *"Questions About Sprouts,"* located at [www.broccosprouts.com/faq.html](www.broccosprouts.com/faq.html) (specifically reference the answer to question 31, "Are BroccoSprouts genetically engineered?"); (2) the seeds used to produce the patented sprouts were selected by culling them from previously known varieties of broccoli seed. *See* Ex. J., Plaintiffs *"Questions About Sprouts,"* located at [www.broccosprouts.com/fax.html,](www.broccosprouts.com/fax.html,) (specifically reference the answer to question 31, "Are BroccoSprouts genetically engineered?"); (3) The patented broccoli sprouts at issue are not genetically engineered. They are completely natural. *Id.* (answer to question 31, "Are BroccoSprouts genetically engineered?"). Given these undisputed facts there can be no question that the sprouts covered by the Patents-In-Suit are simply and legally plants found in the wild and are not patentable subject matter.

Further, Plaintiffs' argument that they have given new form or quality to the sprouts is belied by Plaintiffs' admission that the patented broccoli sprouts are not genetically engineered, but are completely natural.

## **CONCLUSION**

The Patents-In-Suit are invalid, and Defendants are entitled to summary judgment in their favor on Plaintiffs' claims that are based on those invalid patents.

|  |  |
|---|---|
| _____ | /s Philip M. Andrews (Federal Bar No. 00078)<br>Kramon & Graham, P.A.<br>One South Street, Suite 2600<br>Baltimore, Maryland 21202<br>410- 752-6030<br>Fax: 410-539-1269<br><br>*Attorneys for Defendants Edrich Farms, Inc.,*<br>*Edward F. Stanfield, Jr., Richard Stanfield,*<br>*Edward B. Stanfield, III and Sally F. Stanfield* |
|  | Delbert J. Barnard<br>Barnard & Pauly, P.S.<br>947 Powell Avenue, SW, Suite 105<br>Renton, Washington 98055<br>Phone:  (206) 246-0568<br>Fax:  (206) 243-4618<br><br>*Attorneys for Harmony Farms, LLC,*<br>*Lorna M. Lynn and Gregory H. Lynn, and for*<br>*Robert L. Rust and International Specialty*<br>*Supply, LLC* |

>Joseph A. Kromholz
>Dan Johnson
>Ryan, Kromholz & Manion, S.C.
>P.O. Box 26618
>Milwaukee, Wisconsin  53226-0618
>Phone: (262)  783-1300
>Fax:  (262)  783-1211
>
>*Attorneys for Sunrise Farms, Inc.,*
>*Frank Crikelair and Becky Crikelair*
>
>
>Donald W. Ullrich, Jr.
>P.O Box 160007
>Sacramento, California 95816-0007
>Phone:  (916)  441-4554
>Fax:     (916)  441-5465
>
>*Attorney for Banner Mountain Sprouts, Inc. and*
>*Lawrence Ravitz*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of July, 2001, copies of the foregoing Defendants' Joint Reply to Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment Re: Invalidity of the Patents-In-Suit. were hand-delivered to:

> Paul Mark Sandler, Esquire
> W. Michael Mullen, Esquire
> Freishtat & Sandler
> 201 E. Baltimore Street, Suite 1500
> Baltimore, Maryland 21202
> *Liaison Counsel for Plaintiffs Brasssica Protection Products L.L.C. and Johns Hopkins University*

 

 

_____
Philip M. Andrews