IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE:

CRUCIFEROUS SPROUT
PATENT LITIGATION

MDL Docket No. 1388

**MEMORANDUM**

Pursuant to 28 U.S.C. § 1407, the Judicial Panel for Multidistrict Litigation consolidated these actions before this Court for pre-trial purposes. These actions all involve the validity of certain patents owned by Plaintiffs Brassica Protection Products LLC and Johns Hopkins University. On July 23, 2001, the Court held a Markman[1] hearing addressing the construction of the claims at issue, and also heard argument on Defendants' Motion for Summary Judgment, which had been fully briefed.[2] Upon consideration of the pleadings, the argument of counsel, and the relevant case law, the Court determines that Defendants' motion should be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The patents-in-suit all involve the production and the

---

[1] Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995)(en banc), aff'd, 517 U.S. 370 (1996).

[2] Also pending is Plaintiffs' Cross Motion for Summary Judgment. Although Defendants vehemently disagreed with this characterization at the hearing, Plaintiffs' motion, for the most part, does represent the mirror image of the issues raised in Defendants' motion. Thus, the Court has considered the briefing of Plaintiffs' motion in reaching the instant decision.

1

consumption of the sprouts of certain types of cruciferous seeds such as broccoli and cauliflower. The inventors of the patents, Jed Fahey and Paul Talalay, discovered that the sprouts of these seeds, when harvested and consumed at a particular stage of their growth, contain high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates. These substances aid the body's natural cancer fighting defense mechanisms.

Although all three patents-in-suit relate to cruciferous sprouts and glucosinolates, each varies slightly in its emphasis. Patent 5,725,895 discloses and claims, inter alia, "a method of preparing a food product rich in glucosinolates, comprising germinated cruciferous seeds, with the exception of cabbage, cress, mustard and radish seeds,[3] and harvesting sprouts prior to the 2-leaf stage, to form a food product comprising a plurality of sprouts." '895 patent, claim 1. Patent 5,968,567 discloses and claims, inter alia, a method of preparing a human food product comprising cruciferous sprouts containing high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates. '567 patent, claim 1. The '567 patent also specifies the steps of the invention as "(a)

---

[3] The inventors discovered that while the sprouts of some cruciferous seeds, such as broccoli and cauliflower, contain high levels of glucosinolates, other cruciferous seeds, such as cabbage, cress, mustard and radish, do not contain the same concentration of that substance.

2

identifying seeds which produce said sprouts . . . (b) germinating said seeds; and (c) harvesting said spouts between the onset of germination up to and including the 2-leaf stage, to form a human food product." Id.  The last patent-in-suit, Patent 5,968,505, claims "a method of increasing the chemoprotective amount of Phase 2 enzymes in a mammal." '505 patent, claim 1.  The '505 patent then recites the three steps of the '567 patent, and adds a fourth; "(d) administering said food product, or a non-toxic extract of said food product, to said animal."

Plaintiffs' sprouts have been the subject of litigation prior to the instant suits.  In June of 1999, Plaintiff Brassica filed an action in the United States District Court for the District of Delaware against Sproutman, Inc. and Murray Tiser (collectively, Sproutman), alleging that these defendants were infringing on the '895 patent[4] by producing and selling broccoli sprouts.  Civ. Action No. 99-350-SLR.  Sproutman argued in that litigation that the '895 patent was invalid under 35 U.S.C. § 102(b), because the patent was anticipated by the prior art and was invalid as obvious under 35 U.S.C. § 103.  This prior art reveals that it has been well known for years that broccoli seeds can be sprouted and the sprouts consumed as food.

---

[4] At the time this suit was filed, the '567 and '505 patents had not been issued.

3

During the pendency of the Delaware litigation, Sproutman also filed a request for reexamination with the U.S. Patent and Trademark Office. The Patent Office granted Sproutman's request and issued an Office Action in Re-examination, rejecting Claims 1-6 and 9-13 of the '895 patent, finding these claims both anticipated under § 102(b) and unpatentable under § 103. Brassica then filed an Amendment and Request for Reconsideration, raising essentially the same arguments that Plaintiffs raise here. Upon reconsideration, the Patent Office withdrew the rejections and re-affirmed the validity of Claims 1-6 and 9-13.

Referencing the prior art submitted in the re-examination proceedings, as well as some additional published sources that pre-date Plaintiffs' patents, Defendants argue in the pending summary judgment motion that Plaintiffs' patents are invalid because the "invention" is not "new." As Defendants succinctly present the question before the Court: "Can a plant (broccoli sprouts), long well known in nature and cultivated and eaten by humans for decades, be patented merely on the basis of a recent realization that the plant _has always_ had some heretofore unknown but naturally occurring beneficial feature?" Defendants' June 7, 2001 Supplemental Memo. at 1 (emphasis in original). For the reasons that follow, the Court finds that the answer to that question must be "no."

**II. LEGAL STANDARD**

4

Summary judgment is appropriate when, based on the record before the Court, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 980 (Fed. Cir. 1997). A disputed fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to the proceeding. See Anderson, 477 U.S. at 248; General Mills, 103 F.3d at 980.

Under the patent statutes, a patent enjoys a presumption of validity, see 35 U.S.C. § 282 (1994), which can be overcome only through clear and convincing evidence. See United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1563 (Fed. Cir. 1997). Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable finder of fact could conclude otherwise. In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. See Anderson, 477 U.S. at 255; Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274 (Fed. Cir. 1995).

**III. DISCUSSION**

The facts relevant to the construction and the validity of Plaintiffs' patent claims are fairly uncomplicated and largely undisputed. Plaintiffs do not dispute that the prior art taught that cruciferous seeds, including broccoli, can be germinated and consumed as a food product in the sprout stage.[5] See, e.g., Esther Munroe, Sprouts to Grow and Eat, 9-14 (Second printing Dec. 1977)(1974)("CABBAGE FAMILY - Broccoli . . . Cauliflower . . . and Kale . . . . All are easy to sprout and each one produces a tasty sprout. . . . these sprouts tend to be strong flavored or bitter if grown too long, so use them when they are most pleasant to your taste in soups, salads and main dishes. Like their parent plants they are high in vitamins and so are well worth sprouting"); Stephen Facciola Cornucopia: A Source Book of Edible Plants, 47 (1990). Plaintiffs also do not claim that their patents involve doing anything to alter or modify the natural seeds. They are simply germinated, harvested, and eaten.

Defendants, on the other hand, do not dispute that Fahey and

---

[5] Plaintiffs' counsel represented at the hearing that, while the prior art may have described how cruciferous seeds could be grown into sprouts for food, few if any individuals were actually producing, marketing, or consuming broccoli sprouts until September 1997 when Fahey and Talalay published their findings regarding the beneficial health properties of those sprouts. Assuming that this representation is accurate, it makes no difference to the question before the Court. Invalidity by anticipation requires only that the prior art discloses to one of skill in the art how to do a thing, it does not matter if it was ever done. See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368 (Fed. Cir. 2001).

Talalay discovered a new and significant property of certain types of cruciferous sprouts, i.e., that these sprouts contain high levels of substances that aid the human body in preventing cancer. Defendants do not challenge that Fahey and Talalay also discovered that certain cruciferous sprouts, such as broccoli and cauliflower, contain much higher levels of these substances than other cruciferous seeds. Instead, Defendants contend, and the Court agrees, that merely describing unexpected beneficial results of a known process does not entitle Plaintiffs to patent that process.

It is a fundamental precept of patent law that a product is not patentable unless it is new. Patent claims that lack novelty are said to be anticipated by the prior art and are invalid pursuant to 35 U.S.C. § 102(b). Section 102(b) provides that a patent is invalid as anticipated if the claimed invention "was patented or described in a printed publication in this or a foreign country or in public use or on sale in the country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Courts have interpreted § 102(b) to require that "each and every element as set forth in the claim [be] found, either expressly or inherently described, in a single prior art reference." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1570 (Fed. Cir. 1988) (emphasis added).

Under the concept of inherency, where the prior art necessarily functions in accordance with or includes the claimed limitations, the prior art anticipates those limitations. In re King, 801 F.2d 1324, 1326 (Fed. Cir. 1986). It is important to note that a property or result can be inherent in the prior art regardless of whether those skilled in the art were previously aware of that property or result. "Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art." Atlas Powder Co. v. Ireco Inc., 190 F.3d 1342 (Fed. Cir. 1999). "However, the discovery of a previously unappreciated property of a prior art composition . . . does not render the old composition patentably new to the discoverer." Id.

These principles were applied by the Federal Circuit Court of Appeals in Titanium Metals Corp. of Amer. v. Banner, 778 F.2d 775 (Fed. Cir. 1985). In Titanium Metals, the patent applicants sought to obtain a patent for an alloy made up of titanium and small percentages of nickel, molybdenum, and iron. The applicants had discovered that titanium alloys within a specified range were characterized by good corrosive resistance in hot brine environments. The patent examiner, as well as the Patent and Trademark Office Board of Appeals, rejected their patent application, however, on the ground, inter alia, that the claims were anticipated by an article published in a Russian journal of

metallurgy five years prior to the filing date of the application. The applicant appealed the Patent Board's decision and the district court reversed, ordering the Commissioner to authorize the patent. The Commissioner then appealed and the Federal Circuit Court reversed the district court's decision, reaffirming the conclusion of the Patent Office that the patent was anticipated by the prior art.

There was no dispute in Titanium Metal that the referenced Russian journal article described a range of titanium-nickel-molybdenum alloys that included the alloys sought to be patented. The patent applicants and the district court concluded that the claims were not anticipated by the prior art, however, because the corrosive resistant properties of the selected alloys were not disclosed in the Russian article. In reversing, the Federal Court observed,

> As we read the situation, the [district] court was misled by the arguments and evidence to the effect that the inventors here found out and disclosed in their application many things that one cannot learn from reading the Russian article and that this was sufficient in law to justify granting them a patent for their contributions - such things as what good corrosion resistance the claimed alloys have against hot brine, which possibly was not known, and the range limits of the Ni and Mo content, outside of which that resistance diminishes, which are teachings of very useful information. These things the applicants teach the art and the Russian article does not.

778 F.2d at 781.

The Federal Circuit further opined that counsel had lost sight of the real issues in the litigation: "1) what do the claims cover and 2) is what they cover new?" Id. at 782. "Congress has not seen fit to permit the patenting of an old alloy, known to others through a printed publication, by one who has discovered its corrosion resistance or other useful properties, or has found out to what extent one can modify the composition of the alloy without losing such properties." Id.

The court also provided some helpful guidance as to the proper construction of claims where the claims purport to include descriptions of the inherent properties of a process or composition. One of the claims at issue contained the phrase, "characterized by good corrosion resistance in hot brine environment." This phase was also applied to the two dependant claims. The Federal Circuit observed that this phrase may have led the district court to improperly interpret the claims as directed to the applicants' discoveries about the properties of the alloys instead of the alloys themselves. "[T]he correct and necessary construction of all three claims [is] that they simply define titanium base alloys. . . . [I]t is immaterial, on the issue of their novelty, what inherent properties the alloys have or whether these applicants discovered certain inherent properties." Id. at 782.

The Federal Circuit just recently repeated much of this same teaching in Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc. Bristol-Myers involved two patents related to a method of administering the antitumor drug paclitaxel over a three hour period. Bristol-Myers, the assignee of the patent, brought an infringment action. The defendants moved for summary judgment, arguing that the patents were invalid as their claims were anticipated by the prior art, specifically an article by Mark Kris, a researcher who had treated cancer patients with three hour infusions of paclitaxel within the claimed dosage ranges. While Kris had employed that infusion method, the study was largely unsuccessful in that he did not observe any antitumor response. Kris also recommended premedication regimens as a possible means to minimize hypersensitivity reactions, but he did not himself employ those regimens in his study.

After a Markman hearing, the district court held that much of the preamble language in the claims describing the intended results of the treatment was non-limiting and could be ignored for the purposes of construing the claim and determining anticipation. The district court then granted the defendants' motion for summary judgment on the ground of invalidity by anticipation.

In affirming the district court's decision, at least in large part, the Federal Circuit agreed that the preamble language

11

did not limit the claims. The court concluded that language such as "for reducing hematologic toxicity" and "'to effect regression of a taxol-sensitive tumor, said method being associated with reduced hematologic toxicity,' only states an intended result of that claimed method. . . . The steps of the three-hour infusion method are performed in the same way regardless whether or not the patient experiences a reduction in hematologic toxicity. . . ." 246 F.3d at 1374-75. The court also affirmed the district court's conclusion that the patents were invalid on the basis of anticipation:

> Kris therefore performed all of the claimed steps at dosage levels that anticipate those in the claims. Although Kris did not observe any anticancer effects, we have already determined that the claims only require the administration of specific amounts of paclitaxel and not the achievement of a particular result.

Id at 1378. The court found that the patent claims related to premedication were also anticipated by the Kris article, even though Kris himself never followed the teaching. "[A]nticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." Id. at 1379 (citing In re Donohue, 766 F.2d 531, 533 (Fed. Cir. 1985))

In construing the claims at issue here, the Court finds that they describe nothing more than germinating sprouts from certain cruciferous seeds and harvesting those sprouts as a food product,

12

a process that was known long before the application for these patents. Phrases in the claims such as, "rich in glucosinolates," or "containing high Phase 2 enzyme potential and non-toxic levels of indole glusinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates," simply describe the inherent properties of certain crufiferous seeds, in the same way that "characterized by good corrosion resistance in hot brine environment" described the inherent property of the selected alloys in Titanium Metal. Similarly, the phrase, "increasing the chemoprotective amount of Phase 2 enzymes in a mammal" does nothing more than describe an intended result of a process, in the same way as the phrase, "to effect regression of a taxol-sensitive tumors" functioned in the patent at issue in Bristol-Myers. These phrases are plainly non-limiting.

Plaintiffs attempted in their pleadings, and at the hearing, to argue that the claim language, "identifying seeds which produce cruciferous sprouts . . . containing [the desired properties]" introduces a new "selection" step that was not a part of the prior art. All this step entails, however, is choosing to do one thing over another, in this case, choosing to grow broccoli or cauliflower sprouts instead of cabbage, cress, mustard or radish sprouts. Any process could be prefaced by a similar "selection" step. Certainly, that one first chooses to perform a particular process cannot be enough to make the process

13

"new."

The record before the Court makes it abundantly clear that, prior to the issuance of the patents-in-suit, one skilled in the art could, by following the teachings of the prior art, germinate broccoli seeds, harvest the sprouts, and sell them as a food product. It is Plaintiffs' position that their patents now forbid Defendants from doing what they once could plainly do. Under longstanding principles of the patent law, "if granting patent protection on the disputed claim would allow the patentee to exclude the public from practicing the prior art, then that claim is anticipated, regardless of whether it also covers subject matter not in the prior art." Atlas Powder, 190 F.3d at 1346 (citing Titanium Metal, 778 F.3d at 781)). Thus, the Court finds that the patents-in-suit are invalid by anticipation.

## IV.  CONCLUSION

For the above stated reasons, Defendants' Motion for Partial Summary Judgment will be granted. This decision would appear, as a practical matter, if not as a matter of law, to be dispositive of the pending actions. There was some disagreement on this issue, however, when it was raised by the Court at the hearing. Because of this uncertainly, the Court would like to hear from counsel as to what additional steps, in light of this decision, may be needed to finally resolve these actions, or to place them in a posture for appeal to the Federal Circuit. Accordingly, the

Court requests that the parties confer and then submit a joint status report, on or before August 24, 2001.

A separate order will issue.

_____
William M. Nickerson
United States District Judge

Date: August ?, 2001