**FOLEY**

**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

WASHINGTON HARBOUR
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
202.672.5300 TEL
202.672.5399 FAX
www.foley.com

WRITER'S DIRECT LINE
202.672.5384
lmankofsky@foley.com EMAIL

CLIENT/MATTER NUMBER
037677-0156

July 23, 2004

**VIA FEDEX AND ELECTRONICALLY FILED**

The Honorable William M. Nickerson
United States District Court for the District of Maryland
310 U.S. Court House
101 West Lombard Street
Baltimore, Maryland 21201

> Re:   In Re: Cruciferous Sprout Patent Litigation
>          MDL Docket No. 1388

Dear Judge Nickerson:

By letter-order dated July 13, 2004, your Honor granted defendants "leave to briefly respond to that portion of the [plaintiffs'] sur-reply discussing Q-Pharma [Inc. v. Andrew Jurgens Co., 360 F.3d 1295 (Fed. Cir. 2004)]." On July 20, 2004, defendants filed a response (hereinafter "Defendants' Response"), which contains both multiple factual and legal errors and discusses issues other than the Q-Pharma case. Accordingly, plaintiffs are compelled to write to respectfully request that if the Court intends to consider any of the factual or legal arguments in Defendants' Response, plaintiffs be permitted an opportunity to respond in order to correct such incorrect factual and legal arguments. In addition, plaintiffs respectfully request that the portions of Defendants' Response discussing issues other than the Q-Pharma case[1] be struck as improper and beyond the scope of the Court's July 13th letter-order.

By way of example, one argument in Defendants' Response that is both factually and legally wrong is that plaintiffs' claim construction during their pre-filing investigation that "the level of glucosinolates needed to simply be higher than market stage broccoli" was frivolous and not supported by the specifications of the patents-in-suit. Defendants' Response, at 2-3. Defendants further argued that the specifications of the patents-in-suit "clearly disclosed, with respect to the terminology 'rich in glucosinolates', that a food product subject to the claims at issue must have 200,000 units per gram fresh weight or more of Phase 2 enzyme-inducing potential at three days." Id.

This argument is at best factually and legally inaccurate and at worst is disingenuous and a misrepresentation. The United States Court of Appeals for the Federal Circuit, in its opinion in the

---

[1]        For example, see defendants' discussion of how plaintiffs' tests were carried out and their unsubstantiated allegation as to lost documents (Defendants' Response, at 7 n.5) and defendants' discussion of what test results may be relied on (Defendants' Response, at 7-9).

BRUSSELS      LOS ANGELES      ORLANDO                  SAN FRANCISCO      TOKYO
CHICAGO       MADISON          SACRAMENTO               SILICON VALLEY     WASHINGTON, D.C.
DETROIT       MILWAUKEE        SAN DIEGO                TALLAHASSEE        WEST PALM BEACH          002.1236830.1
JACKSONVILLE  NEW YORK         SAN DIEGO/DEL MAR        TAMPA

# ▪FOLEY

The Honorable William M. Nickerson
July 23, 2004
Page 2

appeal of this case, construed the terms "rich in glucosinolates" and "high in Phase 2 enzyme inducing potential" to be higher than market stage plants, and specifically held that the terms do not require 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential. Discussing the specification, the Federal Circuit held:

> The specification does not, however, indicate that the phrases "rich in glucosinolates" or "high in Phase 2 enzyme-inducing potential" are limited to these precise conditions [referring to the 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential]. Rather, the specification uses the term "high" in its ordinary, comparative sense to mean "not low." For example, the specification states that "[t]he cruciferous sprouts of the instant invention have higher Phase 2 enzyme-inducer potential than market stage plants . . .."

> \*        \*        \*

> Likewise, the term "rich" is not specifically defined or limited by the specification, but instead is used in its ordinary, relative sense.

In re Cruciferous Sprout Litigation, 301 F.3d 1343, 1348 (Fed. Cir. 2002). The Federal Circuit also indicated that under the doctrine of claim differentiation, the claim element "rich in glucosinolates" could not require at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential. Id. 301 F.3d at 1349. The fact that the Federal Circuit construed the claim terms "rich in glucosinolates" and "high in Phase 2 enzyme-inducing potential" consistent with plaintiffs' pre-filing claim interpretation conclusively establishes that plaintiffs' pre-filing claim interpretation was not frivolous.

In addition, that defendants would argue in their Response that the specification clearly discloses that the claim term "rich in glucosinolates" requires 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential is improper and contrary to their prior position on this issue. Indeed, in a brief filed with the Federal Circuit, defendants argued that "[t]he term 'rich in glucosinolates' is not defined anywhere in the specification of the '895 patent." Corrected Brief for Defendants-Appellees (dated Feb. 15, 2002), at 35, excerpts of which brief are attached hereto as Exhibit A.

Therefore, while plaintiffs are mindful that the Court does not desire further briefing on defendants' Motion for Attorneys' Fees, if the Court intends to rely on Defendants' Response, plaintiffs respectfully request leave to correct the other factual and legal inaccuracies in that

# ∎FOLEY

The Honorable William M. Nickerson
July 23, 2004
Page 3

Response.  Further, plaintiffs respectfully request that the Court not consider the portions of Defendants' Response beyond the scope of the Court's July 13th letter-order.

Respectfully submitted,

Lisa S. Mankofsky
Gen. Bar No. 04940

Enclosure

cc:     Joseph A. Kromholz, Esq. (by facsimile, 262-783-1211)
        Philip M. Andrews, Esq. (by facsimile, 410-539-1269)
        Delbert J. Barnard, Esq. (by facsimile, 206-243-4618)

# EXHIBIT A



the best use of these succulent little plants, eat them raw in salads or add them to soups just before serving." (JA1368). The sprouting jar method of germination is suggested. (JA1368). It is further suggested that sprouting occur between 68 degrees to 86 degrees, that the sprouts be rinsed twice a day, and that the sprouting time be "3 to 5 days." Clearly, the Whyte text discloses stopping germination while the "sprout" is still a "sprout." What happens during germination is described on pages JA1358-JA1360.

The term "rich in glucosinolates" is not defined anywhere in the specification of the '895 patent. However, this fact is not important. *Bristol-Myers,* 246 F.3d at 1373, 58 USPQ2d at 1513 ("[T]he preamble language---for reducing hematologic activity---[is] non-limiting"). Whether or not a given sprout is "rich in glucosinolates" is a "result" of the method. Here it is a consequence of nature caused by germinating the seeds. It is well established; it is immaterial, on the issue of the novelty of a patent claim, what inherent properties were possessed by a product and/or who discovered the inherent properties. The discovery of a previously unrecognized property and the recitation of that property in a patent claim does not lend patentable novelty to the claim. *Titanium Metals*, 778 F.2d at 781, 227 USPQ at 779.

(1948), 76 USPQ 280, 281 (holding a patent for a mixture of root nodule bacteria to be invalid, reversing the circuit court's finding of validity)("The qualities of these bacteria, like the heat of the sun, electricity, or the qualities of metals, are part of the storehouse of knowledge of all men. They are manifestations of laws of nature, free to all men and reserved exclusively to none.")

## CONCLUSION

For the reasons stated above, the Farmers respectfully request that the district court's Order granting the Farmer's motion for partial summary judgment and denying Brassica's motion for summary judgment be affirmed.

Respectfully submitted,

Dated: February 15, 2002    By: *Delbert J. Barnard* /RCC

Delbert J. Barnard, #443
Barnard & Pauly, P.S.
P.O. Box 58888
Seattle, WA 98138-1888
(206) 246-0568
(206) 243-4618 (fax)

*Attorney for Defendants Harmony
Farms, L.L.C., Gregory H. Lynn, Lorna M.
Lynn, and for Robert L. Rust and
International Specialty Supply*

Philip M. Andrews
Kramon & Graham
One South Street, Ste. 2600
Baltimore, MD 21202

59

(410) 752-6030
(410) 539-1269 (fax)

*Attorneys for Defendants Edrich Farms,*
*Inc., Edward F. Stanfield, Jr., Richard*
*Stanfield, Edward B. Stanfield, III and Sally*
*Stanfield*

Joseph A. Kromholz
Daniel R. Johnson
Ryan, Kromholz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618
(262) 783-1300
(262) 783-1211 (fax)

*Attorneys for Sunrise Farms, Inc., Frank*
*Crikelair and Becky Crikelair*

Donald W. Ullrich, Jr.
The Ullrich Law Firm
3574 D Street
POB 160007
Sacramento, CA  95816-0007
(916) 441-4554
(916) 441-5465 (fax)

*Attorney for Banner Mountain Sprouts, Inc.*
*and Lawrence Ravitz*

60

## AMENDED CERTIFICATE OF SERVICE

On this 15th day of February, 2002, a copy of the foregoing document was served on Plaintiffs/Appellees by mailing a copy to their attorneys:

E. Anthony Figg
Joseph A. Hynds
Mark I. Bowditch
Rothwell, Figg, Ernst & Manbeck, P.C.
Suite 701, East Tower
555 Thirteenth Street, N.W.
Washington, D.C. 20004

Delbert J. Barnard

## CERTIFICATE OF COMPLIANCE

Counsel for Defendants-Appellees certifies that this principal brief complies with the type-volume limitation of Rule 32(a)(7)(B) and (C). A fourteen-point proportionally spaced typeface is used. Excluding the Certificates of Interest, the Table of Contents, the Table of Authorities, and this Certificate, the principal brief contains 13,809 words.

Dated:    February 15, 2002

By: Delbert J. Barnard, attorney #443
Barnard & Pauly, P.S.
P.O. Box 58888
Seattle, WA 98138-1888
Telephone: (206) 246-0568
Facsimile: (206) 243-4618

Counsel for Defendants-Appellees

61